**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x
                                          :
STEPHANIE WEDRA, individually on behalf of      :
herself and on behalf of all others similarly situated, :      Civil Action No. 7:19-cv-03162-VB
                                          :
              Plaintiff,                  :
                                          :
v.                                        :
                                          :
CREE, Inc.,                               :
                                          :
              Defendant.                  :
                                          :
                                          :
                                          :
———————————————————— x

## OPPOSITION TO CREE, INC.'S MOTION TO DISMISS COMPLAINT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II. RELEVANT FACTUAL HISTORY ..................................................................... 2

III. STANDARD OF REVIEW ................................................................................... 2

IV. ARGUMENT ........................................................................................................ 3

    A.  The Energy Policy And Conservation Act (EPCA) Does Not Preempt
    Plaintiff's Claims ...................................................................................... 3

        1.  Preemption is a disfavored affirmative defense, and the Court's
        analysis of Defendant's motion must begin with a "presumption
        against the preemption of state police power regulations." ...................... 3

        2.  Plaintiff's claims do not rely on a federally-mandated label and are
        grounded on laws of general application that create a duty not to
        deceive; as such, they are outside the preemptive scope of the
        EPCA ........................................................................................................ 5

        3.  Defendant's arguments have already been largely rejected .................... 12

        4.  The authority Defendant cites to is distinguishable and inapposite .......... 14

    B.  The GBL's Safe Harbor Does Not Apply To Plaintiff's Claims ......................... 15

    C.  Plaintiff's Labeling Claims Are Not Disguised Warranty Claims ...................... 16

    D.  Plaintiff's Fraudulent Misrepresentation Claim Satisfies Rule 9(b) .................... 19

    E.  Plaintiff Provided Sufficient Pre-Suit Notice Of Her Express Warranty
    Claim ........................................................................................................ 20

    F.  Plaintiff's Unjust Enrichment Claim Is Viable .................................................. 21

V.  CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,*
410 F.3d 492 (9th Cir. 2005) ........................................................................................9, 12, 13

*Allstate Ins. Co. v. Lyons,*
843 F. Supp. 2d 358 (E.D.N.Y. 2012) ...................................................................................22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................................2

*Bates v. Dow Agrosciences L.L.C.,*
544 U.S. 431 (2005) .................................................................................................................4

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................................2

*Bourbia v. S.C. Johnson & Son, Inc.,*
375 F. Supp. 3d 454 (S.D.N.Y. 2019) .............................................................................15, 19

*Buonasera v. Honest Co., Inc.,*
208 F. Supp. 3d 555 (S.D.N.Y. 2016) ...................................................................................18

*Burton v. Iyogi, Inc.,*
No. 13-CV-6926 (DAB),
2015 U.S. Dist. LEXIS 33809 (S.D.N.Y. Mar. 16, 2015) .....................................................18

*California Federal Sav. & Loan Ass'n v. Guerra,*
479 U.S. 272 (1987) .................................................................................................................3

*Carias v. Monsanto Co.,*
No. 15-cv-3677 (JMA) (GRB),
2016 U.S. Dist. LEXIS 139883 (E.D.N.Y. Sept. 30, 2016)..............................................15, 16

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,*
450 U.S. 311 (1981) .................................................................................................................3

*Cipollone v. Liggett Group, Inc.,*
505 U.S. 504 (1992) ..............................................................................................................3, 9

*Clark v. Advanced Composites Grp.,*
No. 16 CIV. 6422 (GBD),
2019 U.S. Dist. LEXIS 80639 (S.D.N.Y. May 9, 2019)........................................................19

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013)..................................................................................2

*Cooper v. United Vaccines, Inc.*,
117 F. Supp. 2d 864 (E.D. Wis. 2000)................................................................13

*Corsello v. Verizon N.Y., Inc.*,
908 N.Y.S.2d 57 (App. Div. 2010) ......................................................................21

*Crazy Eddie, Inc. v. Cotter*,
666 F. Supp. 503 (S.D.N.Y. 1987) ......................................................................10

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
12 F. Supp. 2d 296 (S.D.N.Y. 1998)..............................................................15, 16

*Davis v. Avvo, Inc.*,
345 F. Supp. 3d 534 (S.D.N.Y. 2018)..................................................................18

*Day v. Pool*,
52 N.Y. 416 (N.Y. 1873) ....................................................................................20

*English v. General Elec. Co.*,
496 U.S. 72 (1990).............................................................................................4, 5

*Espinoza v. Hyundai Motor Am.*,
No. CV 12-800-GW(FFMx),
2012 U.S. Dist. LEXIS 191088 (C.D. Cal. Apr. 23, 2012) ..................................11

*Etcheverry v. Tri-Ag Serv.*, Inc.,
22 Cal. 4th 316 (2000)………………………………………………………………..14

*Figueroa v. Foster*,
864 F.3d 222 (2d Cir. 2017)..................................................................................4

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
No. 13-MD-2450 (KMK),
2015 U.S. Dist. LEXIS 155383 (S.D.N.Y. Nov. 12, 2015)............................*passim*

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
No. 12-md-2413 (RRM) (RLM),
2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)....................................15

*Garcia v. Chrysler Grp. LLC*,
127 F. Supp. 3d 212 (S.D.N.Y. 2015)..................................................................22

*Gen. Motors Corp. v. Abrams*,
897 F.2d 34 (2d Cir. 1990)....................................................................................4

*Hillsborough County v. Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985)...........................................................................................5

*Hole v. Gen. Motors Corp.*,
   442 N.Y.S.2d 638 (N.Y. App. Div. 1981) ......................................................20, 21

*Jurgensen v. Felix Storch, Inc.*,
   No. 12-1201,
   2012 U.S. Dist. LEXIS 86312 (S.D.N.Y. June 14, 2012)................................10, 14

*Krzykwa v. Campbell Soup Co.*,
   946 F. Supp. 2d 1370 (S.D. Fla. 2013) ............................................................15

*Lanagan v. Johnson & Johnson Consumer Cos., Inc.*,
   95 F. Supp. 3d 284 (D. Conn. 2015).................................................................4

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)............................................................................22

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)......................................................................................3, 5

*Metrophones Telecomm, Inc. v. Global Crossing Telecomm., Inc.*,
   423 F.3d 1056 (9th Cir. 2005) .........................................................................5

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
   709 F.3d 109 (2d Cir. 2013)..............................................................................3

*Panda Capital Corp. v. Kopo Int'l, Inc.*,
   662 N.Y.S.2d 584 (N.Y. App. Div. 1997) .........................................................21

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011)........................................................................................3

*Plumley v. Massachusetts*,
   155 U.S. 461 (1894).........................................................................................4

*Punian v. Gillette Co.*,
   No. 14-CV-05028-LHK,
   2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016)................................17, 18

*Rogers v. Conrail*,
   948 F.2d 858 (2d Cir. 1991)..............................................................................3

*Salvat v. Constr. Res. Corp.*,
   No. 17-CV-4002 (VEC),
   2017 U.S. Dist. LEXIS 201831 (S.D.N.Y. Dec. 7, 2017) ....................................3

*Sanchez v. Ford Motor Co.*,
  No. 13-cv-01924-RBJ,
  2014 U.S. Dist. LEXIS 73195 (D. Colo. May 29, 2014)........................................11

*Schwartz v. Vizio*,
  No. SACV 16-01883.................................................................................13, 14

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)..................................................................................18

*Singleton v. Fifth Generation Inc.*,
  No. 15-CV-474,
  2016 U.S. Dist. LEXIS 14000 (N.D.N.Y. Jan. 12, 2016)................................15, 16

*Sprietsma v. Mercury Marine*,
  537 U.S. 51 (2002)....................................................................................................5

*Taylor Precision Prods. v. Larimer Grp., Inc.*,
  No. 1:15-cv-4428 (ALC),
  2018 U.S. Dist. LEXIS 221784 (S.D.N.Y. Mar. 26, 2018) ................................21

*Tropical Sails Corp. v. Yext, Inc.*,
  No. 14-CV-7582 (JFK),
  2015 U.S. Dist. LEXIS 64722 (S.D.N.Y. May 18, 2015)....................................21

*True v. Am. Honda Motor Co.*,
  520 F. Supp. 2d 1175 (C.D. Cal. 2007) ..............................................................12

*United States v. Huron Consulting Grp., Inc.*,
  No. 09 Civ. 1800 (JSR)
  2011 U.S. Dist. LEXIS 7335 (S.D.N.Y. Jan. 24, 2011)......................................18

*Young v. Cree*, Inc.,
  No. 17-cv-06252-YGR,
  2018 U.S. Dist. LEXIS 60160 (N.D. Cal. Apr. 9, 2018) ........................10,12,13

*Yung Kim v. GM, LLC*,
  99 F. Supp. 3d 1096 (C.D. Cal. Mar. 9, 2012)....................................................10

**Statutes**

16 C.F.R. § 301.15 ...........................................................................................................12

16 C.F.R. § 305.2(w) § 305.2(w)..............................................................................6, 13

16 C.F.R. § 305.15 ...................................................................................................6, 9, 11

16 C.F.R. § 305.15(c)(2)(i) .............................................................................................6

42 U.S.C. § 6291 ..................................................................................................5

42 U.S.C. § 6297(g) ......................................................................................5, 9, 12

49 U.S.C. § 32908(b)(1)(A)-(F) .........................................................................9

Energy Policy and Conservation Act (EPCA) ...................................... *passim*

Fed. R. Civ. P. 9(b) .............................................................................................2

Fed. R. Civ. P. 12(b)(6) ......................................................................................2

Fed. R. Civ. P. 15(a)(2) .....................................................................................22

## I.     INTRODUCTION

Defendant Cree, Inc.'s ("Defendant") motion to dismiss (the "Motion") should be denied in its entirety.   The Motion mischaracterizes applicable law and the allegations of Plaintiff Stephanie Wedra's ("Plaintiff") complaint.   Defendant designs, manufactures, markets and sells various models of LED lightbulbs (the "LED Lightbulbs" or "Products"), and in doing so makes express marketing statements about the durability and quality of the LED Lightbulbs. Defendant's marketing statements, which appear on all labeling of the LED Lightbulbs, are uniform except for cosmetic variations in the Products (color, etc.) and in the specific timing regarding advertised lifespan of each LED Lightbulb (expressed in terms of hours or years), and the potential energy savings consumers will purportedly realize relating to the advertised lifespan.   The remainder of the marketing statements are uniform, pervasive and appear several different places on both the packaging and Defendant's marketing materials.   These statements are *not limited* to representations contained within a federally mandated energy label, but rather are targeted representations regarding the quality of the LED Lightbulbs which are intended to, and do, induce consumers to purchase Defendant's Products.[1]   These non-preempted statements support Plaintiff's causes of action and should not be dismissed.

Plaintiff relied on Defendant's false marketing statements to her detriment when she purchased the LED Lightbulbs and was injured as a result when the Products failed well before the end of their advertised lifespan.   Accordingly, Plaintiff's Class Action Complaint (Dkt. No. 1, hereinafter "Compl."), seeks relief on behalf of herself and all similarly situated consumers. As detailed below, Defendant's arguments are meritless, and its Motion should be denied.

---

[1] In fact another court addressing similar claims already found that these statements separate and apart from the lighting fact panel were not preempted and allowed claims regarding the statements to proceed. *See Young v. Cree, Inc.*, No. 17-cv-06252-YGR, 2018 U.`S. Dist. LEXIS 60160, at *12-16 (N.D. Cal. Apr. 9, 2018)

## II.     RELEVANT FACTUAL HISTORY

Plaintiff is a resident of Westchester County, New York and purchased Defendant's 60 Watt and 75 Watt Standard A-Type LED Lightbulbs during the class period from Home Depot. *See* Compl. at ¶ 41.  Prior to purchasing the Products, Plaintiff reviewed the representations on the LED Lightbulbs' labels which compared them to other LED and non-LED light bulbs. *See id*.  The representations included statements that (1) Plaintiff would save upwards of hundreds of dollars per bulb over the life of the Products; (2) the Products would perform better than other less-expensive LED and non-LED bulbs; and (3) the Products would last longer and use a fraction of the energy of incandescent bulbs. *See id*.  Plaintiff would not have purchased the LED Lightbulbs, or would not have paid what she did, but for those representations. *See id*. at ¶¶ 42-44.

These representations are substantially identical in type to the marketing representations Defendant makes for its other LED Lightbulbs. *See id*. at ¶¶ 22-39.  For example, Defendant markets its LED Lightbulbs as having a lifetime as long as 45+ years, thereby saving a purchaser hundreds of dollars in energy costs over the bulbs' lifetimes. *See id*.  Despite these representations and Plaintiff's appropriate usage of her LED Lightbulbs, the bulbs burned out within six months of Plaintiff having purchased them. *See id*. at ¶ 42.  Plaintiff's experience was similar to that of hundreds if not thousands of other purchasers of Defendant's Products. *See id*. at ¶ 40.

Plaintiff filed the instant Complaint on April 9, 2019 on behalf of herself and a New York class of purchasers of the LED Lightbulbs.

## III.     STANDARD OF REVIEW

To defeat a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), a complaint need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss for failure to state a claim, the Court must "view[] allegations in the light most favorable to the plaintiff, and draw[] all inferences in the plaintiff's favor." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). Put another way, "[i]n reviewing a Rule 12(b)(6) motion to dismiss, courts 'accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.'" *Salvat v. Constr. Res. Corp.*, No. 17-CV-4002 (VEC), 2017 U.S. Dist. LEXIS 201831, at *5 (S.D.N.Y. Dec. 7, 2017) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013)) (internal brackets omitted).

## IV.   ARGUMENT

### A.   The Energy Policy And Conservation Act (EPCA) Does Not Preempt Plaintiff's Claims

#### 1.   Preemption is a disfavored affirmative defense, and the Court's analysis of Defendant's motion must begin with a "presumption against the preemption of state police power regulations."[2]

Defendant's primary argument, which has already been largely rejected by another court where essentially identical claims were raised,[3] is that all of Plaintiff's claims are preempted. *See* Motion at 8-13. Defendant is mistaken. As an initial matter, preemption is an affirmative defense upon which Defendant bears the burden of proof. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 619 (2011). In considering whether Defendant has carried that burden, it is important to remember that "Congress does not cavalierly preempt state-law causes of action," *see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), and preemption therefore "is not lightly to be presumed."

---

[2] *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992).

[3] *See* Section IV.A.3, *infra*.

*California Federal Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987).  In fact, it is a disfavored defense.  *See Rogers v. Conrail*, 948 F.2d 858, 859 (2d Cir. 1991) (confirming that "'[p]reemption of state law by federal statute or regulation is not favored'") (quoting *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981)).  As the United States Supreme Court has recognized for over a century, "[i]f there be any subject over which it would seem the States ought to have plenary control, and the power to legislate in respect to which it ought not to be supposed was intended to be surrendered to the general government, it is the protection of the people against fraud and deception . . . ."  *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894); *see also Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41 (2d Cir. 1990) ("consumer protection law is a field traditionally regulated by the states").  Accordingly, "a presumption against preemption applies in consumer protection cases," *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 (KMK), 2015 U.S. Dist. LEXIS 155383, at *68 (S.D.N.Y. Nov. 12, 2015), and Defendant therefore must provide "compelling evidence of an intention to preempt" to prevail on its motion.  *Gen. Motors Corp.*, 897 F.2d at 41 (2d Cir. 1990); *see also Lanagan v. Johnson & Johnson Consumer Cos., Inc.*, 95 F. Supp. 3d 284, 291 (D. Conn. 2015) (the "presumption against preemption applies with particular force" when Congress legislates in "a field within the 'historic police powers of the states;'" including "[t]he advertising and labeling of consumer products") (citations omitted).

In order to overcome the presumption against preemption, Defendant must prove that displacement of state law was "'the clear and manifest purpose of Congress.'"  *Figueroa v. Foster*, 864 F.3d 222, 232 (2d Cir. 2017) (internal quotations omitted).  This is no easy task given the fact that if there are two equally "plausible" readings of a statute, courts "have *a duty* to accept the reading that disfavors preemption."  *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 449 (2005) (emphasis added).

**2.     Plaintiff's claims do not rely on a federally-mandated label and are grounded on laws of general application that create a duty not to deceive; as such, they are outside the preemptive scope of the EPCA**

Federal law can preempt state law claims in three ways.  First, "Congress can define explicitly the extent to which its enactments pre-empt state law."  *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990).  Second, "in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively."  *Id*. at 79.   And third, "state law is pre-empted to the extent that it actually conflicts with federal law;" *i.e.*, "where it is impossible for a private party to comply with both state and federal requirements."  *Id.*   These concepts are known as express, field, and conflict preemption, and they must be considered with due regard for the following well-settled legal principles: (1) "[t]he purpose of Congress is the ultimate touchstone in every preemption case;"[4] (2) when a federal statute contains an express preemption clause – as the EPCA does – the inquiry into Congressional intent must begin with the Act's "'plain wording,' as this 'necessarily contains the best evidence of Congress' pre-emptive intent;'"[5] (3) "[t]he presence of an express preemption provision supports an inference that Congress did not intend to preempt matters beyond the reach of that provision;"[6] and (4) the existence of a detailed federal regulatory or enforcement scheme "does not by itself imply preemption of state remedies." *English*, 496 U.S. at 87.  Indeed, as the Supreme Court has long cautioned, to "infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive.  Such a

---

[4] *Medtronic v. Lohr*, 518 U.S. 470, 485 (1996).

[5] *In re Ford Fusion*, 2015 U.S. Dist. LEXIS 155383, at *64 (quoting *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002)).

[6] *Metrophones Telecomm, Inc. v. Global Crossing Telecomm., Inc*., 423 F.3d 1056, 1072 (9th Cir. 2005).

rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence." *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 717 (1985).

Defendant contends that Plaintiff's claims are expressly preempted by the EPCA,[7] specifically 42 U.S.C. § 6297(g), which provides as follows:

> No warranty.  Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provision of this part [42 U.S.C. §§ 6291 *et seq.*] shall not create an express or implied warranty under State or Federal law that such energy efficiency will be achieved or that such energy use or estimated annual operating cost will not be exceeded under conditions of actual use.

As to the "disclosures" Defendant is required to make "with respect to energy use, energy efficiency, or estimated annual operating cost" under the EPCA, Defendant cites – but does not quote – 16 C.F.R. § 305.15, which provides, in relevant part:

> (i)  The ***principal display panel*** of the product package shall be labeled clearly and conspicuously with the following information consistent with the Prototype Labels in Appendix L:
>
> > (A)   The light output of each lamp included in the package, expressed as "Brightness" in average initial lumens rounded to the nearest five;
> >
> > (B)   The estimated annual energy cost of each lamp included in the package, expressed as "Estimated Energy Cost" in dollars and based upon usage of 3 hours every per day and 11 cents ($0.11) per kWh; and
> >
> > (C)   The life, as defined in § 305.2(w),[8] of each lamp in the package, expressed in years rounded to the nearest tenth (based on 3 hours operation per day.

16 C.F.R. § 305.15(c)(2)(i) (emphasis added).

---

[7] *See* Motion at 7 ("Plaintiff's claims are . . . expressly preempted.").

[8] 16 C.F.R. § 305.2(w) provides that "[l]ife and lifetime for lamps mean length of operating time of a statistically large group of lamps between first use and failure of 50 percent of the group."

Defendant's omission of the full text of this regulation is unsurprising given that its plain language limits the regulation's application to information set forth on a product's "principal display panel," an illustrative example of which (the "Lighting Facts Panel") looks like this:

| Lighting Facts | Per Bulb |
|---|---|
| **Brightness** | **820 lumens** |
| **Estimated Yearly Energy Cost $7.23** | |
| Based on 3 hrs/day, 11¢/kWh | |
| Cost depends on rates and use | |
| **Life** | |
| Based on 3 hrs/day | **1.4 years** |
| **Light Appearance** | |
| Warm | Cool |
| 2700 K | |
| **Energy Used** | **60 watts** |

However, Plaintiff's claims are not based on the alleged falsity of any information in the principal display panels of any of Defendant's LED Lightbulbs.  Indeed, throughout her Complaint Plaintiff cites myriad examples of Defendant's deceptive labeling, marketing, and advertising that exist ***independently*** from any representations on the principal display panels. For example:

- Defendant's LED Lightbulbs are sold with packaging indicating that that bulbs come with a 10 Year Warranty.  These representations signal to the consumer that the useful life of the product will be at least 10 years or more.  *See* Compl., ¶ 22.

- Defendant's packaging boasts that the LED Lightbulbs have a life of as much as "45+ years" or more depending on the bulb.  *Id*. at ¶ 23.

- On its website, Defendant claims with respect to each type of LED Lightbulb that "the Cree LED bulb is designed . . . to last more than 22 years (25,000 hours), [and] the Cree LED bulb is a worry-free choice backed by a 100% performance satisfaction guarantee."  *Id*. at ¶ 26.

    ***

7

**Defendant's Label Misrepresentations**[9]

Defendant's misrepresentations within advertisements and marketing include, but are not limited to, the following:

- Defendant's labels advertise that the LED Lightbulbs have a 13-45+ years useful lifetime. *See* ¶ 36.

- Defendant's labels indicate that the LED Lightbulbs have a 10 Year Warranty. *See id.*

- Defendant's labels indicate that the LED Lightbulbs carry a 100% Satisfaction Guarantee. *See id.*

\*\*\*

**Defendant's Advertising and Marketing Misrepresentations**

- "Long LED lifetime lasts 13+ years (15,000 hours), up to 3x as long as the cheap LED bulbs." *Id.*

- "Long LED lifetime lasts 22+ years (25,000 hours), up to 6x as long as the cheap LED bulbs." *Id.*

- "Long LED lifetime lasts 32+ years (35,000 hours), up to 6x as long as the cheap LED bulbs." *Id.*

- "[D]esigned to last more than 22 years (25,000 hours), the Defendant LED bulb is a worry-free choice backed by a 100% performance satisfaction guarantee. The LED general purpose bulbs "last up to 25,000 hours, equal to 25 incandescents." *Id.*

- "25,000-hour lifetime compared to about 1,000 hours for a typical incandescent." *Id.*

- "Most Cree LED bulbs are rated to last 25,000 hours. So you'll be happy to have beautiful Cree LED light in your home for decades." *Id.*

\*\*\*

---

[9] Each of the representations cited in Paragraph 32 of the Complaint appear in places other than the "principal display panel" and are not expressly within "the Lighting Facts Panel."

- Through the advertisements described above and others, Defendant represented, directly or indirectly, expressly or by implication, that the LED Lightbulbs would last *for specified periods or lifespans.* These representations are false. *See id*. at ¶ 35.

In light of the foregoing, it is evident that Plaintiff's claims do not, as Defendant contends, "derive from the Lighting Facts Label." Motion at 9 n.2. Accordingly, they fall comfortably outside the parameters of 16 C.F.R. § 305.15 and the preemptive reach of the EPCA.[10] This conclusion is confirmed by the fact that courts across the country, including in this District, have refused to find EPCA preemption in cases where the plaintiffs, like Plaintiff here, alleged misrepresentations made via sources other than federally-mandated labels.

Illustrative of such cases is this District's decision in *In re Ford Fusion*, 2015 U.S. Dist. LEXIS 155383, a class action in which the plaintiffs purchased certain vehicles in reliance on Ford's assurances that they would realize specific fuel economy savings. Once those promises turned out to be false, the plaintiffs filed suit alleging violations of GBL § 349 and 350, among other state consumer protection statutes. *See id.* at *2, 29-30. Ford filed a motion to dismiss, arguing there, as Defendant does here, that any claim based on labels "that contain federally-mandated disclosure language" is preempted by the EPCA. *Id*. at *65-66. In support of its position, Ford noted that the testing and disclosure of estimated fuel economy for new vehicles is governed by the EPCA's "comprehensive federal regulatory scheme," and went on to explain that the applicable regulations mandated each new vehicle "be labeled with a sticker (a 'Monroney Sticker')[11] indicating estimated fuel economy." *Id*. at *14. In opposition to the

---

[10] Like all other express preemption provisions, 42 U.S.C. § 6297(g) "should be given a narrow interpretation." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005); *see also Cipollone*, 505 U.S. at 518.

[11] Specifically, automobile manufacturers are required to place a label on each new vehicle that states the fuel economy of the automobile; the estimated annual fuel cost of operating the automobile; the range of fuel economy of comparable automobiles of all manufacturers; a

motion the plaintiffs explained that their consumer protection claims "were not based on the disclosure of fuel economy or fuel operating costs, but rather [were] based on the more general duty not to deceive," which Ford violated by "portraying a false impression about the 'superior' fuel economy of the [Vehicles], *beyond the mere disclosure of the EPA estimates*." *In re Ford*, 2015 U.S. Dist. LEXIS 155383, at *66-67 (emphasis added).   In other words, the plaintiffs' claims were "rooted in an extrinsic duty not to deceive, one that is not equivalent to disclosure obligations under the EPCA." *Id*. at *70.

The court denied Ford's motion in part, explaining that "the EPCA and the regulations issued pursuant to it do not purport to regulate advertising of fuel economy beyond the requirements of the Monroney Sticker and the dealer booklet," and concluding that, therefore, "state false advertising claims are not preempted" by the Act.  *Id*. at *71 (internal quotations and brackets omitted).  In so holding, the court reasoned that:

> Congress did not intend to protect car manufacturers that may have falsely advertised facts about their vehicles—including facts that might go beyond merely reporting the EPA-estimated [miles per gallon]. . . .  Indeed, as Defendant admits, Congress' intent in regulating EPA fuel economy disclosures was not to prevent false advertising but rather was to "provid[e] consumers with uniform and comparable fuel economy information."

*Id*. at *72-73.  The court also noted that Ford's advertisements functioned to "guarantee[] real-world fuel economy," and it "concur[ed] with holdings of other courts" – including those in California, both state and federal – "that considered similar allegations, namely that advertisements functioned to guarantee specific, real world performance, and conclude[d] that

---

statement that a booklet is available from the dealer to assist in making a comparison of fuel economy of other automobiles; the amount of the automobile fuel efficiency tax imposed on the sale of the automobile under the Internal Revenue Code; and other information required or authorized by the Administrator that is related to the foregoing subjects. *See* 49 U.S.C. § 32908(b)(1)(A)-(F).

such claims are not preempted." *Id.*[12]  *See also Yung Kim v. GM, LLC*, 99 F. Supp. 3d 1096,

1104 (C.D. Cal. Mar. 9, 2012) (EPCA did not preempt plaintiff's claims alleging defendant's

advertisements "could lead a reasonable consumer to believe [its] vehicle is capable of achieving

these EPA [label] estimates under real world conditions" because plaintiff's claims "did not

challenge the disclosure of the EPA estimate itself," but rather "challeng[ed] GM's *use* of the

EPA estimates in a way that may give consumers the mistaken impression that they are able to

achieve real-world mileage and tank range derived from these figures.") (emphasis in original);

*Espinoza v. Hyundai Motor Am.*, No. CV 12-800-GW(FFMx), 2012 U.S. Dist. LEXIS 191088, at

*6-7 (C.D. Cal. Apr. 23, 2012) (plaintiff's state law consumer protection claims not preempted

by the EPCA "to the extent [those] claims rest on allegations that Hyundai 'voluntarily made

assertions, beyond the disclosure of mileage estimates, that are untrue or misleading'"); *Sanchez*

*v. Ford Motor Co.*, No. 13-cv-01924-RBJ, 2014 U.S. Dist. LEXIS 73195, at *18 (D. Colo. May

29, 2014) (EPCA did not preempt plaintiff's state law consumer protection claims based on

allegations that defendant Ford misrepresented the vehicle he purchased "would match the fuel

economy estimates he had viewed from Ford's advertising").

    As explained at length above, the EPCA and its attendant regulations do not purport to

regulate the advertising of light bulbs beyond the requirements pertaining to the "Lighting Facts

---

[12] Defendant completely ignores *In re Ford Fusion* while inexplicably claiming that to "Cree's knowledge, [*Jurgensen v. Felix Storch, Inc.*, No. 12-1201, 2012 U.S. Dist. LEXIS 86312 (S.D.N.Y. June 14, 2012)] is the only S.D.N.Y. case addressing preemption under the EPCA." Motion at 11 n.4.  But *In re Ford Fusion*, an on-point S.D.N.Y. case addressing preemption under the EPCA, was heavily cited to in Judge Gonzalez Rogers's decision to reject, in part, the same arguments Defendant makes here.  *See Young*, 2018 U.S. Dist. LEXIS 60160, at *12-15. Other cases in this District have addressed preemption under the EPCA as well.  *See, e.g., Crazy Eddie, Inc. v. Cotter*, 666 F. Supp. 503, 509 (S.D.N.Y. 1987) (where defendant argued that Congress intended the EPCA to "occupy the entire field of energy efficiency standards," the court responded that it had "difficulty fathoming how [the defendant] can make this argument with a straight face.").

Panel."  In this case, as in those cited above, Plaintiff's claims do not rely on the alleged falsity of Defendant's federally mandated disclosures.  Instead, Plaintiff is alleging that Defendant voluntarily made additional representations beyond those required by 16 C.F.R. § 305.15, and that *those* representations are deceptive, misleading, or ultimately untrue.  As such, Plaintiff's claims are "rooted in an extrinsic duty not to deceive," which is "not equivalent to disclosure obligations under the EPCA," and thus are not subject to preemption thereunder.  *In re Ford*, 2015 U.S. Dist. LEXIS 155383, at *70.  Not only is this conclusion consistent with the plain wording of the EPCA and 16 C.F.R. § 301.15, it is in direct conformity with the fact that there exists "no clear and manifest Congressional intent to regulate advertising," and that "allowing the States to regulate false advertising and unfair business practices perhaps may further the goals of the EPCA."  *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1181 (C.D. Cal. 2007).  Accordingly, the Court should reject Defendant's preemption argument and deny its motion.

### 3.    Defendant's arguments have already been largely rejected

Defendant's arguments with respect to preemption have already been largely rejected in *Young*, 2018 U.S. Dist. LEXIS 60160, where the plaintiff brought similar allegations against Defendant based largely on the same misrepresentations here.  In response, Defendant made the same arguments it makes here that the plaintiff's claims were expressly preempted by the EPCA.  *See id.* at *8.  The court rejected these arguments with respect to two of three categories of misrepresentations alleged in *Young* and here.  First, allegations regarding Defendant's claims that the LED Lightbulbs had superior performance compared to other types of bulbs were not preempted because such claims went beyond the federally mandated labeling and instead "convey an allegedly 'false impression about the superior' longevity and cost savings of Defendant's LED Bulbs."  *Id.* at *14 (quoting *In re Ford Fusion*, 2015 U.S. Dist. LEXIS

155383, at *67).  The *Young* court also held that Defendant's claims that it would provide 100% satisfaction guaranteed were not preempted because "[s]uch representations are not required by EPCA and therefore fall outside the purview of Section 6297(g)."  *Id.* at *14 (citing *In re Ford Fusion*, 2015 U.S. Dist. LEXIS 155383, at *72).  The Court should reach the same conclusions with respect to these categories of misrepresentations as the court in *Young*, which accurately applied a "narrow interpretation" of the EPCA in analyzing preemption.  *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 496.

Plaintiff however respectfully disagrees with the *Young* court's holding that claims stemming from Defendant's claims that the LED Lightbulbs last "X+ years" are preempted because they "merely reiterate the content of federally-required disclosures."  *Id.*, 2018 U.S. Dist. LEXIS 60160, at *11.  The *Young* court declined to recognize that an open-ended representation that a bulb *would* last for "X+ years" is far different than the EPCA-mandated notification in the principal display panel of the *average* "Life" of the bulb as measured by the "length of operating time of a statistically large group of lamps between first use and failure of 50 percent of the group."  16 C.F.R. § 305.2(w).  Moreover, one basis for the *Young* court's decision, that these claims were "displayed in close proximity on the LED Bulb's packaging," *see id.*, 2018 U.S. Dist. LEXIS 60160, at *11 n.5, is not supported by any authority and in fact contradicts the *Young* court's position that preemption analysis should focus "'upon the content and language of the representation at issue' rather than the physical placement of the representation."  *Id.* at 11 (quoting *Cooper v. United Vaccines, Inc.*, 117 F. Supp. 2d 864, 871-872 (E.D. Wis. 2000)).  For the reasons detailed *supra* the Court should find that Plaintiff's claims relating to Defendant's misrepresentations regarding the LED Lightbulb's lifespan, which are <u>outside</u> of the federally mandated Lighting Facts Panel, are not preempted.

13

### 4.     The authority Defendant cites to is distinguishable and inapposite

In support of its preemption argument, Defendant relies largely on *Schwartz v. Vizio*, No. SACV 16-01883 JVS (DFMx), 2017 U.S. Dist. LEXIS 87954 (C.D. Cal. May 23, 2017), a case in which the plaintiffs alleged that Vizio misrepresented its televisions as being "among the most energy efficient" on the market when, in fact, they were not. *Id.* at *1-2.  In that case, the plaintiffs claimed that Vizio made its misrepresentations in two ways: (1) by displaying an EnergyGuide label, which was required by the FTC; and (2) by displaying an Energy Star logo, which likewise conveyed that Vizio's televisions were "among the most energy efficient of similar products available in the marketplace." *Id*. at *2-3.

The court granted Vizio's motion to dismiss the plaintiffs' claims but only "to the extent that they rely on the Energy Guide label," finding such claims to be preempted because they "allege that the televisions did not perform as promised on a federally-required label." *Id.* at *11.  More importantly, however, the *Schwartz* court, like in each of the cases cited above, refused to dismiss claims based on misrepresentations set forth in locations other than the federally-mandated label, such as the Energy Star logo which also "misrepresent[ed] the televisions' energy consumption," and thus had the potential to mislead reasonable consumers. *Id*. at *14.  In so holding, the court noted that "the Energy Star program is voluntary," and that the disclosures of energy efficiency made in connection therewith are not "'required to be made' by statute." *Id*. at *13.

In this case, as in *Schwartz*, Plaintiff is alleging that Defendant voluntarily made representations (or, more accurately, misrepresentations) with respect to the durability and functionality of its LED Lightbulbs.  Those disclosures are not "required to be made by federal statute" and, as the *Schwartz* court recognized, claims based thereon cannot be preempted by the EPCA.  Thus, rather than supporting Defendant's contentions, *Schwartz* actually demonstrates

the fallacy of its position, and mandates the rejection of Defendant's arguments based thereon.[13]

Furthermore, the other cases cited by Defendant are inapposite because Plaintiff is not testing the

federally mandated labeling, but rather is testing the other nonregulated marketing claims.

### B.    The GBL's Safe Harbor Does Not Apply To Plaintiff's Claims

The GBL's safe-harbor provisions are coextensive with the preemption analysis.  *See,*

*e.g.*, *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019) ("[T]he

GBL's safe harbor provisions have no effect if the claims are not preempted."); *Carias v.*

*Monsanto Co.*, No. 15-cv-3677 (JMA) (GRB), 2016 U.S. Dist. LEXIS 139883, at *22 (E.D.N.Y.

Sept. 30, 2016) (stating it would be "anomalous" to find safe harbor applicable to claims that

were not preempted).[14]  This is because the "rationale underlying the exemptive provisions of all

of these statutes is the need for uniformity in the regulation of advertising and labeling and a

deference to the expertise of the responsible regulatory agency."  *Singleton v. Fifth Generation*

---

[13] Other cases relied upon by Defendant are inapposite.  For example, in *Jurgensen*, 2012 U.S. Dist. LEXIS 86312, the plaintiff alleged that the defendant's federally-required representations on Energy Guide labels affixed to freezers substantially understated the freezers' true energy consumption.  Here, by contrast, Plaintiff explicitly does not base her claims on the alleged falsity of Defendant's federally mandated disclosures.  Moreover, the portion of *Etcheverry v. Tri-Ag Serv.*, Inc., 22 Cal. 4th 316 (2000) cited to by Defendant in support of its argument relates to "off-label statements": "statements made outside of the context of labeling or packaging; for example, claims made orally or in advertising materials."  *Id.* at 337.  Plaintiff's claims here address Defendant's numerous misstatements on its labeling and packaging outside the principal display panel.

[14] Decisions concerning Florida's safe-harbor provision reinforce this point.  Florida's safe harbor is similar to New York's, and courts have looked to it in deciding whether the GBL's safe harbor applies.  *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-md-2413 (RRM) (RLM), 2013 U.S. Dist. LEXIS 123824, at *67 (E.D.N.Y. Aug. 29, 2013) ("For similar reasons [as under the Florida statute], Frito-Lay's attempt to seek protection under the safe harbor provisions of the New York GBL also fails.").  Florida's safe harbor, like New York's, does not apply to claims that are not preempted.  *See Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370, (S.D. Fla. 2013) ("As set forth above, Plaintiff's claims are not preempted.  Accordingly, Defendant's argument that Plaintiff's claims fall under FDUPTA's safe harbor provision correspondingly fails.").

*Inc.*, No. 15-CV-474, 2016 U.S. Dist. LEXIS 14000, at *18-19 n.10 (N.D.N.Y. Jan. 12, 2016) (internal quotations omitted).  Indeed, in a variety of contexts, New York's safe-harbor provision "has been applied where a federal law or regulation *specifically authorizes* the challenged conduct, or a federal agency *specifically approves* the challenged conduct." *Id.* at *7 (emphasis added).

That is enough to end the inquiry.  Plaintiff's claims are not preempted (as discussed in more detail above), and therefore they are not barred by the GBL's safe-harbor provision.  The case cited by Defendant, *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296 (S.D.N.Y. 1998), does not stand for a contrary position and in fact does not discuss the statute's safe-harbor provision at all.  *See id.*

But even if a separate analysis were required, that would not change the result.  Plaintiff does not base her claims on labeling or marketing statements that were "specifically authorize[d]" by a federal regulation or "specifically approve[d]" by a federal agency.  *Singleton*, 2016 U.S. Dist. LEXIS 14000, at *23.  Plaintiff's claims are also not based on the lighting facts or principal display panel; rather, they are based on Defendant's comparative longevity and savings claims.  *See, e.g.*, Compl. ¶ 24 (describing Defendant's "overall marketing scheme that overpromises the longevity of the Lightbulbs," including "the comparative statements in regard to other light bulbs").  Furthermore, dismissal is particularly inappropriate at the pleading stage because compliance with federal regulations is a fact question.  *See Singleton*, 2016 U.S. Dist. LEXIS 14000, at *24 (collecting cases finding safe-harbor inquiry premature at motion-to-dismiss stage); *accord Carias*, 2016 U.S. Dist. LEXIS 139883, at *22 (same).

### C.    Plaintiff's Labeling Claims Are Not Disguised Warranty Claims

Defendant argues that Plaintiff's claims alleging misrepresentations found outside the federally-required principal display panel (EnergyGuide label) should be dismissed because, per

Defendant, they are "disguised warranty claims."  Motion at 16.  The fallacy of Defendant's contention in this regard is conclusively confirmed by: (a) the previous discussion of preemption, which established that Plaintiff's claims are "rooted in an extrinsic duty not to deceive,"[15] and that such claims can exist alongside any warranty claims; and (b) a review of the authority Defendant cites in alleged support of its position, which actually confirms its argument to be untenable.

In its brief, Defendant relies entirely on *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016), a California case in which the plaintiff took issue with Gillette's Duralock Batteries, which included the following language on their labels: "GUARANTEED for 10 YEARS in storage."  *Id.* at *3.  The plaintiff claimed that the foregoing language constituted an affirmative representation that the batteries would not leak or otherwise fail for a period of ten years.  *See id.* at *4.  When the batteries did leak, Punian filed suit alleging violations of the California consumer protection statutes (*i.e.*, the CLRA, UCL, and FAL).  *See id.* at *7.  Gillette moved for dismissal, arguing that its foregoing "guarantee" was "an express warranty, not a promise that Duralock Batteries have absolutely no potential to leak."  *Id.* at *18.  The court granted the motion, focusing exclusively on Gillette's use of the word "guarantee."  Specifically, the court explained that "[i]n California, the use of the term 'guarantee' generally creates an express warranty," which "is not a representation that a product has no defects, but rather a promise to repair, replace or refund a failed product."  *Id.* at *20.  The court went on to note that both the common understanding and dictionary definition of the term "guarantee" confirm it to be "a written promise by a company to repair or change a product that develops a fault within a particular period of time."  *Id.* at *20-21 (quoting Cambridge

---

[15] *In re Ford*, 2015 U.S. Dist. LEXIS 155383, at *70.

Dictionaries Online).   Given this, the court concluded that a reasonable consumer would understand Gillette's use of the term "guarantee" to simply convey "a promise to repair, replace, or refund," and "not as a promise that Duralock have no potential to leak," *id.* at *20, and therefore Punian "fail[ed] to allege an affirmative misrepresentation based upon the Duralock *guarantee.*"  *Id.* at *26 (emphasis added).

Unlike the plaintiff in *Punian*, Plaintiff *is not* basing her non-warranty claims on Defendant's use of the term "guarantee" in touting the expected life of its LED Lightbulbs. Indeed, as set forth at length above, Defendant has not couched its representations in terms of a "guarantee," but instead has unequivocally represented (or, more accurately, misrepresented) to consumers in its advertising materials and on its packaging that its "products have a life of '27+ years' or more depending on the bulb"; that "the Cree LED bulb is . . . designed to last more than 22 years (25,000 hours)"; that the LED Lightbulbs have a "25,000-hour lifetime compared to about 1,000 hours for a typical incandescent"; and that "[m]ost Cree LED bulbs are rated to last 25,000 hours.  So you'll be happy to have beautiful Cree LED light in your home for decades." The representations reinforce Defendant's promises of longevity.   These critical factual distinctions reveal that Defendant's reliance on *Punian* is misplaced and confirm that its arguments based thereon should be rejected.  Whether those representations "are misleading to a reasonable consumer is a question of fact better suited for the jury."  *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016).[16]

---

[16] Defendant cites *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018), in support of its claim that its "100% Satisfaction Guarantee" is non-actionable puffery.  *Davis* held that language "that can only be subjective" is non-actionable puffery, and therefore, the term "Pro," when used to rate attorneys by an attorney-rating website, was mere puffery.  *Id.*  By contrast, here "100% Satisfaction Guarantee" conveys an objective measure of quality and performance that cannot be considered puffery as a matter of law at this stage of the litigation.  *See, e.g.*, *Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 U.S. Dist. LEXIS 33809, at *26 (S.D.N.Y. Mar. 16, 2015)

### D.      Plaintiff's Fraudulent Misrepresentation Claim Satisfies Rule 9(b)

Rule 9(b) requires plaintiffs to "'(1) specify the statements that [the plaintiff] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *United States v. Huron Consulting Grp., Inc.*, No. 09 Civ. 1800 (JSR), 2011 U.S. Dist. LEXIS 7335, at *2 (S.D.N.Y. Jan. 24, 2011) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).   Plaintiff satisfies these requirements with respect to her fraudulent misrepresentation claim by meticulously (1) describing the statements that are fraudulent ("representations that: (1) the bulbs would last 22+ or 45+ years (2) Plaintiff would save upwards of hundreds of dollars per bulb over the lifetime of the bulbs; and (3) the bulb would perform better than other less expensive LED and non-LED bulbs…would last longer" and "use a fraction of the energy of incandescent bulbs…") (Compl. at ¶¶ 41; 36 (listing nine representations)); (2) identifying how Defendant made its statements and representations ("representations on the label" and through "internet advertisements") (*id.*[17]); (3) stating where and when the statements were made (made on Defendant's LED Lightbulbs sold at "Home Depot" and on "internet advertisements . . . during the class period.") (*id.*); and (4) explaining why the statements were fraudulent (Defendant "concealed material information concerning the qualities, characteristics, reliability, durability, longevity, benefits, and lifespan of the LED Lightbulbs from its customers.") (*id.* at ¶ 79). Plaintiff relied on Defendant's representations and would not have done so had she known that the bulbs would burn "out within six months" from the date of purchase.  *Id.* at ¶¶ 42, 44.  *See Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019) (denying dismissal of fraud claim because plaintiff pled "specific descriptions of the alleged false and

---

[17] Defendant's "longevity representations are prominently made on the principal display panel of the Lightbulbs."  Compl. at ¶ 2.

misleading statements on Off! Clean Feel's label . . . allegations that Defendant made the statements with knowledge of their falsehood . . . and an assertion that Plaintiff relied on and was induced by the false statements to purchase Off! Clean Feel.").

Defendant's argument that Plaintiff failed to allege that it had knowledge of its fraud is flawed.  First, as a threshold point, Defendant ignores the maxim that "'knowledge, and other condition of mind of a person may be averred generally.'"  *Clark v. Advanced Composites Grp.*, No. 16 CIV. 6422 (GBD), 2019 U.S. Dist. LEXIS 80639, at *52 (S.D.N.Y. May 9, 2019) (quoting Fed. R. Civ. P. 9(b)).  Second, the Complaint plainly addresses Defendant's knowledge, stating at paragraph 80 that Defendant concealed facts, and at paragraph 81 that Defendant "had superior knowledge of the qualities" of the LED Lightbulbs.  The Complaint specifies nine misrepresentations.  *See id*. at ¶ 36 (claim to last "32+ years").

Plaintiff and the class were charged a premium price for the LED Lightbulbs over the cost of competitive bulbs and would not have purchased the LED Lightbulbs had they been aware of the truth about the product.  *See id*. at ¶ 13.  Plaintiff's allegations have put Defendant on notice of the circumstances giving rise to the claims.[18]   In addition to the myriad facts and allegations, the Complaint includes two photos identifying the product.  *See id.* at ¶ 23.

### E.    Plaintiff Provided Sufficient Pre-Suit Notice Of Her Express Warranty Claim

Defendant incorrectly argues that Plaintiff's express warranty claim fails because she did not attempt to return her defective LED Lightbulbs to Defendant.  *See* Motion at 21.

The New York Court of Appeals long ago decided that it is not necessary to return a defective product in order to have a remedy for the breach of express warranty.  *See Day v. Pool*, 52 N.Y. 416, 418 (N.Y. 1873) ("It is well settled that, upon a sale and delivery *in presenti* of

---

[18] Other purchasers of Defendant's LED Lightbulbs have complained about the bulbs.  *See* Compl. at ¶ 40 (listing internet complaints).

goods with express warranty, if the goods upon trial or full examination turn out to be defective, and there is a breach of the warranty, the vendee may retain and use the property, and may have his remedy upon the warranty without returning or offering to return.").  That alone is enough to defeat Defendant's argument.  Moreover, the sole case cited by Defendant does *not* stand for the proposition that Plaintiff cannot state a claim for breach of express warranty if she did not attempt to return the LED Lightbulbs.  *See Hole v. Gen. Motors Corp.*, 442 N.Y.S.2d 638 (N.Y. App. Div. 1981).  Rather, the plaintiff in that case "flatly rejected" the defendant's offer to repair the vehicle she purchased "at no charge to plaintiff."  *Id.* at 639.  The court held the plaintiff could not state a claim for breach of warranty because the defendant "made several offers to repair and . . . plaintiff rejected these offers."  *Id.* at 640.

At bottom, Plaintiff provided Defendant with adequate pre-suit notice.  *See* Compl. ¶ 104. Such notice advised Defendant that it had sold Plaintiff defective LED Lightbulbs.  Despite the opportunity to cure the defect for Plaintiff and the proposed class members, Defendant failed to do so.  *See id.*  Defendant cannot now be heard to complain that Plaintiff has not given it an opportunity to cure the defect and comply with the warranty.  *See, e.g.*, *Panda Capital Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584, 586-87 (N.Y. App. Div. 1997) (finding filing of complaint to constitute required notice for breach-of-warranty claim)."[19]

### F.    Plaintiff's Unjust Enrichment Claim Is Viable

Defendant erroneously contends that Plaintiff's unjust enrichment claim must be dismissed as duplicative of Plaintiff's tort and contract claims.  However, New York law recognizes that where, as here, "alternative theories of recovery based on different sets of facts, dependent on whether the [conduct] is deemed justified or unjustified[, will determine w]hether the unjust enrichment cause of action is duplicative of the [other] cause of action [and] *must*

---

[19] Plaintiff withdraws her breach of implied warranty claims.

therefore await a determination by the trier of fact." *Corsello v. Verizon N.Y., Inc.*, 908 N.Y.S.2d 57, 79 (App. Div. 2010) (emphasis added); *see also Taylor Precision Prods. v. Larimer Grp., Inc.*, No. 1:15-cv-4428 (ALC), 2018 U.S. Dist. LEXIS 221784, at \*88-93 (S.D.N.Y. Mar. 26, 2018) (finding unjust enrichment claim not duplicative of contract claim).   The same logic holds where, as here, a contract has been alleged to have been procured by fraudulent misrepresentation and concealment.  *See, e.g.*, *Tropical Sails Corp. v. Yext, Inc.*, No. 14-CV-7582 (JFK), 2015 U.S. Dist. LEXIS 64722, at \*7 (S.D.N.Y. May 18, 2015) (New York courts have held that "a claim for unjust enrichment is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud.") (collecting cases); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012) (unjust enrichment claim lies, irrespective of parties' contract, where it "stem[s] from defendants' misrepresentations."). Accordingly, Plaintiff has alleged a viable claim for unjust enrichment.

## V.    CONCLUSION

For the above reasons Plaintiff respectfully requests that the Motion should be denied.[20]

---

[20] In the event the Court grants Defendant's Motion to any extent, Plaintiff requests that the Court permit her to amend her Complaint to address whatever concerns the Court may have.  *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) (leave to amend should be freely granted "'when justice so requires.'") (quoting Fed. R. Civ. P. 15(a)(2)).  *See also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *id.* at 191 (in complex litigation "pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute.").

Dated: July 19, 2019                    Respectfully submitted,

**THE SULTZER LAW GROUP, P.C.**

By:  */s/ Jason P. Sultzer*
   Jason P. Sultzer, Esq.
   Michael Liskow
   85 Civic Center Plaza, Suite 200
   Poughkeepsie, NY 12601
   Phone: (845) 483-7100
   Fax: (888) 749-7747
   sultzerj@thesultzerlawgroup.com
   liskowm@thesultzerlawgroup.com

   Michael A. McShane
   S. Clinton Woods
   Ling Y. Kuang
   **AUDET & PARTNERS, LLP**
   711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102-3275
   Phone: (415) 568-2555
   Fax: (415) 568-2556
   mmcshane@audetlaw.com
   cwoods@audetlaw.com
   lkuang@audetlaw.com

   Melissa S. Weiner
   Joseph C. Bourne
   **PEARSON, SIMON & WARSHAW, LLP**
   800 LaSalle Avenue, Suite 2150
   Minneapolis, Minnesota 55402
   Telephone: (612) 389-0600
   Facsimile: (612) 389-0610
   mweiner@pswlaw.com
   jbourne@pswlaw.com

   Charles J. LaDuca
   Alexandra C. Warren
   **CUNEO GILBERT & LADUCA, LLP**
   4725 Wisconsin Avenue, NW, Suite 200
   Washington, DC 20016
   Telephone: (202) 789-3960
   Facsimile: (202) 789-1813
   charles@cuneolaw.com
   awarren@cuneolaw.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiff*