UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
STEPHANIE WEDRA, on behalf of herself and : 
all others similarly situated, :
                                    Plaintiff, :          **OPINION AND ORDER**
                                            :
v.                                          :          19 CV 3162 (VB)
                                            :
CREE, INC., :
                                    Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Stephanie Wedra, on behalf of herself and all others similarly situated, brings

claims against defendant Cree, Inc. ("Cree"), under New York General Business Law Sections

349 and 350, and for breach of warranty, fraudulent misrepresentation and concealment, and

unjust enrichment.

Now pending is Cree's motion to dismiss the complaint under Rule 12(b)(6). (Doc. #9).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-

pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as

summarized below.

Defendant manufactures, advertises, and sells light emitting diode ("LED") bulbs. LED

bulbs are energy-saving alternatives to incandescent bulbs and compact fluorescent lamps

("CFLs"). LED bulbs have lifespans of 25,000 to 50,000 hours, compared to incandescent

bulbs' lifespans of 1,000 to 2,000 hours, and CFLs' lifespans of 10,000 hours. Defendant

manufactures three categories of LED bulbs: (i) Standard A-Type; (ii) Reflector; and (iii) Specialty.

Plaintiff alleges she purchased defendant's 60-Watt and 75-Watt LED bulbs from Home Depot "during the class period."[1] She claims she reviewed and relied on the packaging and advertising as she made her purchases. Specifically, plaintiff alleges she relied on defendant's packaging and advertising, which noted: "(1) the bulbs would last 22+ or 45+ years"; (2) she would "save upwards of hundreds of dollars per bulb over the lifetime of the bulbs"; and (3) "the bulb would perform better than less expensive LED and non-LED bulbs." (Compl. ¶ 41). According to the complaint, plaintiff relied on Internet advertisements that said, "the bulbs would last longer, use a fraction of the energy of incandescent bulbs, and save [her] money." (Id.). Moreover, plaintiff claims defendant's packaging contains a "10 Year Warranty and/or [a] '100% Satisfaction Guarantee[].'" (Id. ¶ 22). Finally, she alleges the light bulbs "burned out within six months" of her purchase. (Id. ¶ 42).

**DISCUSSION**

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678;

---

[1]    Plaintiff defines the class period as "the applicable limitations period." (Doc. #1 ("Compl.") ¶ 45).

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Courts may also consider matter of which judicial notice may be taken, including public documents and records. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

II.     Judicial Notice

Defendant requests the Court take judicial notice of documents relating to: (i) Young v. Cree, a lawsuit alleging similar claims against defendant in the United States District Court for the Northern District of California; (ii) Nguyen v. Cree, a lawsuit alleging similar claims against defendant in the United States District Court for the District of Oregon; and (iii) two of defendant's packages that were partially depicted in plaintiff's complaint. (Docs. ##11, 12). Plaintiff has not opposed the request.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Specifically, a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Commc'ns, Inc. v. City of New York, 458 F. 3d 150, 157 (2d Cir. 2006). Here, the Court takes judicial notice of defendant's exhibits 1 through 5 (Docs. ##11-1 through 11-5), as these are documents filed in other lawsuits comprising similar allegations against defendant.

Moreover, the Court may take judicial notice of documents referenced in the complaint, even if the documents are not physically attached to the complaint, so long as their authenticity is not contested. See Smith v. Westchester County, 769 F. Supp. 2d 448, 458 n.7 (S.D.N.Y. 2011). For this reason, the Court takes judicial notice of defendant's exhibits 6 and 7. (Docs. ##11-6, 11-7). These exhibits are: (i) the Complete Packaging for Cree 60W 2700K Two Bulb Multi-Pack; and (ii) the Complete Packaging for Cree 75W 4" Recessed Downlight. Here, plaintiff partially depicted the documents in the complaint (see Compl. ¶¶ 7–8), and thus these documents are incorporated by reference. The authenticity of these documents is supported by a declaration of Phil Primato, the Senior Manager of Consumer Marketing in Cree's Lighting Division. (See Doc. #12 ("Primato Decl.") ¶¶ 8, 9).

Accordingly, the Court takes judicial notice of the following documents:

- Exhibit 1: Original Complaint dated October 27, 2017, and filed in <u>Young v. Cree</u>, 4:17-cv-0625-YGR, before the United States District Court for the Northern District of California;

- Exhibit 2: April 9, 2018, Order on Cree's Motion to Dismiss the Original Complaint in <u>Young v. Cree</u>, 4:17-cv-0625-YGR;

- Exhibit 3: First Amended Complaint dated April 30, 2018, and filed in <u>Young v. Cree</u>, 4:17-cv-0625-YGR;

- Exhibit 4: August 2, 2018, Order on Cree's Motion to Dismiss the First Amended Complaint in <u>Young v. Cree</u>, 4:17-cv-0625-YGR;

- Exhibit 5: Original Complaint dated December 6, 2018, and filed in <u>Nguyen v. Cree</u>, 3:18-cv-02097, before the United States District Court for the District of Oregon;

- Exhibit 6: Complete Packaging for Cree 60W 2700K Two Bulb Multi-Pack; and

- Exhibit 7: Complete Packaging for Cree 75W 4" Recessed Downlight.

III. <u>Preemption</u>

Plaintiff alleges defendant's labeling, marketing, and advertising of its LED bulbs give rise to liability. Specifically, plaintiff complains of statements concerning: (i) defendant's bulbs' minimum estimated lifespan, (ii) comparative savings with respect to its competitors, and (iii) defendant's 100% satisfaction guaranteed warranty.

Defendant argues plaintiff's claims are preempted by the Energy Policy and Conservation Act (the "EPCA"). <u>See</u> 42 U.S.C. § 6297. Defendant contends federal law requires bulb manufacturers and sellers, like defendant, to make certain statements on its product labeling, and that the EPCA explicitly preempts any state law claims respecting such statements.

The Court agrees with defendant inasmuch as plaintiff's claims are based on representations made pursuant to the EPCA-required disclosures on the Lighting Facts label, but disagrees to the extent defendant made representations in its advertising and labeling beyond what is required by the EPCA.

A.    Legal Standard

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000). Thus, "[w]here state and federal law directly conflict, state law must give way." PLIVA, Inc. v. Mensing, 564 U.S. 604, 617–18 (2011). In determining whether federal preemption applies, "[c]ourts must 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act.'" Utts v. Bristol-Myers Squibb Co., 251 F. Supp. 3d 644, 660 (S.D.N.Y. 2017) (quoting Wyeth v. Levine, 555 U.S. 555, 565 (2009)).

"Express preemption is present when Congress's intent to preempt state law is explicitly stated in the statute's language." In re PepsiCo., Inc., Bottled Water Mktg. & Sales Practices Litig., 588 F. Supp. 2d 527, 530 (S.D.N.Y. 2008). To determine whether Congress intended to preempt state law, courts consider whether "the statute contains an express pre-emption clause," then "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993).

B.    Application

To reduce energy use, the EPCA establishes requirements pursuant to a national energy conservation program. The statute and corresponding regulation require LED bulb

manufacturers to make certain disclosures respecting energy use, efficiency, and estimated

annual operating costs:

> (i) The principal display panel of the product package shall be labeled clearly and conspicuously with the following information consistent with the Prototype Labels in Appendix L:
>
>> (A) The light output of each lamp included in the package, expressed as "Brightness" in average initial lumens rounded to the nearest five;
>>
>> (B) The estimated annual energy cost of each lamp included in the package, expressed as "Estimated Energy Cost" in dollars and based on usage of 3 hours per day and 11 cents ($0.11) per kWh; and
>>
>> (C) The life, as defined in this part, of each lamp included in the package, expressed in years rounded to the nearest tenth (based on 3 hours operation per day).

16 C.F.R. § 305.23 (Labeling for Lighting Products).[3]  In short, the "principal display panel"

must include certain information regarding:  "(i) energy efficiency, (ii) efficiency testing, (iii)

operating costs, and (iv) labeling requirements."  Young v. Cree, Inc., 2018 WL 1710181, at *3

(N.D. Cal. Apr. 9, 2018) (citing 42 U.S.C. §§ 6291–6309).

The pertinent statute provides that any state or federal claim is preempted if the claim

arises out of required disclosure language.  The EPCA preemption clause states:

> (g) No warranty.  Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provisions of this part shall not create an express or implied warranty under State or Federal law that such energy efficiency will be achieved or that such energy use or estimated annual operating cost will not be exceeded under conditions of actual use.

42 U.S.C. § 6297(g).

Here, express preemption applies.  Courts interpreting Section 6297(g) "have held that

the EPCA preempts both warranty and non-warranty claims which arise from [a] defendant's

---

[3]      Although the briefing refers to 16 C.F.R. § 305.15 (see Doc. #22 ("Pl. Mem.") at 6), the regulation was updated effective November 29, 2019, and is now 16 C.F.R. § 305.23.

'disclosures with respect to energy use, energy efficiency, or estimated annual operating cost which [are] required to be made under the EPCA.'" Nguyen v. Cree, Inc., 2019 WL 7879879, at *3 (D. Or. Nov. 6, 2019), report and recommendation adopted, 2019 WL 6917887 (D. Or. Dec. 17, 2019) (alterations in original) (citing Young v. Cree, Inc., 2018 WL 1710181, at *3). Further, courts have determined Section "6297(g) expressly preempts all . . . claims [which] allege that [consumer products] did not perform as promised on a federally required label." Id. (alterations in original).

Thus, like the courts in Young and Nguyen, which considered identical claims against the same defendant, this Court must evaluate defendant's statements for express preemption.

First, plaintiff's claim that defendant misrepresented the minimum estimated lifespan of its bulbs is preempted by federal law because those allegations concern statements the EPCA mandates. Federal law requires defendant's packaging include "[t]he life, . . . expressed in years," of each bulb. See 16 C.F.R. § 305.23(c)(i)(C). Consistent with Young and Nguyen, the Court finds plaintiff's misrepresentation claims "preempted to the extent that they are premised on alleged misrepresentations regarding the minimum estimated lifespan of Defendant's bulbs, because Plaintiff's claims simply reiterate federally required disclosures." Nguyen v. Cree, 2019 WL 7879879, at *5 (citing Young v. Cree, 2018 WL 1710181, at *4 & n.5).

Second, plaintiff's claim that defendant misrepresented the cost savings of its bulbs, as compared to defendant's competitors, is not preempted. Although such statements derive from the "estimated annual energy cost" the EPCA requires, the statements go beyond what the EPCA mandates. Here, plaintiff claims defendant touted the "superior longevity and cost savings of its bulbs compared to others in the marketplace." Nguyen v. Cree, Inc., 2019 WL 7879879, at *5. For example, plaintiff alleges defendant "advertises a Lifetime savings of $138 with a yearly

average energy cost savings of $1.99" for the 100 Watt replacement Standard Type-A bulb, and more generally, that defendant's products "will save consumers hundreds of dollars per bulb of energy costs over the useful lifetime of the product." (Compl. ¶¶ 34, 36). Thus, plaintiff alleges defendant violated an extrinsic duty <u>not</u> to deceive, a duty that is outside the federal statutory and regulatory requirements. (<u>See</u> Pl. Mem. at 10, 12). Consistent with <u>Young</u> and <u>Nguyen</u>, the Court finds that such claim is not preempted by the EPCA because defendant's alleged statements "go beyond merely reporting the EPA-estimated bulb lifespan and convey an allegedly false impression about the superior longevity and cost savings of [the defendant's] LED Bulbs." <u>Nguyen v. Cree, Inc.</u>, 2019 WL 7879879, at *5 (citing <u>Young v. Cree</u>, 2018 WL 1710181, at *5).

Third, plaintiff's claim that defendant made misrepresentations respecting the warranty—a ten-year 100% satisfaction guarantee—are not preempted. Such statements are not required by, and therefore do not implicate, the EPCA. <u>See</u> <u>Nguyen v. Cree</u>, 2019 WL 7879879, at *5–6. Consistent with <u>Young</u> and <u>Nguyen</u>, the Court finds these statements "fall outside the reach of the EPCA and thus are not preempted." <u>Id</u>. at *6 (concluding warranty statements not federally preempted); <u>Young v. Cree</u>, 2018 WL 1710181, at *5 (same).

Defendant argues the Court should follow <u>Schwartz v. Vizio, Inc.</u>, 2017 WL 2335364 (C.D. Cal. May 23, 2017), and <u>Jurgensen v. Felix Storch, Inc.</u>, 2012 WL 2354247 (S.D.N.Y. June 14, 2012), because in those cases the courts concluded plaintiff's claims that were not expressly preempted were merely "backdoor" means of pursuing the preempted claims. The Court disagrees, but agrees with <u>Schwartz</u> and <u>Jurgensen</u> respecting the preemption analysis.

In <u>Schwartz v. Vizio, Inc.</u>, the plaintiff brought warranty and non-warranty claims alleging that defendant's representations regarding energy efficiency contained within a

federally-required energy label were misleading.  2017 WL 2335364, at *3–4.  In granting

defendant's motion to dismiss, the <u>Vizio</u> court held that plaintiff's warranty claims were

preempted under the EPCA, and plaintiff's non-warranty claims were similarly preempted on the

ground that they were "simply . . .  backdoor" attempts to recast "a breach of warranty claim."

<u>Id</u>. at *4.  The court further ruled plaintiff's other claims failed as a matter of law.  <u>Id</u>. at *7–9.

However, the court did not address whether a claim stemming from distinct alleged

misrepresentation that is not otherwise preempted could survive a motion to dismiss.

        In <u>Jurgensen v. Felix Storch, Inc.</u>, the plaintiff alleged that a freezer distributor

"substantially understated . . . energy consumption" when it did not actually comply with federal

law.  2012 WL 2354247, at *1.  Ultimately, the <u>Jurgensen</u> court distinguished between

statements concerning freezers, which were required by federal law, and statements

misrepresenting energy consumption.  Although the court found that Section 6297(g) preempted

the plaintiff's warranty claims, it determined that plaintiff's fraud claim arising under a different

statutory subsection, 42 U.S.C. § 6297(a)(1)(B), survived defendant's motion to dismiss.  <u>Id</u>. at

*5.

        Here, like <u>Nguyen</u>, <u>Young</u>, <u>Schwartz</u>, and <u>Jurgensen</u>, the Court distinguishes those

allegations that are federally preempted, and those that are not.

        Accordingly, plaintiff's claims respecting the comparative cost savings and the 10-year

satisfaction guarantee may proceed.  However, as noted above, plaintiff's claims respecting the

lifespan of the bulbs are preempted pursuant to the EPCA.

III.    <u>New York General Business Law Claim</u>

        Defendant argues plaintiff cannot state a plausible claim for deceptive trade practices

under New York General Business Law Sections 349 and 350 because defendant's statements

are either protected by the statutes' safe harbors, and, even if they are not, such statements are immaterial, non-actionable puffery, or, alternatively, true.

The Court disagrees.

A. <u>Legal Standard</u>

Section 349 of the New York General Business Law renders unlawful unfair or deceptive business practices. <u>INV Accelerator, LLC v. MX Techs., Inc.</u>, 2020 WL 8822902, at *6 (S.D.N.Y. Feb. 24, 2020). A plaintiff asserting a claim under Section 349 must plead factual allegations which would allow a court to draw a reasonable inference that: "(1) the defendant has engaged in an act or practice that is deceptive or misleading in a material way; (2) the plaintiff has suffered injury by reason thereof; and (3) the deceptive act or practice is consumer oriented." <u>In re Sling Media Slingbox Advert. Litig.</u>, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (citing <u>Koch v. Greenberg</u>, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014), <u>aff'd</u> 626 Fed. App'x 335 (2d Cir. 2015)).

 "It is uncontroverted that Section 349 . . . prohibits deceptive practices that are directed to consumers." <u>Amos v. Biogen Idec Inc.</u>, 28 F. Supp. 3d 164, 173 (W.D.N.Y. 2014); <u>see</u> <u>also</u> <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 25 (1995). Indeed, "[f]or purposes of [Section] 349, consumers are defined as those who purchase goods and services for personal, family or household use." <u>INV Accelerator, LLC v. MX Techs., Inc.</u>, 2020 WL 8822902, at *6.

Section 350 renders unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350.

To state a plausible Section 350 claim, a plaintiff must allege that the act, practice or advertisement was consumer-oriented and misleading in a material respect, and that plaintiff was injured as a result of such conduct. Medisim Ltd. v. BestMed LLC, 910 F. Supp. 2d 591, 607 (S.D.N.Y. 2012). "A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied." Id.

B.     Application

   1.     Safe Harbors

Defendant argues its allegedly misleading statements are not actionable because such statements fall within the statutes' safe harbors.

The Court disagrees.

Section 349 has a safe harbor which makes it "a complete defense that the [deceptive] act or practice is, . . . subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States." N.Y. Gen. Bus. Law § 349(d). Like Section 349, Section 350 also provides a safe harbor for statements made pursuant to federal statutes and regulations. See N.Y. Gen. Bus. Law § 350-d ("In any such action it shall be a complete defense that the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission or any official department, division, commission or agency of the state of New York.").

The New York General Business Law safe harbors are co-extensive with the Court's preemption analysis, and thus any claims that survived the EPCA preemption are not felled by the statutes' safe harbors. Further, defendant's reliance on Cytyc Corp. v. Neuromedical Sys., Inc., 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998), is misplaced. In that case, many of the

statements challenged as "false or misleading [were], in fact, consistent with the substantive claims approved by the [federal agency]," 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998), whereas here, plaintiff asserts the statements she challenges as false or misleading go beyond the scope of the EPCA's required language.

Here, plaintiff's claims concerning statements that are not preempted by the EPCA are not protected by the state statutes' safe harbors. See Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019). ("GBL's safe harbor provisions have no effect if the claims are not preempted"). As noted herein, plaintiff alleges she relied on statements that defendant's bulbs would yield: (i) energy efficiency savings and (ii) 100% consumer satisfaction over a ten-year warranty. Plaintiff asserts defendant's bulbs went dark within six months and therefore did not result in the savings, satisfaction, or durational warranty promised. Thus, plaintiff's claims concerning these allegations, which are outside the scope of the EPCA preemption clause, are also outside the safe harbors' protections.

The Court next addresses whether the allegations are actionable as a matter of law.

   2.  Immaterial Statements

Defendant argues any of its non-preempted, allegedly misleading statements are immaterial, and therefore not actionable under Sections 349 and 350.

The Court disagrees.

To state a claim for misrepresentation—the theory underpinning plaintiff's deceptive labeling and advertising claims arising under statutory, contract, and tort law—plaintiff must allege that the misleading statements were material. "Not all deceptive acts or practices are actionable under § 349; only those acts or practices that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances'" are actionable. In re Sling Media

Slingbox Advert. Litig., 202 F. Supp. 3d at 360 (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d at 26).  "Stated another way, a 'material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'"  Id. (citing Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004).

Here, plaintiff claims she relied on defendant's statements in purchasing defendant's products.  Specifically, plaintiff alleges defendant's product labeling and advertising regarding "quality, characteristics, reliability, durability, and longevity—is misleading in a material way in that it, inter alia, induced Plaintiff and the Class to purchase and pay a premium for Defendant's Products and to use these Products when they otherwise would not have."  (Compl. ¶ 61). Moreover, plaintiff alleges that she "viewed some internet advertisements by Cree prior to purchasing the bulbs that contained representations that the bulbs would last longer, use a fraction of the energy of incandescent bulbs, and save [her] money."  (Id. ¶ 41).  Thus, plaintiff has adequately pleaded defendant's labeling and advertising induced her to purchase defendant's product.

Accordingly, plaintiff plausibly alleges material misrepresentation as required by the New York General Business Law.

> 3.  Puffery

Defendant next argues any allegedly misleading statements are merely non-actionable puffery.

The Court agrees with defendant with respect to allegations respecting the satisfaction guarantee but disagrees with respect to allegations respecting the cost savings and ten-year warranty.

"Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language," Kacocha v. Nestle Purina Petcare Co., 2016 WL 4367991, at *16 (S.D.N.Y. Aug. 12, 2016) (quoting Chobani, LLC v. Dannon Co., 157 F. Supp. 3d 190, 202 (N.D.N.Y. 2016))—in other words, a "[s]ubjective claim[ ]" about a product that "cannot be proven either true or false," Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995). Accordingly, a statement may be puffery only if "a reasonable consumer would not interpret [it] as a factual claim upon which he could rely." Solak v. Hain Celestial Grp., Inc., 2018 WL 1870474, at *6 (S.D.N.Y. Apr. 17, 2018) (quoting Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011)). Thus, "puffery is not actionable" under consumer protection statutes. See Kacocha v. Nestle Purina Petcare Co., 2016 WL 4367991, at *16.

Here, the Court finds defendant's alleged misrepresentation respecting the 100% guarantee is merely a commendation of the goods, and therefore non-actionable puffery. However, defendant's other alleged misrepresentations, concerning cost savings and the ten-year warranty, are closer to factual assertions.

Accordingly, dismissing plaintiff's complaint as merely pleading statements that amount to puffery is not warranted, even though defendant's 100% satisfaction guarantee is not actionable under the New York General Business Law.

### 4. Truthful Statements

Finally, defendant argues any allegedly misleading statements were truthful, and therefore not actionable.

Such a determination is not appropriate at this early stage of the proceedings, before the parties have had an opportunity to conduct discovery and assess the veracity of defendant's statements.

Accordingly, the Court declines to dismiss plaintiff's remaining New York General Business Law claims.

IV.     Breach of Warranty Claims

Defendant argues plaintiff's breach of warranty claims must be dismissed because plaintiff: (i) fails to allege she requested a refund or replacement, as required to state a claim for breach of express warranty; and (ii) fails adequately to plead privity, as required to state an implied warranty claim.

The Court agrees.

The Magnuson-Moss Warranty Act ("MMWA") "incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." Ebin v. Kangadis Food Inc., 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013) (discussing 15 U.S.C. § 2301(6)). "The MMWA, however, creates no additional bases for liability, but allows a consumer to recover damages under existing state law, and attorneys['] fees." Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006).

Accordingly, the Court turns to assess plaintiff's claims for breach of warranty arising under the MMWA, and, by incorporation, New York law.

A.     Express Warranty

The MMWA "grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty." Wilbur v. Toyota Motor Sales, U.S.A., Inc., 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). "Written warranty" is defined as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or

workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).  Indeed, "the MMWA makes a warrantor directly liable to a consumer for breach of a written warranty" and thus, "a buyer may obtain a refund of the purchase price from a manufacturer for breach of an express warranty."  Shuldman v. DaimlerChrysler Corp., 1 A.D.3d 343 (N.Y. App. Div. 2d Dep't 2003).

Under New York law, any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  N.Y.U.C.C. § 2–313(1)(a). "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."  Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).

A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty "may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies."  Arthur Glick Leasing, Inc. v. William J. Petzold, Inc., 51 A.D.3d 1114, 1116 (N.Y. App. Div. 3d Dep't 2008) (citing Randy Knitwear, Inc. v. Am. Cyanamid Co., 11 N.Y.2d

5, 14 (1962) (no privity requirement when manufacturer made express representations to induce reliance by remote purchasers)). However, a plaintiff complaining of breach of express warranty must "set forth the terms of the warranty upon which he relied." Parker v. Raymond Corp., 87 A.D.3d 1115, 1117 (N.Y. App. Div. 2d Dep't 2011). "An express warranty is not a representation that a product has no defects, but rather a promise to repair, replace, or refund a failed product." Punian v. Gillette Co., 2016 WL 1029607, at *6 (N.D. Cal. Mar. 15, 2016). Indeed, "a cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product." Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d at 464.

Here, plaintiff has failed to state a claim for breach of express warranty arising under the MMWA or New York law. Plaintiff alleges that defendant, in its labels, marketing, and advertising, expressly warranted: (i) savings due to energy efficiency compared to defendant's competitors; and (ii) a ten-year 100% satisfaction guarantee. Plaintiff insists she relied on these representations when she purchased defendant's bulbs. Plaintiff also asserts defendant's bulbs burned out within six months and therefore did not result in the warranted savings, satisfaction, or durational warranty. However, plaintiff does not allege she asked defendant to refund or replace the defective bulbs. (See Compl. ¶ 104).

Plaintiff cites a New York Court of Appeals case from 1873 for the proposition that she may bring a claim for breach of an express warranty even when she has not sought repair, replacement, or refund from defendant. See Day v. Pool, 52 N.Y. 416 (1873). The Court is not persuaded. A reasonable 21st century consumer would understand that if the bulbs did not last as long as the ten-year durational statement—as advertised or marketed—defendant would provide a replacement or refund. See Punian v. Gillette Co., 2016 WL 1029607, at *6; see also

Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 464 (S.D.N.Y. 2019) ("Plaintiff stated a claim for breach of express warranty, since product descriptions such as those on Off! Clean Feel's label are considered express warranties under New York's Uniform Commercial Code, and Plaintiff alleged that the label statements were part of the basis of the bargain.").

Accordingly, the Court finds plaintiff has failed adequately to plead a claim for breach of express warranty.

B.    Implied Warranty

Defendant argues plaintiff's breach of implied warranty claim must be dismissed because plaintiff was not in privity with defendant.

"New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic." Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (citing Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc., 58 N.Y.2d 993, 995 (1983)).

Here, plaintiff alleges economic loss, but she has not alleged personal injury. She asserts: "Defendant's breaches of warranty have caused Plaintiff and the Class to suffer injuries, pay for defective products, and enter into transactions they would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and the Class have suffered damages." (Compl. ¶ 107). However, she fails to allege she was in contractual privity with defendant. Indeed, she alleges she purchased defendant's product at Home Depot. Under New York law, such an allegation is insufficient to establish privity.

Accordingly, plaintiff fails to plead a claim for breach of implied warranty.

V.       Fraudulent Misrepresentation and Concealment

Defendant argues the complaint fails to allege with particularity fraudulent misrepresentation and concealment, as required by Rule 9(b).

The Court disagrees.

A claim for fraud under New York law requires a showing of "misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996).

In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "[T]o comply with Rule 9(b), the complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  And "[t]o meet the requirements of Rule 9(b) a plaintiff must show the manner in which he was damaged by the implementation of a deceptive or manipulative practice or by a misrepresentation or omission."  Moran v. Kidder Peabody & Co., 609 F. Supp. 661, 665 (S.D.N.Y. 1985).

Here, plaintiff pleads a plausible claim for fraudulent misrepresentation and concealment. First, plaintiff identifies the statements she contends were fraudulent—for example, that plaintiff would save upwards of hundreds of dollars over the lifetime of the bulbs, and that the bulbs would perform better than other less expensive LED and non-LED bulbs.  (See Compl. ¶¶ 36, 41).  Second, plaintiff identifies the speaker as defendant.  Third, plaintiff states where and when

the statements were made—on defendant's labeling on the items sold at Home Depot, defendant's marketing materials, and defendant's Internet advertising.  (Id.)  Fourth, plaintiff adequately alleges why such statements were fraudulent—the bulbs burned out within six months, and as a result, did not save plaintiff money, and therefore did not perform better than other less expensive, or non-LED bulbs sold by defendant's competitors.  (Id. ¶¶ 42, 44).  Finally, plaintiff alleges she paid a premium for a defective product, and that defendant induced plaintiff to buy the defective product through misrepresentation and concealment.  See Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d at 421.

Accordingly, plaintiff has adequately alleged a claim for fraudulent misrepresentation and concealment.

VI.     Unjust Enrichment

Defendant argues plaintiff cannot, as a matter of law, plead a claim for unjust enrichment because such claim is duplicative of plaintiff's prior claims.

The Court agrees.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  In re Mid-Island Hosp., Inc., 276 F.3d 123, 129 (2d Cir. 2002).  Unjust enrichment is available as a cause of action "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d at 483 (citing Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012)).  This claim is "not available where it simply duplicates, or replaces, a

conventional contract or tort claim." Id. (citing Corsello v. Verizon N.Y., Inc., 18 N.Y.3d at 790).

Here, plaintiff's unjust enrichment claim is duplicative of plaintiff's other claims for material misrepresentations rooted in statutory, contract, and tort law. Plaintiff alleges that to sell its product defendant committed actionable wrongs through the use of deceptive, fraudulent, and misleading labeling, advertising, and marketing. The factual allegations plaintiff uses to support her unjust enrichment claim—namely, "Defendant has been unjustly enriched to Plaintiff's and the Class members' detriment as a result of Defendant's unlawful and wrongful retention of money conferred by Plaintiff and the Class who were unaware of Defendant's misrepresentations," (Compl. ¶ 88)—are the same factual allegations used to support plaintiff's statutory, contract, and tort law claims. Thus, the unjust enrichment claim is duplicative of plaintiff's other claims and must be dismissed.

VII. Leave to Amend

Defendant argues plaintiff should not be given leave to amend her pleading.

The Court agrees.

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." However, leave to amend "may properly be denied for: 'undue delay, . . . [or] futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, the Court finds plaintiff adequately pleaded claims for: (i) violations of New York General Business Law Sections 349 and 350 and (ii) fraudulent misrepresentation and concealment. Moreover, plaintiff was given an opportunity to amend her complaint and chose not to do so. (See Doc. #15). Notwithstanding, the Court finds that repleading would be futile,

because the problems with plaintiff's complaint are substantive and will not be cured by better pleading.  See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) ("leav[ing] unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility").

To the extent plaintiff is entitled to relief, such relief can be obtained from the claims that will proceed.  Further, granting plaintiff leave to amend would likely result in a renewed motion to dismiss, causing further delay to the progress of this case.  In light of the Court's finding that repleading would be futile, further delay would be unwarranted and contrary to the interests of justice.  See Fed. R. Civ. P. 1.

Accordingly, plaintiff's request for leave to amend is denied.

## CONCLUSION

For the above reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's claims (i) for violations of the New York General Business Law Sections 349 and 350, and (ii) for fraudulent misrepresentation and concealment, shall proceed.  All other claims are dismissed.

By April 3, 2020, defendant shall file an answer.

The Clerk is instructed to terminate the motion.  (Doc. #9).

Dated: March 20, 2020
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge