**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x
:
STEPHANIE WEDRA, individually on behalf of    :
herself and on behalf of all others similarly situated, :    Civil Action No. 7:19-cv-03162-VB
:
           Plaintiff,    :
                              :
v.    :
                              :
CREE, Inc.,    :
                              :
           Defendant.    :
:
:
:
:
——————————————————————— x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  The material facts support class treatment ......................................................................... 2

   A.   Cree Developed and Marketed the LED Lightbulbs on the Basis of Longevity and Cost Savings, Which It Intended to be Material to Consumers ...................................................... 2

   B.   Cree Made Uniform False and Misleading Statements About the Longevity and Cost Savings of Its LED Lightbulbs ............................................................................................. 3

   C.   Cree's Overarching Marketing Strategy  Reinforce Its Labeling Strategy ......................... 4

   D.   The LED Lightbulbs Share a Common Design Defect and Exhibit Widespread Failure During the Class Period As Illustrated By Plaintiff's Experts and Cree's Internal Documents. 4

   E.   Cree Made Voluminous Sales in New York During the Class Period ............................... 6

   F.   Plaintiff and the Class Members Paid a Price Premium for Cree's Longevity Representations ................................................................................................................... 7

   G.   Plaintiff's Experience .................................................................................................... 7

   A.   The Legal Standard for Class Certification ..................................................................... 8

   B.   Rule 23(a) Is Satisfied ................................................................................................... 9

     1.   The Class Is So Numerous That Joinder is Impracticable ............................................ 9

     2.   Questions of Law and Fact Are Common to the Class ................................................. 9

     3.   Plaintiff's Claims are Typical of Class Members' Claims ........................................... 13

     4.   Plaintiff and Counsel Will Adequately Represent the Class ........................................ 14

     5.   The Proposed Class is Ascertainable ........................................................................ 15

   C.   The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ................................... 16

     1.   Common Issues Predominate Over Individual Issues .................................................. 16

       a.   New York General Busines Laws Sections 349 and 350 .......................................... 17

       b.   Fraudulent Misrepresentation and Concealment .................................................... 19

       c.   Common Evidence Can Prove Each Cause of Action .............................................. 20

       d.   Damages Can Be Determined on a Class-Wide Basis .............................................. 22

       e.   A Class Action Is Superior to Individual Actions ................................................... 24

   D.   Rule 23(b)(2) Is Satisfied ............................................................................................ 24

IV.  CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................17, 20

*In re AMLA Litig.*,
320 F. Supp. 3d 578 (S.D.N.Y. 2018)..............................................................11, 19

*Ault v. J.M. Smucker Co.*,
No. 13-CV-3409, 2015 U.S. Dist. LEXIS 103328, 2015 WL 4692454
(S.D.N.Y. Aug. 6, 2015).................................................................................24

*Aziz v. City of N.Y.*,
No. 1:18cv2334, 2021 U.S. Dist. LEXIS 28536 (S.D.N.Y. Feb. 16, 2021) ............................17

*Baffa v. Donaldson*,
222 F.3d 52 (2d Cir. 2000)..............................................................................14

*Belfiore v. P&G*,
311 F.R.D. 29 (E.D.N.Y. 2015) ................................................................. *passim*

*Brecher v. Republic of Argentina*,
802 F.3d 303 (2d Cir. 2015)..............................................................................15

*Civic Ass'n of the Deaf v. Giuliani*,
915 F. Supp. 622 (S.D.N.Y. 1996) .....................................................................10

*Comcast Corp v. Behrend*,
569 U.S. 27 (2013)........................................................................................22

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)................................................................................9

*Delarosa v. Boiron*, *Inc.*,
275 F.R.D. 582 (C.D. Cal. 2011).........................................................................20

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
445 U.S. 326 (1980).......................................................................................8

*In re Dial Complete Mktg. & Sales Practices Litig.*,
320 F.R.D. 326 (D.N.H.2017) ...........................................................................23

*Ebin v. Kangadis Food, Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ................................................................. *passim*

*In re Emerson Elec. Co. Wet/Dry VAC Mktg. & Sales Litig.*,
   No. MDL No. 2382, 2017 U.S. Dist. LEXIS 197819 (E.D. Mo. Dec. 1, 2017).....................23

*Espinoza v. 953 Assocs. LLC*,
   280 F.R.D. 113 (S.D.N.Y. 2011) ............................................................................................8

*Flores v. Anjost Corp.*,
   284 F.R.D. 112 (S.D.N.Y. 2012) ............................................................................................9

*Fogarazzo v. Lehman Bros.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ..........................................................................................13

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ..............................................................................19, 22, 23

*Goshen v. Mut. Life Ins. Co.*,
   98 N.Y.2d 314 (2002) ...........................................................................................................18

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) ..........................................................................................19

*Hasemann v. Gerber Prods. Co.*,
   No. 15-CV-2995 (MKB) (RER), 2019 U.S. Dist. LEXIS 28770 (E.D.N.Y.
   Feb. 20, 2019) .................................................................................................................10, 18

*In re IndyMac Mortg.-Backed Secs. Litig.*,
   286 F.R.D. 226 (S.D.N.Y.2012) .............................................................................................9

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)....................................................................................................15

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ..........................................................................................10

*Mandarin Trading Ltd. v. Wildenstein*,
   919 N.Y.S.2d 465 (2011)......................................................................................................19

*Marisol A. v. Giuliani*,
   126 F. 3d 372 (2d Cir. 1997).................................................................................................10

*Marisol A. v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996), aff'd, 126 F.3d 372 (2d Cir. 1997) ................................13

*Massre v. Mullooly*,
   2020 U.S. Dist. LEXIS 173894 (E.D.N.Y. Sep. 20, 2020)......................................................14

*Massre v. Mullooly, Jeffrey, Rooney & Flynn LLP*,
   2020 U.S. Dist. LEXIS 158459 (E.D.N.Y. Aug. 28, 2020).....................................................14

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000)............................................................................17, 18

*Moore v. Paine Webber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)................................................................................17

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    No. 1:15-cv-6549 (CM) (RWL), 2021 U.S. Dist. LEXIS 26566 (S.D.N.Y.
    Feb. 11, 2021) .......................................................................................................13

*Pearlstein v. Blackberry Ltd.*,
    2021 U.S. Dist. LEXIS 14888 (S.D.N.Y. Jan. 26, 2021).......................................17

*Phillips Petroleum Co. v. Shutts*,
    472 US 797 (1985)...................................................................................................8

*Price v. L'Oreal USA, Inc.*,
    17 Civ. 614 (LGS), 2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018)...12, 18, 22, 23

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) .............................................................................9

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)...................................................................................22

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...............................................................................9, 13

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) .....................................................................11, 20

*Royal Park Invs. SA v. Wells Fargo Bank, N.A.*,
    No. CV-09764 (KPF)(SN), 2018 U.S. Dist. LEXIS 9087 (S.D.N.Y. Jan. 10,
    2018) .......................................................................................................................14

*Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011)..................................................................................14

*In re Scott's EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................. *passim*

*In re Scotts*,
    304 F.R.D. 409 ................................................................................16, 18, 19, 22

*Spread Enters., Inc. v. First Data Merch. Servs. Corp.*,
    298 F.R.D. 54 (E.D.N.Y. 2014) ..............................................................................8

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) .......................................................................... 14, 24

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ..................................................................................... 17

*Vergara v. Apple Reit Nine*,
    No. 19 CV 2027 (DLI)(RML), 2021 U.S. Dist. LEXIS 23920 (E.D.N.Y. Feb.
    5, 2021) .......................................................................................................... 14

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ............................................................................. 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................... 9, 10

*Young v. Cree*
    4:17-cv-06252-YGR (N.D. Cal.) 46-49 ............................................................ 6

**Statutes**

New York General Business Law § 349 ................................................................ 17, 24

New York General Business Law § 350 ....................................................................... 18

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................... 1, 20

Fed. R. Civ. P. 23(a) ................................................................................................. 8, 9

Fed. R. Civ. P. 23(a)(1) ................................................................................................. 9

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 9

Fed. R. Civ. P. 23(a)(3) ............................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ............................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 24

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................................... 15

xFed. R. Civ. P. 23(b) ................................................................................................... 8

Fed. R. Civ. P. 23(b)(2) ............................................................................................... 24

Fed. R. Civ. P. 23(b)(3) ......................................................................................... *passim*

## I.       INTRODUCTION

Defendant Cree Inc. ("Cree") has made substantially similar, material misrepresentations to Plaintiff Stephanie Wedra ("Plaintiff") and other New York consumers that tout the longevity, cost savings, and warranty coverage of Cree's LED Lightbulbs in comparison to competitors' lightbulbs.[1] What Cree did not tell Plaintiff or other consumers, even though they complained to Cree about problems they suffered, is that its 60 and 100 watt LED Lightbulbs suffer from a common design defect, which means they cannot live up to label statements and promises included on packaging. As Plaintiff's expert Dr. Gary Allen's, report illustrates, ███████████████

████████████████████████████████████████████████████████████

████████████████  *See* Sultzer Decl. Ex. 2 (Expert Report of Gary R. Allen, PhD ("Allen Report")). Further, as Plaintiff's expert ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████  *See* Sultzer Decl. Ex. 3 (Expert Report of Dr. Andreas Groehn ████████ ("Groehn Report")).  Plaintiff seeks certification of the following Class: All persons in New York who purchased A-type 60 watt and 100 watt Cree LED Lightbulbs for end use, and not resale, during the period from April 2013 to present. (the "Class").[2]

This matter is well suited for class certification and satisfies the requirements of Federal Rule of Civil Procedure 23 as detailed herein. The uniformity in the labeling and marketing of the LED Lightbulbs and common design defect will allow a trier of fact to utilize common evidence

---

[1] "LED Lightbulbs" means all of the bulbs listed in the chart accompanying this motion *See* Decl. of Jason P. Sultzer in Supp. Of Class Certification ("Sultzer Decl.") Ex. 1 (chart).

[2] Excluded from the Class are Cree, including its corporate affiliates, parents, or subsidiaries; Cree's employees, including officers and directors; the Court to which this case is assigned; and all persons who properly execute and file a timely request for exclusion from the Class.

to answer the common questions detailed below and assess damages on a class-wide basis. Finally, a class action is the best means of fairly and efficiently adjudicating this matter. Accordingly, Plaintiff respectfully requests that the Court grant the motion for class certification.

## II.    THE MATERIAL FACTS SUPPORT CLASS TREATMENT

### A.   Cree Developed and Marketed the LED Lightbulbs on the Basis of Longevity and Cost Savings, Which It Intended to be Material to Consumers

Cree began selling LED Lightbulbs in March 2013. *See* Sultzer Decl. Ex. 4 (Dep. of Scott Schwab 13:6-8 ("Schwab 30(b)(6) Dep.")). As early as 2006, Cree acknowledged that an "opportunity exists to 'own' this space." Sultzer Decl. Ex. 5 (CREE_00049176). The LED Lightbulbs Cree ultimately brought to market promised in the marketing and advertising to have certain distinguishing qualities from traditional, competing brands: ███████████████

███████████████████████████████████████

██████ Sultzer Decl. Ex. 6 (CREE_00050253). ████████████████████

████████████████████████████████ Sultzer Decl. Ex. 7 (CREE_00050252).

Cree's marketing research confirms this marketing strategy and its materiality to consumers. For example, ████████████████████████████

████████████████████████ *See* Sultzer Decl. Ex. 7 (CREE_00050252).

████████████████████████████████████

████████████████████████ *See, e.g.*, Sultzer Decl. Ex. 8 (CREE_00051023-24,  51047)  (████████████████████████

████████████████████); Sultzer Decl. Ex. 9 (CREE_00059264) (2013 study where 43% of purchasers indicate cost savings and efficiency as the most important driver); Sultzer Decl. Ex. 10 (CREE_00049050-51) (2014 study citing "cost savings from energy saved

over the life of the bulb" as a primary driver).  This market research gave Cree the foundation for its marketing platform, which would emphasize longevity and the corresponding cost savings.

### B. Cree Made Uniform False and Misleading Statements About the Longevity and Cost Savings of Its LED Lightbulbs

Cree's LED Lightbulbs are readily identifiable and were uniformly marketed and labeled. Cosmetic differences in the shape, color, size, or wattage of the LED Lightbulbs do not adversely impact the analysis as to the class-wide treatment of Cree's uniform statements regarding longevity and the associated cost savings.

The packaging for every LED Lightbulb at issue makes longevity and performance claims in at least one of three areas: (1) and cost savings, such as and "$226 Lifetime Energy Savings"; (2) longevity and performance comparisons to other LED bulbs, such as "Our LED bulbs work better and last longer"; and (3) "100% Satisfaction Guarantee." *See* Sultzer Decl. Ex. 1.  These statements are substantially similar in that they make or imply comparative longevity claims.

Cree's marketing and labeling efforts are uniform nationwide, and all labels for particular bulbs are uniform throughout the country, regardless of region of sale. *See* Schwab 30(b)(6) Dep. 38:25-39:13, 39:18-40:2.  Cree gives specific communication guidelines to be placed on the packaging through the use of a "dieline" or package template. Schwab 30(b)(6) Dep. 41:20-42:4, 43:7-9;  45:5-25;  Sultzer  Decl.  Exs.  11  (CREE_00032364),  12  (CREE_00032386),  13 (CREE_00032398), 14 (CREE_00032399), 15 (CREE_00032402), 16 (CREE_00032478), 17 (CREE_00032634), 18 (CREE_00032814), 19 (CREE_00032817), 20 (CREE_00032825), 21 (CREE_00032827), 22 (CREE_00032917), 23 (CREE_00032919), 24 (CREE_00032960), 25 (CREE_00032965), 26 (CREE_00032971), 27 (CREE_00032977), 28 (CREE_00032983), 29 (CREE_00032985), 30 (CREE_00032987). Once a Cree product is released on the market with a certain label or package, the package remains identical for that particular product until the product

is removed from the market. *See* Schwab 30(b)(6) Dep. 49:6-19.[3]  All the evidence produced to date is consistent with the material fact that separate and apart from the EnergyStar and lighting statements, all LED Lightbulbs are consistently marketed and labeled to advise consumers that the promised longevity results in cost savings.

### C.  Cree's Overarching Marketing Strategy  Reinforce Its Labeling Strategy

Cree's overall marketing strategy corroborates and reinforces its motivation to promote the purported longevity claims that are present on the label of every LED Lightbulb. This baseless strategy claims that the LED Lightbulbs have a lifespan that vastly exceeds that of incandescent or non-LED bulbs and compares them favorably to competitor LED bulbs in terms of performance and longevity and, thus, cost savings. Cree promises, "save money now and save money later" by purchasing the "100-watt Cree LED bulb [that] looks and lights like a traditional incandescent bulb…and is designed to last 25 times longer." Sultzer Decl. Ex. 48 (CREE_000004). It claims its bulbs "look and light like an incandescent, while…lasting 25 times longer," and are "Built to light and last…" Sultzer Decl. Ex. 49 (CREE_00032357). Cree's website reinforces this strategy as well, asserting with respect to its 100-Watt Replacement Standard A-Type bulbs that "Unlike some others, Cree doesn't compromise" and "lasts…up to 2x as long as the cheap LED bulbs." Sultzer Decl. Ex. 50 (marketing document from Cree website)

### D.  The LED Lightbulbs Share a Common Design Defect and Exhibit Widespread Failure During the Class Period As Illustrated By Plaintiff's Experts and Cree's Internal Documents

---

[3] Cree's LED Lightbulbs are all marketed and labeled to highlight the following characteristics focused on longevity of the Bulbs: (1) a promise that they will last longer than the comparative incandescent bulb, which therefore results in cost savings; and (2) a warranty for performance, which reinforces the longevity representations. *See*, *e.g.*, Sultzer Decl. Exs. 31 (CREE_00032359), 32 (CREE_00032360), 33 (CREE_00032361), 34 (CREE_00032362), 35 (CREE_00032369), 36 (CREE_00032379), 37 (CREE_00032381), 38 (CREE_00032383), 39 (CREE_00032385), 40 (CREE_00032391), 41 (CREE_00032415), 42 (CREE_00032418), 43 (CREE_00032431), 44 (CREE_00032432), 45 (CREE_00032446), 46 (CREE_00032448), 47 (CREE_00032483).

Plaintiff's expert Dr. Allen tested representative samples of Cree's LED Lightbulbs that account for variations in characteristics such as model, shape, size, color, brightness, and wattage replacement. *See* Allen Report. ████████████████████████████████████

████████████████████████████████████████████

████  *Id.* ████████████████████████████████

████████████ *Id* ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

Internal documents corroborate that Cree was well aware of the defects and habitual problems with its LED Lightbulbs. Cree employees commented internally about what it deemed to "another 100W failure" reported by a customer, that "[w]e continue to see RELATIVELY (to regular) high numbers of 100 / PAR failures." Sultzer Decl. Ex. 51 (CREE_00063522-23) (2014 internal e-mail).  The habitual nature of the problems was also known to Cree. *See* Sultzer Decl. Ex. 52 (CREE_00064005-06) (e-mail discussing 355 negative customer reviews states "every week we get a new list of review and begin the triage and outreach. We still have numerous failure reviews"); Sultzer Decl. Ex. 53 (CREE_ 00033869-70) ("There is enough "chatter" to start considering that there may indeed be a problem."); *id*. ("10 out of 70 complaint of early failure. VERY EARLY failure. This aligns with the anecdotal feedback from our customer service."). ████

████████████████████ ████████████████████████████

████████████████████ Specifically, ████████████████████

████████████████████████████████████████████ .

Allen Report at e.g. 3-5.

Importantly, the number of reported failures with the bulbs is likely infinitely larger than Cree documents show because Cree's warranty are uniformly drafted with requirements that make it burdensome for consumers to file a claim (i.e., require UPC proof of purchase and register

receipt. *See* Sultzer Decl. Ex. 54 (Ex. 5 to Schwab Decl. in the action *Young v. Cree* 4:17-cv-06252-YGR (N.D. Cal.) 46-49).[4] Consumers often may not keep receipts and proofs of purchase for relatively small consumer purchases, let alone track the number of hours they use their LED Lightbulbs.  Sultzer Decl. Ex. 55 (Dep. Of Scott Schwab 27:11-20 (Cree employee admitted there is no "rhyme or reason" to which receipts he keeps and does not keep). And as Cree's witness Schwab testified, they have no information about consumers who are unhappy with their LED Lightbulbs but do not make a warranty claim, return, or complaint. *Id.* at 14:14-15:17. Accordingly, there is evidence of a common defect and failure mechanism and the LED Lightbulbs' actual failure.

### E.  Cree Made Voluminous Sales in New York During the Class Period

When Cree introduced its LED Lightbulbs to the market, it sold them exclusively through Home Depot. Schwab 30(b)(6) Dep. 26:25-27:5. Cree now involves certain other retail channels but still sells roughly 85% of the LED Lightbulbs through Home Depot. *See id.* at 28:7-29:14. ███ ███████████████████████████████████████████████████████████ ███ Sultzer Decl. Ex. 56 (Ex. 3 to Schwab 30(b)(6) Dep.).

Cree sells hundreds of thousands of LED Lightbulbs per month nationwide through Home Depot alone. ████████████████████████████████████████████ ████████████████████████████████████████████ *See* Sultzer Decl. Ex. 57 (CREE_00049124). ███████████████████████████████ ████████████████████████ *See id.* ████████████████████████ ███████████████████████████████████. *Id.*; *see also* Sultzer Decl.

---

[4] All versions of Cree's warranty, at minimum, "may require a purchase receipt," and virtually all of them explicitly require at least the register receipt and UPC proof of purchase. *See* Sultzer Decl. Ex. 55 (Schwab Decl. Ex. 5, at 46-49 (listing text of all versions of consumer warranty)).

Exs. 58 (CREE_00049110), 59 (CREE_00049122), 60 (CREE_00055743). Because New York has approximately 6% of the population of the United States, the sales for New York number likely in the millions.[5]

###### F. Plaintiff and the Class Members Paid a Price Premium for Cree's Longevity Representations

Plaintiff and Class members paid a price premium for the LED Lightbulbs because of Cree's false, deceptive, and misleading marketing representations regarding longevity that were uniformly found on the labeling.  Dr. Groehn ████████████████████████████████ ████████████████████████████ As discussed in more detail below, ███████████████████████████████████████████████████ ███████████████████████████ Groehn Report ████████

###### G. Plaintiff's Experience

Plaintiff purchased a 2-pack of 60 Watt Cree LED Lightbulb at a Home Depot in Westchester County, New York. Sultzer Decl. Ex. 61 (Wedra Dep. 58:4-7; 80:12-21; 83:9-16). She paid approximately between $10 and $20. *Id.* at 100:22-101:5. Before purchasing the LED Lightbulbs, Plaintiff reviewed the representations on the label, which included representations about longevity, cost savings, and performance. Compl. ¶41. She may have also reviewed internet websites regarding Cree LED Lightbulbs, which contained longevity representations. Sultzer Decl. Ex. 61 (Wedra Dep. 96:3-7).  Plaintiff's bulb burned out within 6 months use. *Id.* at 130:18- 131:2.

---

[5] *See* United States Census Bureau, *National Population Totals and Components of Change: 2010-2018*, https://www2.census.gov/programs-surveys/popest/tables/2010-2018/state/totals/nst-est2018-01.xlsx (listing populations) (last visited Dec. 9, 2019).

III.     **ARGUMENT**

    **A.  The Legal Standard for Class Certification**

Class actions give voice to plaintiffs who "would have no realistic day in court if a class action were not available."  *Phillips Petroleum Co. v. Shutts*, 472 US 797, 809 (1985); *see also Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.").  To qualify for certification, plaintiffs must demonstrate by a preponderance of the evidence that the putative class meets the four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a); *see In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-133 (2d Cir. 2001).  Plaintiff must also show that the proposed class satisfies at least one of the categories listed in Rule 23(b).  *Id.*

Courts may exercise broad discretion in deciding class certification and, in the Second Circuit, "courts must [] take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements." *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014) (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012)).  Indeed, the favorability of class actions is well established in the Second Circuit.  *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) ("it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.") (quoting *Gortat v. Capala Bros., In*c., 257 F.R.D. 353, 361 (E.D.N.Y. 2009);

*Flores*, 284 F.R.D. at 122 (same).  The court's analysis may require it to "probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  However, "[a] motion for class certification should not…become a mini-trial on the merits." *Flores*, 284 F.R.D. at 122 (quoting *Lewis Tree Serv., Inc. v. Lucent Techs.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002)).

**B. Rule 23(a) Is Satisfied**

1. <u>The Class Is So Numerous That Joinder is Impracticable</u>

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Classes of at least 40 members are presumptively numerous such that joinder is impracticable.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  As described above, there are at least hundreds of thousands of class members, which readily satisfies the numerosity requirement of Rule 23(a)(1).  *See supra*, II.E.

2. <u>Questions of Law and Fact Are Common to the Class</u>

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Satisfying the commonality requirement is a "low-hurdle." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014).  "Commonality is satisfied where a single issue of law or fact is common to the class." *In re IndyMac Mortg.-Backed Secs. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y.2012) (citing *Dukes*, 564 U.S. at 359) ("[E]ven a single common question will do.") (internal quotation marks omitted).  Furthermore, commonality requires that "the plaintiff demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-50.  The commonality requirement may be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct

by a single system." *Marisol A. v. Giuliani*, 126 F. 3d 372, 377 (2d Cir. 1997).  In other words, "[t]heir claims must depend upon a common contention…of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Commonality does not, however, "mandate that all class members make identical claims and arguments." *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996).

This case presents several common questions which are central to resolving the validity of the claims in one stroke, including whether: (1) there is a defect in the design of the LED Lightbulbs that makes them prone to premature failure; (2) Cree misrepresented, omitted, or concealed information regarding the characteristics, quality, or longevity of the LED Lightbulbs; (3) Cree marketed, designed, manufactured, and sold LED Lightbulbs that do not provide the promised cost savings because they do not last as long as promised; (4) the LED Lightbulbs prematurely fail such that they do not las as long as promised; (5) Cree knew and failed to disclose that the LED Lightbulbs do not last as long as promised, preventing customers from realizing the promised cost savings; (6) Cree's marketing and labeling of the LED Lightbulbs was misleading to a reasonable consumer; (7) as a result of Cree's actions, omissions, and/or misrepresentations of material facts, Plaintiff and Class members suffered an ascertainable loss; and (8) Plaintiff and Class members paid a premium for the LED Lightbulbs.

New York court have routinely found commonality satisfied in similar cases.  *See, e.g.*, *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995 (MKB) (RER), 2019 U.S. Dist. LEXIS 28770, at *12-14 (E.D.N.Y. Feb. 20, 2019) ("False advertising may be such a [unitary] course of conduct" as to satisfy the commonality requirement); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 498 (E.D.N.Y. 2017) (commonality requirement satisfied with the common injury identified as "the

price premium on every product sold") (internal citations omitted); *In re Scott's EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) (common question of whether the challenged representation is false and/or misleading satisfies commonality requirement); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 133 (S.D.N.Y. 2014) (questions of whether defendants marketing statements were false and/or misleading satisfied commonality requirement); *In re AMLA Litig.*, 320 F. Supp. 3d 578, 592-93 (S.D.N.Y. 2018) ("courts regularly certify classes alleging § 349 violations when the injury was payment of a price premium.").

The resolution of the common questions is driven by common legal and factual issues, which will dictate the ultimate resolution of this action.   Common evidence regarding the marketing and labeling of the LED Lightbulbs will answer whether the Bulbs are uniformly marketed to promise cost savings as a result of longevity.  *See* Sultzer Decl. Ex. 1 (chart).  Common evidence will also answer



*See* Allen Report █████ ██████████████████████ ██████████████████████ *See* Groehn Report ███

Here, Plaintiff alleges that the LED Lightbulbs were marketed and sold using common misrepresentations: they promise longevity, and therefore cost savings, in excess of their actual performance and lifespan. Compl. ¶24; Sultzer Decl. Ex. 62 (CREE_00068794-68813 at 68800). The truthfulness of the marketing and labeling of the LED Lightbulbs with regard to longevity, cost savings, with a performance warranty, and the latent design defect in the LED Lightbulbs that prevents them from performing as advertised and warranted can, and should, be decided as to all Class members as the evidence is the same as to every Class member.

Case law supports a finding of commonality here. *In re Scotts EZ Seed Litig.*, was substantially similar consumer class action brought in this Court involving claims that defendants violated New York General Business Law ("NY GBL") §§ 349-50 by making false and misleading representations on their labels that EZ seed grass is "50% thicker" than grass grown from "ordinary seed." 311 F.R.D. at 405. This Court granted class certification and noted with respect to commonality that because the "answer to this question [wa]s common to all class members, and [wa]s apt to drive the resolution of th[e] litigation," plaintiffs fulfilled the commonality requirement. *Id*. Similarly, the court in *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) ruled commonality was satisfied where plaintiffs alleged violations of numerous state laws, including NY GBL § 349, for mislabeling pomace as "100% Pure Olive Oil." The court held that the defendants consistent fraudulent advertising was a common thread satisfying the requirement. *Id.* at 566; *see also Price v. L'Oreal USA, Inc*., 17 Civ. 614 (LGS), 2018 U.S. Dist. LEXIS 138473, at *7-8 (S.D.N.Y. Aug. 15, 2018) (commonality is satisfied through common questions as to "whether the [c]hallenged [c]laims are deceptive, unfair, unlawful or misleading to the reasonable consumer…[and] whether a reasonable consumer would expect the [p]roducts to contain keratin.")

Further, the expert testimony of Dr. Groehn will establish a model and methodology for determining economic loss consumers suffered because they did not receive their expected value from the LED Lightbulbs which establishes a common injury that can be determined on a class-wide basis. *See Belfiore v. P&G*, 311 F.R.D. 29, 37 (E.D.N.Y. 2015) (commonality was satisfied where the injury was the price premium on every product sold); *Price*, 2018 U.S. Dist. LEXIS, at *15-16 (common injury established by allegations that class members suffered economic harm when they overpaid for products whose labels were misleading); *In re Scotts*, 304 F.R.D. at 409

(common injury was susceptible to classwide proof where class members paid a premium for a product based on the false claim that it could make grass grow 50% thicker); *Ebin*, 297 F.R.D. at 569 (common injury susceptible of classwide proof where plaintiffs received "an inferior product different from that which the consumers purchased").

### 3.   Plaintiff's Claims are Typical of Class Members' Claims

Rule 23(a)(3) requires Plaintiff's claims to be "typical" of the class.   Fed. R. Civ. P. 23(a)(3).   "The typicality requirement 'is not demanding.'" *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (internal citations omitted).   Typicality is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), aff'd, 126 F.3d 372 (2d Cir. 1997); *see also Robidoux*, 987 F.3d at 936 (typicality is shown "when each class member's claim arises from the same course of conduct and each class member makes similar legal arguments to prove defendant's liability."). "The typicality consideration requires only that each class member makes similar legal arguments, not identical ones." *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-cv-6549 (CM) (RWL), 2021 U.S. Dist. LEXIS 26566, at *34 (S.D.N.Y. Feb. 11, 2021); *see also, Robidoux*, 987 F.2d at 936-37 ("the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.")

Here, Plaintiff purchased a 60 Watt Cree LED Lightbulb from Home Depot during the class period. Prior to purchasing, Plaintiff reviewed the representations on the label, which included representations about cost savings and guaranteed satisfaction and paid a premium price. Compl. ¶41.   Plaintiff's and other Class members' claims arise out of the same misleading representations by Cree and are based on the same legal theories.   Because Cree's LED Lightbulbs

cannot live up to their representations regarding the costs savings over the life of the lightbulb, Plaintiff's claims are typical of the Class.

4. <u>Plaintiff and Counsel Will Adequately Represent the Class</u>

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy is not a difficult requirement to satisfy. *Royal Park Invs. SA v. Wells Fargo Bank, N.A.*, No. CV-09764 (KPF)(SN), 2018 U.S. Dist. LEXIS 9087, at *31 (S.D.N.Y. Jan. 10, 2018) ("The adequacy requirement is not demanding."). "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000); *see also, Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015) (same). The focus of the inquiry is whether "the class representative has any 'interests antagonistic to the interests of other class members and whether the representative has 'an interest in vigorously pursuing the claims of the class." *Vergara v. Apple Reit Nine*, No. 19 CV 2027 (DLI)(RML), 2021 U.S. Dist. LEXIS 23920, at *5 (E.D.N.Y. Feb. 5, 2021) (internal citations omitted); *Amchem Prods*, 521 U.S. 591 at 625-26 (1997)("[T]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").[6]

For the same reasons Plaintiff's claims are typical, as described above, her interests coincide with—and are not antagonistic to—the Class. And Plaintiff has already shown that she will vigorously pursue these claims on behalf of Class members. She has searched her files for

---

[6] In the event the court finds Plaintiff to be inadequate, the court may nevertheless certify the class conditioned upon the substitution of another named plaintiff. *Massre v. Mullooly, Jeffrey, Rooney & Flynn LLP*, 2020 U.S. Dist. LEXIS 158459 (E.D.N.Y. Aug. 28, 2020) report and recommendation adopted, *Massre v. Mullooly*, 2020 U.S. Dist. LEXIS 173894 (E.D.N.Y. Sep. 20, 2020). *See also Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc*., 659 F.3d 234, 253 (2d Cir. 2011) (certifying the class and explaining, "if, for some reason it is later determined by the court that the representative Plaintiffs are inadequate, the court could substitute another class plaintiff for the representative plaintiff in question...")

documents, been deposed, and supplied her attorneys with information. Sultzer Decl. 61 (Wedra Depo. 64:15-67:9; 70:11-71:20). Thus, she is an adequate class representative.

In considering the adequacy of plaintiffs' counsel, courts consider counsel's work in the action, experience in class action litigation and the types of claims asserted, knowledge of applicable law, and the resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Plaintiff is represented by qualified and competent counsel who have the experience and resources necessary to competently and vigorously pursue this action on behalf of the Class members. *See* Sultzer Decl. ¶¶ 70-71 and Exs. 63, 64, 65, 66, 67 (Plaintiff's counsel firm resumes). Plaintiff's counsel have devoted a significant amount of time to this case and will continue to commit the resources necessary to represent the Class. *See id.* Plaintiff and her counsel have demonstrated their commitment to prosecuting this case on behalf of all Class members, and, as such, the adequacy requirement is satisfied.

### 5.  The Proposed Class is Ascertainable

The Second Circuit has recognized a fifth pre-condition to class certification, namely "[t]he implied requirement of ascertainability." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006). "To be ascertainable, the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *In re Scotts*, 304 F.R.D. at 407 (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal citations omitted); *see also Brecher v. Republic of Argentina*, 802 F.3d 303, 304 (2d Cir. 2015) ("the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member"). "The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin*, 297 F.R.D. at 567.

In *In re Scotts* this Court found a proposed class of consumers who purchased EZ seed packages with the claim that their grass was "50% thicker" was "sufficiently specific to satisfy the ascertainability requirement" regardless of whether the consumers had retained receipts or proof of purchase. *Id.* at 407. As Judge Rakoff held in *Ebin*, finding a class cannot be certified if consumers are unlikely to have proof of purchase "would render class actions against producers almost impossible to bring." *Ebin*, 297 F.R.D. at 567 (class of olive oil purchasers is ascertainable although plaintiffs are unlikely to have retained receipts); *see also Belfiore*, 311 F.R.D. at 66 (proposed class of "all persons or entities who purchased Freshmates in New York State between May 23, 2011 and May 23, 2014" is ascertainable because it "identifies a particular group of individuals [who were] harmed in a particular way (defrauded by labels and marketing materials [leading to higher prices]) during a specific period in particular areas.") The uniformity of the misrepresentations across all products also weighs in favor of ascertainability.

Here, the misrepresentations are identical in nature to those in *In re Scotts*, *Ebin*, and *Belfiore*. The proposed class identifies a particular group of individuals who were all harmed through the misrepresentations on labels and marketing materials during a specific time period.

### C. The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

A class maybe certified under Rule 23(b)(3) if the court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Common Issues Predominate Over Individual Issues

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual

issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotation omitted).  "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof." *Pearlstein v. Blackberry Ltd.*, 2021 U.S. Dist. LEXIS 14888, at *19 (S.D.N.Y. Jan. 26, 2021) (quoting *Tyson Foods*, 577 U.S. 442 (2016) (internal quotation, alteration, and citation omitted)).  This does not require every element of the plaintiff's claims to be "susceptible to class-wide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (quotation omitted); *Aziz v. City of N.Y.*, No. 1:18cv2334, 2021 U.S. Dist. LEXIS 28536, at *15 (S.D.N.Y. Feb. 16, 2021) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately") (quotation omitted).  The focus of the predominance inquiry is on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amgen, Inc.*, 568 U.S. at 469 (quoting *Amchem Prods.*, 521 U.S. at 623).  Thus, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial that the issues subject only to individualized proof." *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  In this case, Plaintiff asserts claims for violations of NY GBL §§349-350 and for fraudulent misrepresentation and concealment. Compl. ¶¶56-86.  As shown below, common issues predominate for each claim.

a.   New York General Busines Laws Sections 349 and 350

To establish a prima facie case under GBL § 349, plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521

(2d Cir. 2000).  "Deceptive acts" are those acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 522.  The same analysis applies to false advertising claims brought under GBL § 350.  *In re Scotts*, 304 F.R.D. 409; *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").  Further, sections 349 and 350 do not require proof of reliance or proof that defendants knew, or should have known, that the alleged statements were false or misleading.  *In re Scotts*, 304 F.R.D. at 409.

Each of the elements of the claim can be resolved on a class wide basis.  "Whether [defendant] engaged in consumer-oriented conduct will not vary from plaintiff to plaintiff." *Hasemann* 2019 U.S. Dist. LEXIS 28770, at *39-43 (certifying class of consumers alleged to have paid a price premium based on Gerber's misrepresentations that its product was capable of reducing occurrence of allergies in infants); *Price*, 2018 U.S. Dist. LEXIS 138473, at *14-16 ("Classwide evidence will be used to establish whether Defendants' labeling was deceptive, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances.").  Further, the determination of whether a practice is deceptive is an objective standard of reasonableness. *Id.* ("an act or practice is deceptive depends on whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances"); *see also In re Scotts*, 311 F.R.D. at 409 (materiality 'is a question common to all members of the class' when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard"); Finally, "the alleged injury is the payment of a premium . . . may be proved or disproved with class-wide evidence."  *Hasemann*, 2019 U.S. Dist. LEXIS 28770, at *39-43.

In consumer fraud class actions under GBL §§ 349-350, like the one here, all consumers paid the same premium price based on the uniform misrepresentations regardless of any

individualized issues of a particular class member.   Because the individual consumer's expectations and experience have no bearing on liability or damages, "courts regularly certify classes alleging § 349 violations when the injury was payment of a price premium." *In re Amla*, 320 F. Supp. 3d at 592-93 (collecting cases); *see also Goldemberg v. Johnson & Johnson Consumer Cos*., 317 F.R.D. 374, 385 (S.D.N.Y. 2016) (certifying class action involving labels on certain Aveeno "Active Naturals" products); *In re Scotts*, 304 F.R.D. at 409 (finding a common injury was susceptible to classwide proof where class members paid a premium for a product based on the false claim that it could make grass grow 50% thicker); *Ebin*, 297 F.R.D. at 569 (finding a common injury susceptible of classwide proof where plaintiffs received "an inferior product different from that which the consumers purchased"); *Guido v. L'Oreal, USA, Inc*., 284 F.R.D. 468, 483 (C.D. Cal. 2012) (finding common issues predominate as to injury on plaintiffs' GBL claims).

### b.   Fraudulent Misrepresentation and Concealment

A claim for must allege "'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" *Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465, 469 (2011) (quoting *Lama Holding Co. v Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

Plaintiff's claim is susceptible to class-wide proof because Cree's misrepresentations on its labeling and marketing material were made uniformly to all members of the proposed Class. The Second Circuit has held "'fraud claims based on uniform misrepresentations made to all member of the class," unlike those 'based on individualized misrepresentations' are 'appropriate

subject for class certification because the standardized misrepresentations may be established by generalized proof." *Rodriguez*, 300 F.R.D. at 139.

   *c.*   Common Evidence Can Prove Each Cause of Action

Common proof will establish the elements of all the causes of action in this case. As a result, each claim is appropriate for class treatment. At its core, this is a case about Cree's alleged misleading labeling and marketing of the LED Lightbulbs for (1) longevity with (2) cost savings and (3) a warranty that implies longevity. Common evidence demonstrates that the labeling of the LED Lightbulbs and corroborating marketing and advertising consistently center on a strategic marketing campaign touting longevity and the corresponding cost savings.

Plaintiff has demonstrated a common design defect and common labeling, marketing and advertising sufficient to satisfy predominance because: (1) the labeling of the LED Lightbulbs is substantially similar, Sultzer Decl. Ex. 1 (chart); (2) the labeling and marketing is disseminated on a nationwide basis, Schwab 30(b)(6) Dep. 38:25-39:13, 39:18-40:2; (3) ███████████████████ ████████████████████████████████████████████ and (4) ███████████████ ███████████████████████████████████████████████████████████ *see* Allen Report.[7]

Plaintiff will prove, through common evidence, that the labeling of the LED Lightbulbs was deceptive because the bulbs commonly fail and do not have the superior lifespan promised.

---

[7] Plaintiff need not prove the existence of a defect at the class certification stage. *In re Scotts*, 304 F.R.D. at 408-09 ("Any argument that challenges the merits of plaintiffs' allegations 'about the uniform inefficacy of [EZ Seed] has no bearing on the Rule 23 predominance inquiry.'") (quoting *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRW), 2014 U.S. Dist. LEXIS 50600, at *35-36 (C.D. Cal. Apr. 9, 2014); *see also Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("Defendant's arguments that it can present proof that Coldcalm worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product."). "This is because "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459, 133 S. Ct. 1184. Accordingly, the fact and expert evidence provided herein that that the LED Lightbulbs suffer from a design defect and are prone to premature failure is sufficient to satisfy the predominance requirement. *See id.*

Plaintiff will prove that this misrepresentation is material through Cree's own documents and testimony, which demonstrate that the lifespan of LED Lightbulbs is one of the most important factors to consumers in making their purchasing decisions. *See, e.g.*, Schwab Dep. 55:25-56:17, 59:8-60:1, 61:11-62:11; Sultzer Decl. Exs. 10 (CREE_00059264), 62 (CREE_00068794-68813 at 68800).  Whether Cree's marketing and labeling of the LED Lightbulbs was misleading to a reasonable consumer is likewise born out in Cree's own documents or, at a minimum, can be assessed on a class-wide basis. Moreover, Plaintiff will prove though Cree's own documents, and on a class-wide basis, that Cree was aware of the common design defect causing premature failure of the LED Lightbulbs but did not disclose it to consumers.  *See* Sulzer Decl. Ex. 52 (CREE_00063522).  Finally, as discussed in more detail below, Plaintiff will prove that he and the Class members paid a premium for the LED Lightbulbs as a result of Cree's misrepresentations. *See* Groehn Report.

The material issues here are susceptible to class-wide proof. All the Class members saw the same misleading statements on the labeling of the LED Lightbulbs. *See* Sultzer Decl. Ex. 1 (chart); Because materiality is determined by the reasonable person standard, the issue of causation is common to all class members and does not require individualized proof.  *In re Scotts*, 311 F.R.D. at 409. And a reasonable consumer would attach importance to the existence of a characteristic that changes the value of a product at the point of sale, which Dr. Groehn's testimony demonstrates.

These common issues predominate over any individual issues because they will drive the litigation. *All* of the elements of Plaintiff's claims are capable of common proof. These issues—and methods of proof—satisfy the well-established predominance standard under Rule 23(b)(3).

In one fell swoop, Cree's liability can be established with respect to Plaintiff and the Class members. So, too, can the amount of damages it owes to the Class.

   d.   <u>Damages Can Be Determined on a Class-Wide Basis</u>

Predominance requires the plaintiffs to show that damages are "measurable 'on a class-wide basis through use of a 'common methodology.'" *Comcast Corp v. Behrend*, 569 U.S. 27, 30 (2013).  To prove class-wide damages, the plaintiffs must put forth a damages model seeking to measure the damages attributable to their damages theory.  *See id.* at 35.  However, damages "[c]alculations need not be exact."  *Id.*  Plaintiff satisfies this standard with the expert opinion testimony of Dr. Groehn.

At the class certification stage plaintiffs must show only "that their damages stemmed from the defendant's actions that created the legal liability."  *Goldemberg*, 317 F.R.D. at 393-94 (citing *Sykes*, 780 F.3d at 88) (internal quotation and citation omitted). The Supreme Court's decision in *Comcast* requires "only that 'courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the class[-]wide theory of liability and capable of measurement on a class[-]wide basis.'" *In re Scotts*, 304 F.R.D. at 414 (quoting *In re U.S. Foodservice*, 729 F.3d at 123 n.8); *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 407 (2d Cir. 2015) ("proponents of class certification [need not] rely upon a class[-]wide damages model to demonstrate predominance"). Indeed, the *Goldemberg* court held that when "[c]onsidering the price premium theory…this Court looks at [the expert] report for the sole purpose of determining what the proposed model may be able to accomplish." 317 F.R.D. at 393-94.

Courts routinely certify consumer class actions under Rule 23(b)(3) when the plaintiff presents expert testimony based on conjoint analysis designed to isolate the portion of the payment attributable to the misrepresented product attribute. *See, e.g.*, *Price*, 2018 U.S. Dist. LEXIS, at

*26-28; *Goldemberg*, 317 F.R.D. at 393-94 (same).  Conjoint analysis relies on data produced by surveys with hypothetical product-feature and price variations, conducted specifically for the purposes of evaluating a specific product to tease out the value to consumers of a particular product feature. "These surveys have not required extensive data on actual sale prices or competing products in the market to produce valid results." *Price*, 2018 U.S. Dist. LEXIS, at *27.

That is exactly what Plaintiff has done in this case by submitting the declaration of Dr. Groehn.  Courts have certified classes in other cases where Dr. Groehn was involved and proposed to measure class-wide damages based on a conjoint study.   *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 333-37 (D.N.H.2017); *In re Emerson Elec. Co. Wet/Dry VAC Mktg. & Sales Litig.*, No. MDL No. 2382, 2017 U.S. Dist. LEXIS 197819 (E.D. Mo. Dec. 1, 2017) (reversed and remanded on other grounds.). Here, ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████   *See* Groehn Report ████

In the study created by Dr. Groehn, ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████   *Id.*  ████  ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████  *Id.*  ████   Dr. Groehn ████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████  *Id.*  ████

In addition, as noted in Dr. Groehn's report, ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

    e.   <u>A Class Action Is Superior to Individual Actions</u>

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors to be considered during this analysis include: (1) the class members' interests in joint rather than individual actions; (2) the extent of litigation concerning the controversy already begun by class members; (3) the desirability of the class forum, and any difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A-D); *Sykes*, 780 F.3d at 82. A class action is superior in this case because there are numerous class members possessing small individual claims that are likely worth only a few dollars each.

**D.  Rule 23(b)(2) Is Satisfied**

Injunctive relief is expressly authorized for plaintiff's statutory claims under New York's GBL §§349-350. *See* NY GBL §349(h). Thus, Plaintiff also seeks certification of the Class pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) applies where a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(3); *Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2015 U.S. Dist. LEXIS 103328, 2015 WL 4692454, at *8 (S.D.N.Y. Aug. 6, 2015) ("Rule 23(b)(2) class is appropriate only when a single injunction or declaratory judgment would provide relief to each member of the class (quoting *Dukes*, 131 S. Ct.

at 2557).  Some courts in the district have also added the requirements that the class be cohesive, and that class certification is necessary to secure the rights in question.  *Belfiore*, 311 F.R.D. 67-68 (citing *Laumann v. Nat'l Hockey League*, No. 12-CV-1817, 105 F. Supp. 3d 384, 2015 U.S. Dist. LEXIS 63745, 2015 WL 2330107, at *7 (S.D.N.Y. May 14, 2015).  An injunction prohibiting the defendant from labeling its LED Lightbulbs with the misrepresentations would provide a single solution applicable to each class member.  Second, the proposed Class is cohesive, as demonstrated herein.  Third, certification of an injunctive class is necessary "because an injunction, unlike monetary damages, will protect the rights of all consumers."  *Id.*

IV.     **CONCLUSION**

This action involves consumer protection, and fraudulent misrepresentation and concealment claims based on Cree's uniform misrepresentations to Plaintiff and other New York consumers concerning the comparative longevity and cost savings of Cree's LED Lightbulbs. Plaintiff supports her allegations with discovery from Cree and the expert reports of Dr. Allen ████████████████████████████████████████████████ and Dr. Groehn ██████████ ███████████████████████████████████████████████████.  The evidence demonstrates that Plaintiff's claims are capable of common proof and that injunctive relief is appropriate with respect to the Class as a whole. Therefore, Plaintiff respectfully requests that the Court certify the Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

Dated: February 26, 2021.                    Respectfully submitted,

                                             **THE SULTZER LAW GROUP, P.C.**

                                             By:  */s/ Jason P. Sultzer*_____
                                                Jason P. Sultzer, Esq.
                                                Joseph Lipari, Esq.
                                                Mindy Dolgoff, Esq.
                                                270 Madison Avenue, Suite 1800

New York, NY 10016
Phone: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

Michael A. McShane
S. Clinton Woods
Ling Y. Kuang
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Phone: (415) 568-2555
Fax: (415) 568-2556
mmcshane@audetlaw.com
cwoods@audetlaw.com
lkuang@audetlaw.com

Melissa S. Weiner
Joseph C. Bourne
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com
jbourne@pswlaw.com

Charles J. LaDuca
Alexandra C. Warren
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
awarren@cuneolaw.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500

Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiff*