**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————— x
                                                       :

STEPHANIE WEDRA, individually and on behalf  :
of all others similarly situated,                        :    Civil Action No. 7:19-cv-03162-VB

                          Plaintiff,         :

v.                                           :

CREE, Inc.,                                   :

                        Defendant.       :
                                         :
                                         :
                                         :
————————————————————— x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CREE, INC.'S**
**MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL**
**PROCEDURE 12(b)(1)**

Plaintiff Stephanie Wedra submits this response in opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) ("Motion").  ECF. No. 74.  As set forth below, the Court should deny Defendant's motion.  In the event the Court disagrees, Plaintiff respectfully requests, in the alternative, leave to amend and substitute a new named plaintiff.

## I.     INTRODUCTION

Plaintiff Stephanie Wedra ("Ms. Wedra") brings this class action on behalf of herself and all others similarly situated, against Defendant Cree, Inc. ("Cree") who paid a price premium as a result of Cree's material misrepresentations regarding the longevity and cost savings of the Cree LED lightbulbs.  (ECF No. 1, Complaint ("Compl.[1]") ¶¶ 7, 36-37, 60-64, 70-73.)  Through its labeling and marketing of the relevant LED lightbulbs, Cree touted the longevity, cost savings, and warranty coverage of Cree's LED lightbulbs in comparison to competitors' LED lightbulbs.  What Cree did not tell Plaintiff or other consumers is that its 60 and 100 watt LED lightbulbs suffer from a common design defect, which means that they cannot live up to label statements and promises included on packaging and marketing materials.

Ms. Wedra paid a price premium when she purchased, ***with her own money***, a 2-pack of 60 Watt Cree LED Lightbulbs.  In its motion to dismiss, Defendant twists Ms. Wedra's words and mischaracterizes her deposition testimony to make it appear that Ms. Wedra did not use her own money and, therefore, has not suffered any injury and has no Article III standing.  Ms. Wedra's testimony is crystal clear and reflects that she used her own money to purchase the lightbulbs.

---

[1] Plaintiff's Complaint, ECF No. 1, is referred to herein as "Complaint" and cited as "¶ ##." Unless otherwise defined, all capitalized terms shall have the same meaning as in the Complaint.

Even if, *arguendo*, Ms. Wedra does not have standing (which she does), it does not follow that this action must be dismissed. In situations where the named plaintiff in a class action becomes inadequate, courts routinely substitute a new adequate named plaintiff.

## II.    RELEVANT FACTS

Ms. Wedra purchased a 2-pack of 60 Watt Cree LED Lightbulbs at a Home Depot in Westchester County, New York. (Transcript of the Deposition Testimony of Stephanie Wedra ("Wedra Dep."), attached as Ex. A to Declaration of Jason P. Sultzer, Esq. ("Sultzer Decl."), 58:4-7; 80:12-21; 83:9-16). She paid approximately between $10 and $20. *Id.* at 100:22-101:5. At the time of her purchase, in the summer of 2018, Ms. Wedra lived with her elderly mother and cared for her. *Id.* 90:4-8. She continues to live with her mother and is now employed as her mother's home health care aide. *Id.* at 32:18-33:17. Importantly for purposes of this Motion, Ms. Wedra testified that she paid cash for the Cree LED lightbulbs at issue. *Id*. at 101:6-16, 107:12-20. Ms. Wedra testified that ***sometimes*** her mother would give her cash to go shopping.

> Q:    …Did you just testify that your mother would sometimes give you cash to go shopping?
>
> A:    Yes.
>
> Q:    And was that true in the summer of 2018
>
> A:    Yes. Sometimes she would—she would give me cash to do shopping.

*Id.* at 110:16-24. Ms. Wedra never testified that her purchase of the Cree LED lightbulbs was one of those times. In fact, she very clearly testified that she purchased the Cree LED lightbulbs ***with her own money***. *Id.* at 172:10-17. The following was Ms. Wedra's exact testimony:

> BY MR. SULTZER:
>
> Q:    Ms. Wedra, I know there were a bunch of questions on this and there was a lot of confusion, so I am just going to ask you one question.

> Whose money – whose cash did you use to purchase the subject LE – the Cree LED bulbs that are identified in the Complaint at Home Depot?
>
> A:      I used my money.

*Id.* at 172:10-17.  When asked by defense counsel how she knew it was her money, Ms. Wedra replied, "Oh because it was my money in my wallet and that's how I know."  *Id.* at 173:8-10.  Ms. Wedra once again confirms that the cash that she used to purchase the Cree LED lightbulbs at issue in this action was her own cash.  (Declaration of Stephanie Wedra ("Wedra Decl.") ¶¶ 5-6, attached as Ex. B to the Sultzer Decl.).

## III.     ARGUMENT

### A.  Ms. Wedra Has Article III Standing

The "constitution requires that anyone seeking to invoke federal jurisdiction . . . have standing to do so." *Gallagher v. New York State Bd. of Elections*, No. 20 Civ. 5504 (AT), 2020 U.S. Dist. LEXIS 197537, at *13-14 (S.D.N.Y. Oct. 23, 2020) (quoting *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 194 (2d Cir. 2001)).  To establish standing under Article III of the Constitution, a plaintiff must demonstrate "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *McMorris v. Carlos Lopez & Assocs., LLC*, No. 19-4310, 2021 U.S. App. LEXIS 12328, at *8-9 (2d Cir. Apr. 26, 2021); *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) ("In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action.").  Ms. Wedra satisfies this standard because she suffered injury by way of paying a price premium that was caused by Cree's material misrepresentations concerning the longevity and cost savings of its 60 and 100 watt LED lightbulbs.  *See* ECF. No. 66, Ex. 3, Expert Report of

Dr. Andreas Groehn.  That injury can be redressed through the monetary and injunctive relief requested by Plaintiff and the Class in the Complaint.

Defendant's entire argument is that Ms. Wedra did not use her own money when purchasing the Cree LED lightbulbs.  However, Ms. Wedra never testified that this was the case, and, in fact, testified to the exact opposite.  Defendant attempts to piece together an argument by cherry-picking bits of Ms. Wedra's testimony and then falsely asserting that she did not use her own money.  In fact, Ms. Wedra was a caretaker for her elderly mother and lived with her mother at the time of the purchase.  Wedra Dep. 32:18-33:17, 90:4-8.  Ms. Wedra was employed by an agency and was compensated to care for her mother starting in December 2019, but was not employed at the time of the purchase.  *Id.* at 32:15-33:17.  Ms. Wedra was certain that she paid for the Cree LED lightbulbs with cash.  *Id.* at 101:6-16, 107:12-20.  ***Sometimes***, Ms. Wedra's mother would give her money to go shopping.  *Id.* at 110:16-24.  From that testimony, Defendant concludes, with no basis, that Ms. Wedra "confirmed under oath that if she had cash to purchase LED lamps, her mother provided it to her." (Motion at 2).  She did no such thing, and none of her testimony cited by Defendant says otherwise.  Instead, she confirmed under oath that she paid ***with her own money***.  Wedra Dep. at 172:17 ("I used my money.").  She once again attests to the same facts in her declaration.  Wedra Decl. ¶¶ 5-6.

Defendant tries to neutralize Ms. Wedra's clear statement that she paid with her own money by mischaracterizing her testimony and arguing that she "conflates her role in purchasing the bulbs with her mother's money—essentially, completing an errand for her mother—with  incurring actual injury under Article III."  Motion at 5.  Ms. Wedra was not then and is not now confused.  She is clear that she paid for the bulbs with her own money.  Accordingly, the Motion should be denied.

**B.  In the Alternative, Plaintiff Should Be Granted Leave to Substitute A New Named Plaintiff**

Courts routinely allow for the substitution of the named plaintiff "if for some reason it is later determined by the court that the representative Plaintiffs are inadequate." *Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc*., 659 F.3d 234, 253 (2d Cir. 2011).  Indeed, amendment and substitution are important to protect the interests of the class and such requests are not only freely granted in this Circuit but are "[t]he procedure favored by the Second Circuit". *In re Initial Pub. Offering Sec. Litig.*, Master File No. 21 MC 92 (SAS), 2008 U.S. Dist. LEXIS 38768, at *10 (S.D.N.Y. May 13, 2008) ("rather than decertifying the instant class on the ground that the named plaintiffs are no longer adequate representatives of the class, [the court should] afford[ ] plaintiffs' counsel a reasonable period of time for the substitution or intervention of a new class representative."); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF); 14-MC-2543 (JMF), 2017 U.S. Dist. LEXIS 189550, at *340 (S.D.N.Y. Nov. 15, 2017) ("In general, when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests"); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95, 2005 U.S. Dist. LEXIS 31251, at *9-10 (S.D.N.Y. 2005) ("The putative class members' rights in this litigation were protected as of the filing date of the complaint . . . should the class representative become inadequate, substitution of an adequate representative is appropriate to protect the interests of the class."); *Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 337 F.R.D. 462 (S.D.N.Y. 2020) (same).

Should the Court find that Ms. Wedra does not have standing (which she does) or that she is otherwise inadequate (which she is not), granting leave to substitute a new named plaintiff is the appropriate procedure in order to protect the interests of the Class.  *See In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537 (BSJ), 2006 U.S. Dist. LEXIS 94163, at *11 (S.D.N.Y. Nov. 8, 2006)

(collecting cases "demonstrating that courts not only may, but should, respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative.") (quoting *In re Thornburgh*, 869 F.2d 1503, 1509 (D.C. Cir. 1989)); *see also Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994) ("Where the claims of the named plaintiffs become moot prior to class certification, there are several ways in which mootness is not had."); *Swan v. Stoneman*, 635 F.2d 97, 102 n.6 (2d Cir. 1980) ("To the extent that appellants' argument is that Swan's death does not moot the class claim if one of the proposed intervenors can be substituted as named plaintiff, we agree.").

## IV.    CONCLUSION

For the reasons set for above, the Court should deny Defendant's motion to dismiss, or, in the alternative, grant Plaintiff leave to substitute a new named plaintiff.

Dated: May 7, 2021                              Respectfully submitted,

                                                **THE SULTZER LAW GROUP, P.C.**

                                                By:  _/s/ Jason P. Sultzer_____
                                                    Jason P. Sultzer, Esq.
                                                    Joseph Lipari, Esq.
                                                    Mindy Dolgoff, Esq.
                                                    85 Civic Center Plaza, Suite 200
                                                    Poughkeepsie, New York 12601
                                                    Phone: (845) 483-7100
                                                    Fax: (888) 749-7747
                                                    sultzerj@thesultzerlawgroup.com
                                                    liparij@thesultzerlawgroup.com
                                                    dolgoffm@thesultzerlawgroup.com

                                                    Michael A. McShane
                                                    S. Clinton Woods
                                                    Ling Y. Kuang
                                                    **AUDET & PARTNERS, LLP**
                                                    711 Van Ness Avenue, Suite 500
                                                    San Francisco, CA 94102-3275
                                                    Phone: (415) 568-2555
                                                    Fax: (415) 568-2556

mmcshane@audetlaw.com
cwoods@audetlaw.com
lkuang@audetlaw.com

Melissa S. Weiner
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com

Charles J. LaDuca
Alexandra C. Warren
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
awarren@cuneolaw.com


Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiff*