**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STEPHANIE WEDRA, on behalf of herself
and all others similarly situated,

        Plaintiff,

        v.

CREE, INC.

        Defendant.

Civil Action No.: 7:19-cv-03162-VB

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CREE, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

i

I. **Introduction**

In her opposition, Plaintiff seeks to rewrite the factual record in an unavailing attempt to generate standing where there is none. Ms. Wedra cannot manufacture standing by selectively citing her deposition transcript while omitting essential passages and submitting a belated, self-serving affidavit contrary to her prior sworn testimony. During her deposition, Ms. Wedra testified that she was unemployed, and had no source of income, from 2011 until the end of December 2019—the years leading up to and including her alleged purchase of Cree lamps in the summer of 2018. She testified that the only money she received during that eight year period came from her mother or other family members. She testified that she was living in her mother's apartment at the time she allegedly purchased the Cree lamps, and that her mother would give her money to make home improvement purchases. She testified that she believed she used cash to purchase the 60 Watt Cree LED replacement lamps at issue here, which were used in her mother's bedroom, and that "[i]f my mother gave me cash to go shopping, I would use cash." (Wedra Tr. 108:11-12.) Now, faced with the prospect of dismissal, Ms. Wedra contradicts her prior testimony and declares that the cash she used to purchase the Cree LED lamps belonged to her. How does she know? All she can offer is that the cash was in her wallet at the time.

Ms. Wedra has not carried her burden of establishing that she suffered a cognizable injury. Indeed, her opposition is notable less for what it includes and more for what it leaves out. Ms. Wedra has attached no receipt, no record of a withdrawal from an ATM, no declaration from her uncle who supposedly installed one of these lamps, and no record showing where she got the cash to purchase the lamps. Nor does the opposition address Cree's argument that Ms. Wedra did not suffer injury for any purported failure to realize

expected energy savings as she admittedly did not pay the electric bill for the home.

Recognizing that Ms. Wedra may not have standing, the opposition asks this Court to grant leave to substitute a new, as-yet-unidentified representative plaintiff. But Ms. Wedra is the lone named plaintiff in this case. If she lacks standing, then the Court lacks subject matter jurisdiction, which cannot be cured by adding a new and different plaintiff. The case must be dismissed.

## II. Argument

### A. Ms. Wedra Does Not Have Article III Standing Because She Did Not Suffer an Actual Injury.

Ms. Wedra's theory of the case is that she and others in the putative class were injured because they supposedly paid a premium for Cree bulbs based on the expectation of higher energy savings and a longer bulb-life. (*See generally* Groehn Rep.) Ms. Wedra lacks Article III standing to assert these claims because, even if these injuries occurred, it was Ms. Wedra's mother—not Ms. Wedra—who suffered them.

At the outset, Plaintiff fails to address Cree's argument that Ms. Wedra lacks standing to assert claims for unrealized energy savings. Thus, any argument on that point has been waived. It is clear from the record that the Cree lamps were installed in Ms. Wedra's mother's home and that it was her mother who paid for the electricity.

> Q: Who paid the power bill at your mom's condominium?
> 
> A: My mom.
> 
> (Wedra Tr.148:22-24.)

Ms. Wedra has offered nothing to rebut this point, and therefore she lacks standing to assert any claim premised on energy cost savings.

Regarding the purchase of Cree lamps, Ms. Wedra contends that she used "her own money," but presents no new evidence or testimony about where she obtained that money or how she knows it was her cash. All she offers in support of her claim is the conclusory

2

statement that the cash was "hers" because it was "in [her] wallet," and a new declaration that states flatly that the cash "was [her] own money." In light of Ms. Wedra's other deposition testimony, these statements cannot salvage her claims.

Plaintiff's opposition ignores and seeks to wipe away the vast majority of Ms. Wedra's sworn deposition testimony. Indeed, the opposition's standing argument relies almost entirely on Ms. Wedra's statement during redirect that "[she] used [her] money." The opposition conveniently ignores much of the testimony that came before and after that single sentence. For instance, immediately after Ms. Wedra made that statement, she was asked by Cree's counsel how she knew the money was hers, and explained that she only knew because it was "in [her] wallet." (Wedra Tr. 173:5-10.[1]) As Cree explained in its motion to dismiss, that argument fails as a matter of law. (Mot. at 5.)

The opposition would have this Court ignore Ms. Wedra's testimony on the following essential points:

- Ms. Wedra was unemployed and had no source of income from 2011 until December 2019. (Wedra Tr. 34:2-17; 154:21-155:3.)

- Ms. Wedra was not able to identify any documentation proving how she paid for the subject Cree lamps. (*Id*. at 106:9-12)

- Ms. Wedra does not know how much she paid for the subject Cree lamps. (*Id*. at 100:17-101:5).

- Ms. Wedra's mother provided her with cash to shop for home improvement items in the summer of 2018. (*Id*. at 110:16-24.)

- When Ms. Wedra went to The Home Depot to purchase home improvement items in the summer of 2018 they were used at her mother's home. (*Id*. at 111:4-7)

- Ms. Wedra had never purchased LED lightbulbs before purchasing the subject Cree bulbs. (*Id*. at 90:15-18.)

- Ms. Wedra claims she selected the Cree LED lamps, at least in part, because

---

[1] The cited portions of Ms. Wedra's August 20, 2020 deposition transcript are attached hereto as Exhibit A.

3

"[her mother] likes to use LED bulbs." (*Id*. at 86:12-15.)

- The Cree 60 Watt replacement lamps at issue were used by Ms. Wedra's mother, in her mother's bedroom. (*Id*. at 120:15-24; 148:9-15.)

Critically, after explaining that she inferred, but did not know for sure, that she paid cash for the subject Cree lamps,[2] Ms. Wedra testified as follows:

> Q: When you say you "had to pay cash," do you – are you trying to say you assume you paid cash because you can't find a debit card transaction?
>
> A: No. No. I was looking for the transaction, just had – I mean, you pay cash, I have no hard copy. I don't have the receipt. So I was looking for – okay, well, maybe I did it through a debit card, you know.
>
> But most of the time back then I – I paid cash, you know, if I have cash, I would use cash, I mean…
>
> **If my mother gave me cash to go shopping, I would use cash. You know what I'm saying?**  So…

(*Id*. at 107:21-108:13 (emphasis added; ellipses in original).)

Faced with this sworn testimony, Ms. Wedra cannot defeat a motion to dismiss merely by refusing to admit the money she used to purchase Cree lamps was not hers and offering no explanation for where she got it.

Further, this Court should disregard Ms. Wedra's self-serving declaration because it conflicts with her sworn deposition testimony. Tellingly, Ms. Wedra did not make any effort to clarify or otherwise amend her responses on the topics identified above after giving her testimony in August of 2020. Instead, she waited until after Cree had filed its motion to dismiss and executed a self-serving, six-line declaration just two days before the opposition was filed. During her deposition testimony in August 2020, Ms. Wedra could not recall even whether she paid cash for the subject Cree lamps. (*See, e.g.*, "I think I paid cash" (*Id*. at

---

[2] *See, e.g.*, "I think I paid cash" (*Id*. at 101:10-11).

4

101:10-11); "I had to have paid cash for it" (*Id*. at 101:16); "I had to have paid cash because I do not have a record of it." (*Id*. at 109:22-24).) In her affidavit, submitted months later in response to Cree's motion to dismiss, she now claims in a few conclusory lines, without explanation, to remember that she used "cash," "her own money" to pay for the subject Cree lamps.

This is a "sham affidavit," which the Second Circuit has long held cannot create an issue of fact. *See Perma Research & Development Co. v. Singer Co*., 410 F.2d 572, 578 (2d Cir.1969). Because Cree has supported its motion to dismiss for lack of standing with extrinsic evidence, this Court must evaluate the underlying facts as it would in deciding a motion for summary judgment.[3] "If a party who has been examined at length on a deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id*. at 578 (rejecting sham affidavit that purported to contradict deposition testimony).

To be clear, Ms. Wedra bears the burden of establishing Article III standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("At each [stage of the case], '[t]he party invoking federal jurisdiction bears the burden of establishing the[ ] elements' of Article III standing." (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). And Ms. Wedra must meet this burden by supplying "competent proof thereof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Where, as here, a defendant raises a factual challenge, "no presumptive truthfulness attaches to a plaintiff's allegations." *Brown v. Am. Legion Cortland City Post 489*, 64 F. Supp. 2d 96, 99 (N.D.N.Y. 1999) (citing *Mortensen v. First Federal Sav. & Loan Ass'n*., 549 F.2d 884, 891 (3d Cir.1977)).Furthermore, where the defendant has proffered evidence outside the pleadings, "[p]laintiffs will need to come forward with

---

[3] *See, e.g, Gaudio v. Critical Mass Indus. LLC, 2020 WL 4333660*, at *11 (C.D. Cal. Apr. 6, 2020) ("While the sham affidavit rule typically arises in the summary judgment context, it has also been applied at the motion to dismiss stage.")

5

evidence of their own to controvert that presented by the defendant 'if the [evidence] submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter*, 822 F.3d at 57.

Ms. Wedra has failed to carry her burden of establishing standing. Notwithstanding her selective citations to deposition testimony and sham affidavit, the record is clear that she did not suffer any injury because she did not use her own cash to pay for the Cree lamps at issue. Accordingly, this Court lacks subject matter jurisdiction and Ms. Wedra's claims should be dismissed.

### B. If Ms. Wedra Lacks Standing, Then There Can Be No Substitution Because This Court Lacks Subject Matter Jurisdiction

The opposition asks this Court to allow Plaintiff to substitute a new named plaintiff in the event the Court determines, as it should, that Ms. Wedra lacks standing. But Ms. Wedra is, and has always been, the sole named plaintiff in this case. If she lacks standing, then this Court never had jurisdiction over the matter to begin with, and cannot permit a substitute class representative to step in.[4] "[I]f a case has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed; if the case only had this one class representative from the outset, then there is no opportunity for a substitute class representative to take the named plaintiff's place because this means that the court never had jurisdiction over the matter." *See Kinra v. Chicago Bridge & Iron Co.*, *2018 Employee Benefits Cas.* (BNA) 185048, 2018 WL 2371030, at *4 (S.D.N.Y. 2018) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:8 (5th ed. 2017));

---

[4] This case is different from the Second Circuit's recent decision in *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, Case No. 19-2719 (2d Cir. March 17, 2021). In *Sonterra*, the Court held that substitution was proper where the substituted party was an *assignee* of the originally named plaintiff because an assignee was the real party in interest. But, the Court specifically distinguished the case from situations where, as here, the originally named plaintiff never possessed a claim against the defendant. *Id*. at 43 n. 10 ("[T]he case before us today differs from a situation [where] the originally named plaintiff never possessed a claim against the defendant.")

6

*Page v. Alliant Credit Union*, No. 18-11481 (SDW)(CLW), 2019 WL 3082604, at *1 (D.N.J. July 15, 2019), *aff'd on reconsideration*, No. CV1811481SDWCLW, 2019 WL 3502957 (D.N.J. Aug. 1, 2019) (adopting magistrate's recommendation that Plaintiff's claim should be dismissed for lack of subject matter jurisdiction; rejecting recommendation that Plaintiff be permitted to amend complaint).

This is particularly true where, as here, the standing issue is raised pre-certification. "[U]ntil certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiff when the suit is filed and continuously thereafter until certification." *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n. 22 (2d Cir. 2013) (citations omitted). This is because, until certification "there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Id*. Where the named plaintiff's claim is one over which federal jurisdiction never attached, there can be no class action and the plaintiff cannot remedy this constitutional defect via substitution. *See Disability Advocates v. N.Y. Coalition for Quality Assisted Living*, 675 F.3d 149, 160 (2d Cir. 2012) ("If jurisdiction is lacking at the commencement of suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim."); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (affirming lower court's denial of a motion to amend a complaint to substitute ERISA plan participants as plaintiffs where original named plaintiffs lacked standing).

The string cite of cases that takes up the bulk of the opposition's section on substitution does not address these issues. Indeed, as might be expected, almost all of the cases Ms. Wedra identifies involved multiple named plaintiffs and/or issues other than standing, most of which occurred post-certification. *See Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) (putative class action with multiple named plaintiffs where there were no issues regarding standing; the Court was discussing hypothetical substitution that might occur post-certification); *In re Initial Pub. Offering Sec.*

7

*Litig.*, 21 MC 92 (SAS), 2008 WL 2050781 (S.D.N.Y. May 13, 2008) (discussing the inclusion of additional named plaintiffs post-certification); *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MC-2543 (JMF), 2017 WL 5504531 (S.D.N.Y. Nov. 15, 2017) (putative class action with multiple named plaintiffs, some of whom were not dismissed; no issues regarding standing); *In re Currency Conversion Fee Antitrust Litig.*, M 21-95, 2005 WL 3304605 (S.D.N.Y. Dec. 7, 2005) (class action had been decertified as to specific members on adequacy grounds; no issues regarding standing); *Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 337 F.R.D. 462 (S.D.N.Y. 2020) (amendment sought on the basis of new facts and named plaintiff had not been dismissed; Court previously found named plaintiff had standing); *In re Nat'l Australia Bank Sec. Litig.*, No. 03 CIV.6537 BSJ, 2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006) (putative class action with multiple named plaintiffs); *Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994) (putative class action with multiple named plaintiffs where Court found plaintiffs had standing); *Swan v. Stoneman*, 635 F.2d 97, 102 n.6 (2d Cir. 1980) (discussing, in dicta, mooting by death, not standing).

Accordingly, Plaintiff has offered nothing to rebut the well-settled law on this issue. Because Ms. Wedra is the lone named plaintiff, if the Court determines, as it should, that she lacks standing, then the case must be dismissed without leave to substitute a new representative plaintiff.

## III.   Conclusion

Despite her best attempts, nothing in Plaintiff's opposition can change the testimony she gave at her deposition. That testimony showed that Ms. Wedra has not suffered any actual injury, and thus cannot demonstrate standing under Article III. Cree thus requests that Ms. Wedra's complaint be dismissed for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure without leave to substitute a new named plaintiff.

Dated: May 14, 2021
      Chicago, Illinois

                                            Respectfully submitted,

                                            **KATTEN MUCHIN ROSENMAN LLP**
By: */s/ Charles A. DeVore*

Craig A. Convissar
575 Madison Avenue
New York, NY 10022
craig.convissar@katten.com
Ph: 212-940-6369
Fax: 212-940-8776

Stuart M. Richter (admitted *pro hac vice*)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
stuart.richter@katten.com
Ph: 310-788-4400
Fax: 310-712-8434

Rebecca K. Lindahl (admitted *pro hac vice*)
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
rebecca.lindahl@katten.com
Ph.: 704-344-3141
Fax: 704-344-2277

Charles A. DeVore (admitted *pro hac vice*)
525 West Monroe Street
Chicago, IL 60661
charles.devore@katten.com
Ph: 312-902-5478
Fax: 312-902-1061

*Attorneys for Defendant Cree, Inc.*