**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
: 
STEPHANIE     WEDRA,    on    behalf    of  :   Civil Action No.: 7:19-cv-03162-VB
herself and all others similarly situated,                    :
:
                          Plaintiff,                                      :
                                                                               :
                          v.                                                  :
                                                                               :
CREE, INC.                                                                :
                                                                               :
                          Defendant.                               :
                                                                               :
                                                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

## CREE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................... 1

II.    STATEMENT OF THE RELEVANT FACTS ...................................... 4

    A.    Procedural Background ................................................. 5

    B.    Cree Bulbs ................................................................. 6

        1.    Cree manufactures many types of consumer LED bulbs. ............................................................ 6

        2.    Each of Cree's consumer bulb lines passed ENERGY STAR tests for longevity and energy efficiency. ......................................................... 6

        3.    Federal law requires that Cree include certain claims about longevity and energy efficiency on its package, which the federal government approved. ............. 7

        4.    Cree's bulb lines each have different packaging, which has changed during the class period. ........................ 7

        5.    Cree does not control the price of its consumer bulbs, which has changed during the class period. ............. 8

        6.    Cree employed different manufacturing processes and bulb designs during the class period, and cannot track which version or generation of bulb purchasers bought. ................................................ 9

        7.    Consumers do not use Cree bulbs in common ways. .......... 9

        8.    Cree offered consumers various warranties during the class period. .............................................. 10

        9.    Cree's bulbs have performed as advertised. ..................... 11

III.   STANDARD FOR CLASS CERTIFICATION .................................... 11

IV.    ARGUMENT AND PERTINENT AUTHORITIES ............................ 12

    A.    Plaintiff Cannot Satisfy the Requirements of Rule 23(a). .......... 12

        1.    Plaintiff Cannot Satisfy Rule 23(a)'s Commonality Requirement. ................................................... 12

            a.    Falsity requires a bulb-by-bulb inquiry.................... 13

            b.    An individualized inquiry would be required to determine which representations each class member saw before purchasing a Cree bulb. ............ 17

            c.    Plaintiff has not demonstrated that causation is a common issue. .................................. 19

            d.    Damages and restitution cannot be determined on a common basis. .............................. 21

        2.    Plaintiff is an inadequate class representative. ................. 22

    B.    Plaintiff Also Cannot Establish Compliance With Rule 23(b)(3). ................................................................... 23

1.   Common issues do not predominate...................................23
2.   Class treatment is inferior to the Cree warranty
     which currently covers all putative class members............24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..............................................................................22

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ..................................................................23

*Comcast Corp. v. Behrend*,
   133 S.Ct. 1426 (2013)....................................................................21, 23

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)...............................................................................12

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (U.S. 1993)..............................................................1, 3, 13

*Galitski v. Samsung Telecommunications Am.*,
   LLC, No. 12-4782, 2015 WL 5319802 (N.D. Tex. Sept. 11, 2015) .................24

*Garrido v. Money Store*,
   649 Fed. App'x 103 (2d Cir. 2016) .....................................................19

*Gonzalez v. Corning*,
   885 F.3d 186 (3d Cir. 2018) ..............................................................16

*In re Avon Anti-Aging Skincare Creams and Prods. Marketing and
   Sales Practice Litig.*,
   No. 13-CV-150 (JPO), 2015 WL 5730022 (S.D.N.Y. Sept. 30,
   2015) ..................................................................................................18

*In re IMAX Secs. Litig.*,
   272 F.R.D. 138 (2010)........................................................................23

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015).........................................................13

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ......................................................19, 23

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ...............................................................12

*Oscar v. BMW of North Am., LLC*,
  No. 09 Civ. 11(PAE), 2011 WL 6399505 (S.D.N.Y. Dec. 20,
  2011) ................................................................................................20

*Oscar v. BMW of North America, LLC*,
  274 F.R.D. 498 (S.D.N.Y. 2011) ...............................................16, 17

*Patton v. Topps Meat Co., LLC*,
  No. 07-CV-00654(S)(M), 2010 WL 9432381 (W.D.N.Y. May 27,
  2010) ................................................................................................25

*Price v. L'Oreal USA, Inc.*,
  No. 17 Civ. 614 (LGS), 2018 WL 3869896 (S.D.N.Y. Aug. 15,
  2018) ................................................................................................20

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ................................................................21

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008) ..............................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...................................................11, 12, 13, 24

*Westchester Independent Living Center, Inc. v. State Univ. of New
  York, Purchase College*,
  331 F.R.D. 279 (S.D.N.Y. 2019) .......................................................22

*Young v. Cree, Inc.*,
  4:17-cv-06252-YGR (N. D. Cal. January 28, 2021) .......................1, 10

**Statutes**

New York's General Business Law § 349................................................5

New York's General Business Law § 350................................................5

**Rules**

Fed. R. Civ. P. 23 ...................................................................1, 2, 12, 22

Fed. R. Civ. P. 23(a)...........................................................................*passim*

Fed. R. Civ. P. 23(a)(2)................................................................................23

Fed. R. Civ. P. 23(b) ...................................................................................12

Fed. R. Civ. P. 23(b)(3)................................................................................25

I.      INTRODUCTION

This is a misrepresentation case and like most (if not all) misrepresentation cases involving different statements regarding different products, it cannot be certified as a class action.  In fact, this is Plaintiff's counsel's second bite at the certification apple, having been denied certification based on the same evidence that is now before this court in the virtually identical case filed in California[1] called *Young v. Cree, Inc*., 4:17-cv-06252-YGR (N. D. Cal. January 28, 2021) (Dkt. 139).  Like the Plaintiff in *Young*, Plaintiff here claims Cree induced her to buy Cree bulbs based on statements on the product package that supposedly relate to useful life, even though each package included a federally mandated and non-actionable Lighting Facts Box that stated exactly how long the particular bulb was expected to last under specified conditions.  Because the bulbs she claims she claims to have purchased "failed" within a year, Plaintiff asks this Court to certify a class of all New York consumers who purchased Cree's A-type 60- and 100-Watt LED bulb products, without regard to differences in design, components, or actual or intended use (or misuse).

In an effort to meet the Rule 23 commonality requirement, Plaintiff offers the report of Dr. Gary Allen, who concludes, based on limited testing of only a few products, that *all* Cree bulbs suffer from a design defect that causes them to overheat and fail prematurely.  Dr. Allen's opinions were excluded in the California case and should be excluded here because they are based on "made-up methodology" that does not meet the *Daubert* standards.[2]  But

---

[1] A substantially similar class action complaint was filed in the District of Oregon (*Nguyen v Cree*, 3:18-cv-02097-SB) by the same Plaintiff's counsel and the parties stipulated to the dismissal of the case, with prejudice, on March 24, 2020 (Dkt. 54).

[2] Cree has filed a motion to exclude Dr. Allen's testimony pursuant to the standards set forth in *Daubert v. Merrell Dow Pharms*., 509 U.S. 579 (U.S. 1993).

even if Dr. Allen's opinions are considered by the Court, Plaintiff still cannot meet the commonality standard, much less the more stringent predominance standard under Rule 23. Dr. Allen only tested products from limited manufacturing weeks but admits the thermal properties and efficiency of LED bulb components improved during the class period. When a generation of bulb is updated, retailers do not remove the old version from their shelves. Because there is no way to tell when a bulb that a consumer purchased was manufactured, there cannot be a common answer to the question whether a consumer purchased a bulb as a result of false longevity representations on the product package.

In addition, even assuming the design and components were the same for hundreds of different products and generations of products swept into Plaintiff's class definition, this is a misrepresentation case based on three statements outside the federally mandated Lighting Facts Box on every Cree product sold in New York. Contrary to the position Plaintiff takes in her motion, "[t]he packaging for every LED Lightbulb at issue" (Mtn. at 3) does not contain one or more of the supposedly false statements identified by Plaintiff. The declaration of Phil Primato clearly shows that the packaging in use during the class period was not consistent. Some packages contained one, two, or in some cases **<u>none</u>** of the purportedly false statements. It is well-settled that a misrepresentation class cannot be certified where the purported misrepresentation are not uniform.

To the extent there are any common issues (and there are not), they do not predominate. There are different types, wattages, color temperatures, and sizes of bulbs within the class Plaintiff seeks to certify, all of which impact the thermal properties of the bulbs and therefore, based on Plaintiff's theory, their propensity to fail. Cree does not control how bulbs are used or misused. Many are purchased by businesses and some are purchased

for resale or are subject to rebates that cover the entire cost of the bulb.  To the extent there were problems with Cree bulbs (and the undisputed evidence shows Cree's return and defect rates are some of the lowest in the industry), they could have been replaced or refunded by a retailer or by Cree through its warranty program.  And, consumer expectations are clearly not uniform.  For example, a person who used a bulb only 15 minutes per week for many years got exactly what she thought she was getting when she bought the bulb.

What's more, Plaintiff fails to account for the federally mandated Lighting Facts Box on every Cree bulb package that contains lifetime projections that all purchasers will see no matter what other representations appear on the package.[3]  In fact, Cree's consumer testing expert, Dr. Lynne Weber, has established that the three statements that supposedly exist on all Cree product packages neither impact consumers' likelihood of purchasing a Cree LED bulb nor consumers' impression of a bulb's expected lifetime.  In other words, Dr. Weber has demonstrated that the supposedly actionable statements outside the Lighting Facts Box are actually immaterial to consumers.   As a result, Plaintiff cannot establish misrepresentation or reliance on behalf of the class she seeks to represent.

There are also individual issues with respect to the damages available to each class member.  Plaintiff's damages expert, Dr. Andreas Groehn,[4] proposes—but has not even attempted to perform—a conjoint analysis that is meant to calculate the difference between the price of the Cree product purchased and its presumed value assuming the representations

---

[3] Of course, this Court has already ruled that claims based on the representations contained in the Lighting Facts Box, even to the extent those claims are repeated elsewhere on the package, are preempted.  (Opinion and Order on Motion to Dismiss Complaint, Dkt. 27.)

[4] Cree has submitted  a motion to exclude Dr. Groehn's report and any testimony pursuant to the standards set forth in *Daubert v. Merrell Dow Pharms*., 509 U.S. 579 (U.S. 1993).

on the package were false.  Dr. Groehn's suggestion of an opinion is based nearly entirely on claims that this Court previously dismissed (i.e., Cree's "100% Satisfaction Guaranteed" language), and failed to account for the federally mandated Lighting Facts Box.  Even setting aside this fundamental flaw, Dr. Groehn has failed entirely to develop a workable framework for calculating class-wide damages, particularly where Cree does not control the prices at which its products are sold by retailers.  As a result, individual and unmanageable issues will dominate the assessment of damages for each putative class member.  For this reason and others, this putative class action is not superior to Cree's warranty program, which is already providing class members the relief Plaintiff seeks.

In addition to falling short on commonality, predominance, and superiority, Plaintiff is not an adequate class representative.  Cree has filed a motion to dismiss her individual claims because she lacks standing to sue—she did not even purchase the bulbs she claims were defective.  (Dkt. 74.)  The Court must deal with this issue before it can even address certification of the class.  Like the District Court in California, this Court should deny class certification for any or all of these reasons.

## II.    STATEMENT OF THE RELEVANT FACTS

Plaintiff alleges that she purchased 60- and 75-Watt bulbs (the "Bulbs") from The Home Depot "during the class period."  (Compl. (Dkt. 1) ¶ 41.)  She claims she paid between $10 and $20 per Bulb using money that her mother had provided her to obtain the Bulbs for her mother's home.  (Deposition Transcript of Stephanie Wedra ("Wedra," attached as Exhibit 1 to the Declaration of Rebecca K. Lindahl, Esq. (the "Lindahl Decl.")) 110:25-111:7, 114:21-115:7, 120:4-8.)  Plaintiff's mother installed the Bulbs in light fixtures in her home.  (Wedra 120:4-22, 122:3-123:5.)  Plaintiff alleges that all three Bulbs" burned out

within six months of Plaintiff's [mother's] purchase." (Compl. ¶ 42. )

## A.   Procedural Background

Plaintiff filed her Complaint on April 9, 2019, alleging claims for violations of New York's General Business Law ("GBL") §§ 349 and 350; fraudulent misrepresentation and concealment; unjust enrichment; and breach of express and implied warranties. (Compl. ¶¶ 56-108.)  She claimed that despite Cree's representations touting its products' longevity, her bulbs failed within months.  *Id.* ¶ 42.

Cree moved to dismiss Ms. Wedra's Complaint on June 14, 2019.  On March 20, 2020, the Court entered an order granting in part and denying in part Cree's motion to dismiss.  (Dkt. 27.)   The order classified Plaintiff's claims according to three types of statements:  (i) reiterations of federally required disclosures; (ii) comparative performance statements;  and  (iii)  representations  that  Cree's  products  are  "100%  Satisfaction Guaranteed."  *Id.* at 8-10.  The Court dismissed as preempted all claims in the first category of statements, which reiterate those in the Lighting Facts label.  *Id.*  In contrast, statements comparing performance between the longevity of Cree bulbs to incandescents or "cheap LED bulbs"  were  not  preempted.   *Id.* at 8-9.   Finally,  the  third  statement  category—100% satisfaction guaranteed—was not preempted, but the Court dismissed claims based on the "100% Satisfaction Guaranteed" statements as "non-actionable puffery."  *Id.* at 15.  The Court also dismissed Plaintiff's breach of warranty claims.  *Id.* at 16-19.  Finally, the Court dismissed Plaintiff's unjust enrichment claim.  *Id.* at 21-22.  Accordingly, the only claims remaining in this case are Plaintiff's claims for violations of GBL §§ 349-350 and fraudulent misrepresentation  and  concealment,  and  Plaintiff  may  only  premise  those  claims  on comparative performance statements about cost and energy savings and the existence of a

ten-year warranty.  *See id.* at 8-10, 15.

Plaintiff filed her Motion for Class Certification on February 26, 2021.  Plaintiff cannot satisfy the requirements for class certification and her motion must be denied.

**B.    Cree Bulbs**

**1.    Cree manufactures many types of consumer LED bulbs.**

Cree is an industry-leading manufacturer of LEDs and lighting products.  In 2013, Cree launched a line of consumer LED light bulbs (also called "lamps").  Declaration of Scott Schwab ("Schwab," Lindahl Decl. Exh. 2) ¶¶ 10-13; Declaration of Phil Primato ("Primato," Lindahl Decl. Exh. 3) ¶¶ 7-12; Declaration of Jonathan Vollers ("Vollers," Lindahl Decl. Exh. 4) ¶¶ 30-36.  Cree's line of LED bulbs includes A-type, reflector, downlight, surface and disk mount, and candelabra bulbs.  *Id*.  Each of these lines of bulbs has a different typical use or purpose, and within each line, variations of the bulbs have different features, wattages, color temperatures, and sizes.  *Id*.  These differences affect the bulbs' thermal properties.

**2.    Each of Cree's consumer bulb lines passed ENERGY STAR tests for longevity and energy efficiency.**

Each of Cree's lines of bulbs was certified as energy efficient under the federal government's ENERGY STAR program.  Schwab ¶¶ 36-40; Vollers ¶ 42.  To achieve ENERGY STAR certification, Cree's bulbs had to pass rigorous, industry-standard tests.  Vollers ¶¶ 12, 13, 15-20, Exh. 1-4.  One such test measures the bulb's expected "L70 lifetime," or the number of hours of operation after which a bulb can be expected to emit at least 70% of its initial light output, which the industry considers the end of an LED bulb's useful life.  Schwab ¶ 41; Vollers ¶¶ 23, 57.  Under ENERGY STAR guidelines, which are drawn from federal regulations, a bulb's L70 lifetime, which is also referred to as its "rated

lifetime," is extrapolated using 6,000 hours (over 8 months) of actual test data. *Id*.

> **3.  Federal law requires that Cree include certain claims about longevity and energy efficiency on its package, which the federal government approved.**

ENERGY STAR guidelines require manufacturers to include certain information on the bulb itself and the bulb's packaging and advertising materials. Schwab ¶¶ 50-55; Vollers ¶ 28; Primato ¶¶ 30-34. For example, an ENERGY STAR qualified bulb—as all of Cree's consumer bulbs are—must include an FTC-mandated "Lighting Facts" box on its package. Schwab ¶¶ 50-55; Primato ¶¶ 30-31; Vollers ¶¶ 50-51. The Lighting Facts label must include, among other things, (i) the bulb's initial light output, (ii) estimated annual energy cost in dollars, calculated using the average initial wattage, a usage rate of three hours per day, and $0.11 per kWh; (iii) the life of the lamp expressed in years, calculated by using the bulb's L70 lifetime in hours assuming operation of three hours a day, and (iv) the wattage for each lamp expressed as "Energy Used" in average initial wattage. *Id*. The Lighting Facts Box is required under both ENERGY STAR guidelines and FTC regulations. *Id*. Cree cannot change the representations or calculations in the Lighting Facts Box. *Id*.

> **4.  Cree's bulb lines each have different packaging, which has changed during the class period.**

Although each iteration of Cree's bulb packaging contains the mandatory Lighting Facts Box, each product line of Cree's bulbs has its own packaging with different images and statements. Primato ¶¶ 27, 28, Exhs. 4-30. Not only is packaging varied across product lines, but aspects of Cree's bulb packaging changed over time such that Cree's packaging is not consistent during the class period within each line of bulb. Primato ¶¶ 27, 28, 35, 36, Exhs. 4-30. In fact, there is no single iteration of Cree's LED bulb packaging that contained all of the statements Plaintiff has identified as problematic in her motion. Primato ¶ 50.

5.    **Cree does not control the price of its consumer bulbs, which has changed during the class period.**

When Cree began selling its consumer bulbs in 2013, The Home Depot ("THD") was its exclusive retail partner.  Schwab ¶ 20; Primato ¶ 13.  Today, Cree sells nearly all of its bulbs through THD, but also sells some bulbs through Amazon.com and specialty lighting website 1000bulbs.com.  Schwab ¶ 20; Primato ¶ 13.  Cree does not set the retail price that THD, or any retailer, charges for Cree bulbs.  Schwab ¶ 22.  At most, Cree can suggest a Manufacturer's Suggested Retail Price ("MSRP"), but THD makes the ultimate decision about the price.  *Id*.  In addition, Cree has no control over whether THD places bulbs on sale or clearance, or how THD merchandises Cree bulbs within its stores.  Schwab ¶¶ 28-29.

The price of Cree consumer bulbs varies from line to line; i.e., A-type bulbs are not priced identically to reflectors.  Primato ¶ 15.  Prices of all of Cree's consumer bulbs have decreased over time.  Schwab ¶ 24.  In addition, Cree offers bulbs in multipacks that provide volume discounts, which can result in the per-bulb price being slightly different even within the same bulb type and generation.  Primato ¶ 15.  Further, some utilities offer consumers rebates for LED bulbs, and the amount and frequency of rebates varies from locality to locality and at different points in time.  Schwab ¶ 35; Primato ¶ 25.  Cree has no way of knowing which consumers received a rebate.  Schwab ¶ 35; Primato ¶ 25.

Cree sets its MSRP based on a variety of factors, including customer preferences for prices that fall below certain palatable plateaus like $10 and $5 and competitors' prices.  Schwab ¶ 23.  Cree has never based its pricing decisions on customer preferences for certain features or functions of bulbs, or customer reactions to statements about longevity or energy savings.  Schwab ¶ 25.

Moreover, some consumers received hefty rebates for their lamps.  This also creates

a separate issue that when utilities offer particularly attractive rebates for Cree bulbs, some consumers purchase large quantities of bulbs and resell the bulbs for a profit on Amazon. Primato ¶ 25; Schwab ¶ 35.  Cree cannot track where bulbs are sold in this "gray" market. *Id*.  New York utilities frequently offer attractive rebates, so New York purchasers of bulbs may appear to be potential class members when they are in fact "gray market" resellers.  *Id.*.

6.    **Cree employed different manufacturing processes and bulb designs during the class period, and cannot track which version or generation of bulb purchasers bought.**

For each of Cree's lines of bulbs, Cree has implemented multiple generational changes between 2013 and today. Schwab ¶¶ 10-16; Primato ¶¶ 9-12.  As a result of Cree's continuous manufacturing improvements and generational changes, bulbs within the same product line may be from different generations, and bulbs within the same generation may have been manufactured using different processes or components.  THD does not always give new generations of Cree bulbs new SKUs, so there is no way to track which generation of bulb consumers purchased.  Schwab ¶ 27; Primato ¶ 21.  In fact, because of the differences between generations of bulbs, Cree tests them separately and submits separate performance data for each generation as required by ENERGY STAR guidelines.  Vollers ¶¶ 46, 75-76.

When Cree ships new generations of bulbs to THD, Cree has no ability to control whether THD sells older generation of bulbs before stocking newer generations, or stocks both generations at once.  Schwab ¶ 27.  The same is true when Cree changes its packaging. Primato ¶ 36.  As a result, two consumers in different THD stores may see, on the same day, different generations of Cree products or different packaging.  Schwab ¶ 28; Primato ¶ 36.

7.    **Consumers do not use Cree bulbs in common ways.**

Plaintiff's own expert said it best: "**There is no exact replication of a typical consumer.  Applications vary over the entire spectrum.**"  Allen Tr. II 74:1-3.  Cree has

no way to know how purchasers use bulbs.  Primato ¶ 17.  Some purchasers may, for example,
purchase bulbs for installation in residential real estate construction, while others may use
the bulbs in their home.  *Id.*  Similarly, Cree has no way to know whether consumers use the
bulbs in a manner that is contrary to the bulb's instructions and warnings, such as in enclosed
fixtures, extreme temperatures, or in tandem with non-LED bulbs, all of which can increase
the thermal stress on and shorten the useful life of an LED bulb.  *Id.*  Plaintiff's own expert
Dr. Allen testified that such differences in use can dramatically affect the useful life of LED
Lamps.[5]  Deposition Transcript of Dr. Gary Allen taken in *Wedra v. Cree* ("Allen Tr. II,"
Lindahl Decl. Exh. 5)[6] 34:11-35:6.

        **8.**    **Cree offered consumers various warranties during the class period.**

Cree has offered consumers various warranties since 2013.  Schwab ¶ 55.  The length
and terms of Cree's warranty have changed over time, and vary from product line to product
line.  Schwab ¶ 66; Primato ¶ 39; Declaration of Amy Soens ("Soens," Lindahl Decl. Exh.
6) ¶ 8.  Consumers who are dissatisfied with Cree's bulbs can return bulbs to THD in
accordance with THD's return policy, or initiate a warranty claim directly to Cree.  Since
2013, Cree's return and warranty claim rates have both been less than 2%, which is very low

---

[5] As Plaintiff's expert Gary Allen explained, consumers run their lamps in many different
types of applications and various temperatures.  Dr. Allen identified the following variables that
affect the operating temperature of a lamp: the season of the year; household income; location of the
light bulb in the home; whether a home has air conditioning; the airflow in the room where the lamp
is installed; and the type of luminaire in which the lamp is installed.  Allen Tr. II 34:14-22; 35:23-
36:21.

[6] Cree deposed Dr. Allen previously in *Young v. Cree*, 4:17-cv-0625-YGR.  Pursuant to an
agreement between the parties, documents produced in discovery and deposition testimony provided
in *Young* may be used in this matter.  Cree deposed Dr. Allen again in this case; that testimony is
cited as "Allen Tr.. II."

by industry standards.  Schwab ¶ 31; Primato ¶ 19.  THD does not consistently provide Cree with reasons for customer returns, so Cree has no way of knowing whether customers returned Cree bulbs because the bulb did not light, or for some other reason, including buyers' remorse.  Schwab ¶ 32; Primato ¶ 20.

Even though Cree's warranty has changed over time, Cree's customer service department has always followed a "satisfaction guaranteed" policy and offers replacement bulbs to dissatisfied customers even if they did not comply with or fall within the warranty terms.  Schwab ¶ 66; Primato ¶ 41.  Cree even replaced bulbs for customers when it was subsequently revealed that consumers had purchased a competitor's bulb.  Primato ¶ 41.

### 9.  Cree's bulbs have performed as advertised.

Cree is not aware of any product or manufacturing defects that affect the expected lifetime of its consumer bulbs.  Schwab ¶ 62; Vollers ¶ 58; Soens ¶ 21; Primato ¶ 45;  Cree's consumer bulbs have never been the subject of unusually high consumer complaints or warranty returns.  Schwab ¶ 63; Vollers ¶ 59; Soens ¶ 22; Primato ¶ 46.  Cree's consumer bulbs have never experienced catastrophic failures—or the sudden and complete failure to emit light—at an unusually high rate.  Schwab ¶ 64; Vollers ¶ 60; Soens ¶ 23; Primato ¶ 47.

## III.  STANDARD FOR CLASS CERTIFICATION

Class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (citation omitted), and is appropriate only when Plaintiff can satisfy his burden of complying with each of the four requirements of Rule 23(a) and at least one of the requirements of 23(b).  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008).  Plaintiff must meet the threshold requirement of

demonstrating by a preponderance of the evidence that the proposed class's claims include common questions of law or fact, that the claims of the named plaintiffs are typical of those in the proposed class, and that the named plaintiffs and proposed class counsel will adequately and fairly represent the absent putative class members.  Fed. R. Civ. P. 23(a); *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  If Plaintiff satisfies the Rule 23(a) threshold requirements, Plaintiff must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Rule 23's requirements are not mere pleading standards. *Dukes*, 564 U.S. at 351 (citations omitted).  Instead they must be satisfied through "significant proof."  *Id*.  Plaintiff's motion for class certification, which relies entirely on unauthenticated and often incomplete documents, does not come close to meeting Plaintiff's evidentiary burden.

## IV.   ARGUMENT AND PERTINENT AUTHORITIES

### A.   Plaintiff Cannot Satisfy the Requirements of Rule 23(a).

#### 1.   Plaintiff Cannot Satisfy Rule 23(a)'s Commonality Requirement.

Plaintiff's proposed class would sweep in consumers who purchased two wattages of A-type Cree consumer bulbs, both of which comes in a range of color temperatures and sizes, and each of which evolved within and across multiple generations during the class period. Bulb packaging differs from one product to the next, and typically changes for each new generation of the same product.  Consumers almost certainly paid different prices—which Cree did not set—for Cree bulbs over the class period as prices changed over time.  Due to the existence of rebates or THD's decisions to discount products, customers even likely paid different prices for the same bulb on the same day.  Even if there were no other problems with commonality (and there are many), the significant range of products, and generations

and permutations of each product, commands the conclusion that the Plaintiff cannot satisfy Rule 23(a)'s commonality requirement.

### a.      Falsity requires a bulb-by-bulb inquiry.

Plaintiff's so-called "common" issues are all premised on purported misrepresentations about the longevity of Cree bulbs.  (Dkt. #65 at 3-4.)  In support of class certification, Plaintiff cites a number of omission cases where the plaintiff was able to demonstrate that whether the products at issue were defective such that they could not satisfy their label representations was a question with an "answer . . . common to all class members." *See, e.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015).  None is applicable here because Plaintiff has failed to prove the existence of any defect—in other words, Plaintiff has not proven that the question of whether Cree's bulbs are defective such that they will not satisfy the challenged representations is capable of being commonly answered.  *See id.* ("[C]lass certification requires not only 'common questions,' but 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" (citing *Dukes*, 564 U.S. at 350)).

In an effort to show a class-wide defect, which includes every New York consumer who ever bought any generation of two models of Cree's A-type consumer products, Plaintiff has offered the opinions of Dr. Gary Allen.[7]  Dr. Allen's opinions are not, however, admissible to prove that class-wide adjudication is possible.  As explained in greater detail in Cree's Motion to Strike, Dr. Allen opined that (i) Cree LED Lamps can be grouped into four "lamp architectures" for common analysis; and (ii) Cree LED Lamps suffer from a

---

[7] Cree has filed a separate motion to exclude Dr. Allen's report and any testimony pursuant to the standards set forth in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (U.S. 1993).

common defect that will cause them to prematurely fail in less than 6,000 hours.  Expert Report of Gary R. Allen, PhD ("Allen Rep.") [Dkt. No. 63-1] at  3.  Dr. Allen offered the same opinions in the *Young* action, and the court excluded every single one of his opinions on the basis that they were contrary to and ignored industry standards, were not peer-reviewed or tested, and did not meet the intellectual rigor required under *Daubert*.  Perhaps in an attempt to salvage his opinion, Dr. Allen attempted in this action to also extrapolate the results of third-party studies performed on California-specific bulbs, ignoring the studies' stated limitations that they did not replicate real-world residential applications or quantify lifetimes.  Dr. Allen's opinions are still hopelessly unreliable and should be excluded for the reasons stated in Cree's motion to strike.

To reach his first opinion, Dr. Allen invented a methodology in which he reviewed pictures of Cree packaging for over 30 products, narrowed those products to seven core designs, and then further reduced those seven designs to four "lamp architectures," without physically inspecting a single Cree LED Lamp.  Allen Rep. at 2-3, 64-66; Deposition Transcript of Dr. Gary Allen ("Allen Tr.I," Lindahl Decl., Exh. 7) 41:5-42:14.  Dr. Allen's methodology of grouping lamps into "architectures" by inspecting photographs is not industry standard or based upon any peer-reviewed or generally accepted scientific or technical principles.  Allen Tr. I 41:5-42:14; Vollers ¶¶ 71-72, 98.  Using this visual-inspection methodology, Dr. Allen concluded that he could assess the reliability of any Cree LED Lamp by analyzing any other Lamp within the same "architecture," even though each "architecture" encompasses a range of generations, wattages, and color temperatures.  Allen Rep. at 3, 12-16; Vollers ¶¶ 100-101.

The *Young* court excluded Dr. Allen's opinions in their entirety, as this Court should,

because Dr. Allen's methodology is nothing more than his personal opinion and not reliable or admissible.  Even if the Court considers Dr. Allen's report, he leaves too big an analytical gap between his observation that the operating temperature of some components exceeds an arbitrary threshold and his opinion that all Cree lamps[8] are defective and will fail.  In other words, although Dr. Allen claims to have identified a defect that causes the lamps he tested to operate at excessive temperatures, he does not demonstrate that these allegedly excessive temperatures caused even one catastrophic failure in the test group, let alone hundreds of other lamps with different designs and components.  In fact, Dr. Allen intentionally ignores ample evidence to the contrary, including government-mandated tests by independent laboratories.  Allen Tr. I 20:22-25:21, 78:23-79:12, 82:5-16; 91:20-92:7; Vollers ¶¶ 56, 114.

Rather than prove causation, Dr. Allen testified that he assumed that Cree lamps must have high failure rates because Plaintiff filed this lawsuit, and he was provided with an "inference" that Cree LED Lamps are defective.  Allen Tr. I 83:19-84:24.  In other words, Dr. Allen assumed high failure rates related to a defect and went looking for a reason to explain them.  It is perhaps not surprising, therefore, that Dr. Allen's prediction that Cree lamps will commonly fail within 6,000 hours is not only speculative but flat out wrong when measured against objective data.  Cree's unrebutted testing shows that there is no common amount of time within which bulbs fail; to the contrary, Cree has been selling consumer LED lamps since 2013 and has not observed—either through customer returns, warranty claims, or ongoing reliability testing—excessive premature failure, especially within less than one

---

[8] Dr. Allen's opinions are limited to A19, A21, and BR30 lamps.  Dr. Allen did not analyze any other type of lamp, including the PAR, BR40, downlight, recessed can, or candelabra lines. Allen Rep. at 3, 66; Allen Tr. I 39:13-40:17.

year of operation.  Vollers ¶¶ 56, 114.

All of this means that the issue of falsity, or whether Cree misrepresented anything, depends on how long each consumer's bulb lasted before "failure" and what caused the "failure."  *See Oscar v. BMW of North America, LLC*, 274 F.R.D. 498, 511 (S.D.N.Y. 2011) (concluding individual causation questions would predominate over common questions in tire defect case because "plaintiff would have to demonstrate in each individual case that the tire punctured for reasons related to the defect, rather than for a reason that would cause any tire to fail.  Individualized issues of causation would thus swamp the common inquiry into an as yet to be identified tire design defect.")

This case is nearly identical to *Gonzalez v. Corning*, 885 F.3d 186 (3d Cir. 2018).  In that case, the plaintiffs alleged that Corning's warranty period and other supposed misrepresentations led consumers to believe that roofing shingles would "last for at least 25 years or for the same number of years as the limited shingle warranty."  *Id.* at 196.  The *Gonzalez* plaintiffs failed to identify a common defect, and that failure was fatal to class certification—as it should be here, where Plaintiff's offered proof of a defect fails to persuade.  *Id.* at 198.  Without a common design defect, the Court of Appeal concluded it would have to perform "a shingle-by-shingle inspection . . . to distinguish the ones that are likely to fail before the end of their warranty periods from the ones that are likely to perform as expected (*i.e.*, that are not defective)."  *Id.* at 197.  In short, "[i]f proponents of the class do not allege a defect common to the class, the defectiveness of a given product is, by necessity, not susceptible to proof by classwide evidence."  *Id.* at 198.

Plaintiff has not even tied the failure of her mother's lamps to the alleged defect identified by Dr. Allen and has not offered any proof that this proposed defect causes any

premature failures at all, much less premature failures of all Cree lamps across multiple product lines.  Whether a bulb failed prematurely (making the bulb's packaging arguably false or misleading) is thus a bulb-by-bulb question.  *See, e.g.*, *Oscar*, 274 F.R.D. at 510 ("[Plaintiff] has not provided the court with any evidence that Goodyear RFTs are likely to fail because of a particular defect.  The failure to specify an alleged common defect provides a further basis for concluding that plaintiff has not demonstrated predominance.").

Accordingly, because Plaintiff has not offered any evidence to tie her proposed bulb defect to her mother's or any other bulb failure, whether a bulb did not last a certain length of time due to something Cree did is a bulb-by-bulb—not a common—inquiry.

> **b.  An individualized inquiry would be required to determine which representations each class member saw before purchasing a Cree bulb.**

Plaintiff cites three "Longevity Claims" that allegedly lead to consumer preference and a price premium:  (1) cost savings statements, such as "$226 Lifetime Energy Savings"; (2) that Cree's LED bulbs will "work better and last longer"; and (3) the "100% Satisfaction Guaranteed" statement, which the Court has already dismissed as non-actionable puffery. (Dkt. 27 at 15.)  Her expert does not assess these statements.

An individualized inquiry would be required to determine which representations each class member viewed before purchasing a bulb. For example, the package for the 100W "soft white" bulb, which Plaintiff did not purchase but includes in her proposed class and which was in use in about  2015-2018, states that bulb has a 10-year warranty, 82% less energy consumption, and results in $226 lifetime savings—all federally mandated statements.  *See* Primato ¶ 27, Exh. 29.[9]  The 100W single bulb "daylight" package in use about the same

---

[9] The Declaration of Phil Primato includes a table setting forth which of the statements

time simply states 82% less energy consumption and $226 lifetime savings; there is no reference to a 10-year warranty.  *See* Primato ¶ 27 and Exhs. 9, 10.

The product Plaintiff purchased for her mother—60-Watt bulbs—is a good example of the different packaging within Plaintiff's putative class.  The 2013 Soft White package contains no statements regarding longevity or energy consumption (other than non-actionable statements in the mandatory Lighting Facts Box).  *See* Primato ¶ 27 and Exh. 4.  In contrast, the 2018 package states that it has "22+ years Longer Life"—a statement derived from ENERGY STAR guidelines.  *See* Primato ¶ 27 and Exhs. 24, 25.  The 60W Generation 3 Soft White Package, however, contains one of the supposedly actionable statements: 82% less energy consumption and $135 of lifetime energy savings.  *See* Primato ¶ 27 and Exh. 11.  On this package, the Cree warranty is merely described in small print next to the Lighting Facts Box.  *Id.*  There are many other variations in packaging over the class period.  As set forth in the Schwab declaration, the product packages change not based on consumer preference, but based on other factors, including federal requirements.  Schwab ¶¶ 19-25. Thus, whether any class member saw the statements Plaintiff identified before purchasing a bulbs for her mother and what packaging each class member viewed when purchasing their bulbs are all individual inquiries that preclude certification in this case.  *See In re Avon Anti-Aging Skincare Creams and Prods. Marketing and Sales Practice Litig.*, No. 13-CV-150 (JPO), 2015 WL 5730022, at *5 (S.D.N.Y. Sept. 30, 2015) (explaining that where a case involves allegedly "false statements" that were not "present in all cases and crucial to the purchase decision" but rather "false statements that may not have been made to the individual

---

flagged by Plaintiff are included on each Cree LED bulb package.  Primato ¶ 50.

consumer," determining membership in the class "would require an individualized mini-trial.").

> ### c.      Plaintiff has not demonstrated that causation is a common issue.

For Plaintiff's fraudulent misrepresentation claim, she must show the alleged misrepresentations were material such that she and everyone else in the class was induced to rely on them. *See, e.g.*, *Garrido v. Money Store*, 649 Fed. App'x 103, 105 (2d Cir. 2016) (affirming denial of class certification where plaintiff could not use class-wide evidence to prove a material representation, its falsity, and reliance); *Moore*, 306 F.3d at 1253.   A showing of a defendant's "[c]ommon course of conduct is not enough." *Id.* at 1255.

Here, Plaintiff cannot establish class-wide causation or reliance on the alleged misrepresentations regarding longevity identified in her motion because they were not material, particularly in the face of the Lighting Facts Box, which contains specific, concrete representations as to how long each type of bulb will last.



Cree has presented unrebutted evidence of actual consumer testing that demonstrates this point.   Dr. Lynne Weber designed and conducted a consumer survey to test the impact

of each of the accused packaging statements on consumers' likelihood of purchasing Cree LED bulbs as well as their expectation of Cree LED bulb lifetimes.  Expert Report of Dr. Lynne Weber ("Weber," Lindahl Decl. Exh. 8) ¶ 19.[10]  This testing established that none of the packaging statements Plaintiff identifies has any statistically significant impact on consumers' likelihood of purchasing a Cree LED bulb or expectation of Cree LED bulb lifetime.  Weber ¶¶ 84-90.  In other words, the packaging statements about which Plaintiff complains had no material impact.  At the very least, a consumer survey such as Dr. Weber's, showing that the packaging statements at issue are not material to the average consumer, means that the question of causation or reliance must be treated on an individualized, rather than class-wide, basis.

Even if Cree had omitted all of the representations Plaintiff claims are misleading, a reasonable consumer would *still* think Cree's bulbs are designed to last 22.8 years because of the Lighting Facts Box.  Determining whether someone relied on vague, supposedly implied representations of longevity or the actual specific, federally regulated representation is an individualized inquiry.  *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2018 WL 3869896, at *8 (S.D.N.Y. Aug. 15, 2018) ("The viability of each class member's fraud claim turns on whether or not he or she relied on alleged representations. . . . Thus, certification of any class based on a fraud claim is inappropriate.").  Plaintiff cannot establish causation or reliance on any of the statements she claims are misleading.  In the face of the clear representations contained within the Lighting Facts Box, causation and reliance are not

---

[10] "Suits alleging false advertising or deceptive trade practices—in which the consumer's perception is key—usually turn on the persuasiveness of a consumer survey."  *Oscar v. BMW of North Am., LLC*, No. 09 Civ. 11(PAE), 2011 WL 6399505, at *5 (S.D.N.Y. Dec. 20, 2011).

common issues.

> **d.    Damages and restitution cannot be determined on a common basis.**

Plaintiff must present a damages model that is consistent with their liability case, and the court "must conduct a rigorous analysis to determine whether that is so." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  In particular, Plaintiff "must be able to show that [her] damages stemmed from the defendant's actions that created the legal liability." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015).  Plaintiff's sole source of evidence regarding class-wide damages is the expert testimony of Dr. Andreas Groehn, who proposed but did not perform a conjoint survey that purports to value the bulb attribute of "longevity" and concluded that class members overpaid for Cree bulbs that touted lifetimes in excess of the bulb's actual lifetime.

Cree has filed a motion to strike Dr. Groehn's testimony.  As pointed out in that motion, his proposed conjoint methodology has been rejected by other courts and should be rejected here.  First, Dr. Groehn merely describes a hypothetical, and in his view infinitely flexible, conjoint survey.  This description does not provide sufficient detail about Groehn's proposed methodology, and is therefore speculative and conjectural and must be excluded.  Further, Dr. Groehn's limited description of his proposed survey is fundamentally at odds with this Court's prior ruling on Cree's motion to dismiss and with Plaintiff's theory of the case.  Groehn (i) proposes testing damages using the "100% satisfaction guarantee" packaging language that this Court has already found to be non-actionable puffery (ECF No. 27 at 15), as well as language that does not appear on any Cree bulb package; (ii) impermissibly ignores the supply side of the supply-and-demand interaction in his proposed measurement of price premiums; and (iii) renders a proposed damages methodology that

necessarily assumes a 100% failure rate, contrary to the Plaintiff's theory of the case and real-world product performance data showing de minimis failure rates.  At bottom, the record evidence shows that Cree would not have adjusted its pricing in the manner Dr. Groehn suggests.

Even if Dr. Groehn's opinions were admissible, which they are not, the Court should not give them weight because, as set forth in the expert opinions of Expert Reports of Drs. Jesse David and Joel Steckel (Lindahl Decl., Exhs. 9–10), respectively, Dr. Groehn's hypothetical survey and conjoint analysis suffer from methodological and analytical flaws that render them inadequate for purposes of satisfying predominance under Rule 23  For example, the use of undefined and overlapping attribute terms; a design that fails to recognize the target population or real-world purchase decisions; failure to include all, or at least all significant, purchase drivers in his attributes list; and unrealistic pricing are all issues that undermine the adequacy of Groehn's damages model.  Dr. Groehn's proposed survey should be given no weight.

2. **Plaintiff is an inadequate class representative.**

Under Rule 23(a), a class representative must show he can "fairly and adequately protect the interests of the class."  The proposed class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997); *Westchester Independent Living Center, Inc. v. State Univ. of New York, Purchase College*, 331 F.R.D. 279, 298 (S.D.N.Y. 2019).  Plaintiff is not part of this class and has not suffered "the same injury" as the members of the proposed class.  As set out in Cree's separately filed motion to dismiss for lack of standing (Dkt. 74), Ms. Wedra purchased the bulbs at issue in this case with her

mother's money, for use in her mother's home, where her mother paid the electricity bills. Plaintiff has not suffered any injury sufficient to confer Article III standing and is accordingly an inadequate class representative.  Even if she meets the standing threshold, Plaintiff's claims are subject to attack because she lacked the same interest as other putative class members when purchasing the bulbs.  *See, e.g.*, *In re IMAX Secs. Litig.*, 272 F.R.D. 138, 152 (2010) ("If [the proposed class representative] is atypical, or lacks standing, it cannot be designated class representative, irrespective of any predominance analysis."); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (affirming denial of class certification where named plaintiff lacked standing and therefore "was not a member of the class").

### B.   Plaintiff Also Cannot Establish Compliance With Rule 23(b)(3).

Plaintiff has not met her burden to establish that common issues predominate over individualized ones or that a class action is the superior method of adjudication.

### 1.   Common issues do not predominate.

The predominance test involves the same principles that guide the Rule 23(a)(2) commonality analysis, but it "is even more demanding than Rule 23(a)."  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).  Here, common issues do not predominate because the most basic issues are individualized, including whether (1) the representations were false or misleading; (2) they were material (i.e., reliance); (3) class members saw them; (4) a class member has been injured and therefore entitled to damage or restitution; (5) class members were consumers, as opposed to contractors or businesses; and (6) class members complied with the written warranty.  *See, e.g., Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("[E]ach plaintiff must prove that he or she personally received a material

misrepresentation. . . . Where there are material variations in the nature of the representations made to each member of the proposed class, however, class certification is improper because plaintiff will need to submit proof of the statements made to each plaintiff. . . .").

Plaintiff simply assumes there is a defect in the lightbulbs that renders everything Cree ever said about the bulbs' longevity false and misleading.  "But this macro-level methodology will not withstand microlevel rigorous analysis and close scrutiny."  *Galitski v. Samsung Telecommunications Am.*, LLC, No. 12-4782, 2015 WL 5319802, at *16 (N.D. Tex. Sept. 11, 2015) (denying certification to a California proposed class in a phone defect suit).  Like Samsung in *Galitski*, Cree has the Constitutional and statutory right to litigate its fundamental defenses to Plaintiff's claims:

> It breaks down because Samsung is clearly entitled to litigate on an individual class member basis such fundamental and dominant issues as: whether a class member's phone was defective at all; whether the class member experienced the power-off issue as a result of the allegedly defective [Redacted] whether the class member experienced the power-off issue during the one-year warranty period; whether a class member returned his or her phone to an authorized phone service facility during the warranty period, and, if not, whether Samsung waived the precondition or permitted the precondition to be satisfied by return to the customer's wireless carrier; whether with respect to a class member who did return his or her phone to an authorized phone service facility, Samsung repaired the phone after a reasonable number of attempts; whether the power-off issue occurred with sufficient frequency to render the particular phone unfit for its ordinary purpose; and whether a class member received some benefit from his or her phone, thereby affecting the amount of disgorged profits that should be awarded to the individual class member. These are questions that affect individual class members, they cannot be adjudicated based on a generalized set of facts and producing one unified conclusion, and they predominate.

*Id.*  A class cannot be certified on the premise that Cree would not be able to litigate the exact same defenses here.  *Dukes*, 564 U.S. at 367.

2.     **Class treatment is inferior to the Cree warranty which currently**

24

**covers all putative class members.**

A class action is not the superior form of redress here because any remedy the Court could provide would simply be a diluted version of Cree's five and ten year warranties.  In determining superiority, the Court should analyze the following four factors:  (1) the interest that members of the class have in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation already commenced by members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in the management of a class action. Fed R.Civ.P. 23(b)(3).

As explained above, it would be impossible to manage this class action given the individualized inquiries required to determine if Cree is liable to any single class member or any member is entitled to damages or restitution.  *Supra* at IV(A)(1)(d).  Moreover, Cree is already offering consumers who are unhappy with their bulbs relief: Cree honors warranty claims by shipping customers more bulbs than they purchased without proof of purchase. Schwab ¶ 66; Soens ¶¶ 14-15.  A class action is not, therefore, superior.  *See, e.g., Patton v. Topps Meat Co., LLC*, No. 07-CV-00654(S)(M), 2010 WL 9432381, at *10 (W.D.N.Y. May 27, 2010) (holding that a class action was not superior when a manufacturer of frozen ground beef products was already offering consumers refunds) (collecting cases).  The Court should not deprive putative class members of their existing remedy under the warranty by certifying a class and collaterally estopping them from seeking a refund or replacement in the unlikely event their bulb fails.

Dated: April 30, 2021
        Charlotte, North Carolina

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**
By:  */s/ Rebecca K. Lindahl*

Craig A. Convissar
575 Madison Avenue
New York, NY 10022
craig.convissar@katten.com
Ph: 212-940-6369
Fax: 212-940-8776

Stuart M. Richter (admitted *pro hac vice*)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
stuart.richter@katten.com
Ph: 310-788-4400
Fax: 310-712-8434

Rebecca K. Lindahl (admitted *pro hac vice*)
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
rebecca.lindahl@katten.com
Ph.: 704-344-3141
Fax: 704-344-2277

Charles A. DeVore (admitted pro hac vice)
525 West Monroe Street
Chicago, IL 60661
charles.devore@katten.com
Ph: 312-902-5478
Fax: 312-902-1061

*Attorneys for Defendant Cree, Inc.*