**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEPHANIE WEDRA, individually on behalf of herself and on behalf of all others similarly situated,

Plaintiff,

vs.

CREE, Inc.,

Defendant.

Case No.: 7:19-cv-03162-VB

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ..... 1

II. THE MATERIAL FACTS SUPPORT CLASS TREATMENT ..... 1

A. Cree Made Uniform False and Misleading Statements About the Longevity and Cost Savings of Its LED Lightbulbs ..... 2

B. Common Evidence and Expert Testimony Confirm Cree's LED Lightbulbs are Uniformly Prone to Premature Failure ..... 3

III. PLAINTIFF HAS SATISFIED THE REQUIREMENTS OF FED. R. CIV. P. 23 ..... 4

A. Common Issues Are Central to the Validity of Class Members' Claims ..... 4

1. The Longevity Representations Present a Common Question ..... 4

2. Causation Is a Common Question ..... 5

3. The Existence of a Common Defect Is a Common Question ..... 6

B. Plaintiff Is an Adequate Representative ..... 8

C. Common Issues Predominate Over Individual Issues ..... 8

1. Dr. Groehn Presents a Feasible Damages Methodology ..... 8

2. The existence of a defect predominates over any individual issues regarding use and manifestation ..... 9

D. A Class Action Is Superior to Numerous Individual Actions ..... 10

IV. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .......... 5

*Garrido v. Money Store*, 649 F. App'x 103 (2d Cir. 2016) .......... 5

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374 (S.D.N.Y. 2016) .......... 5, 8

*Gonzalez v. Corning*, 317 F.R.D. 443 (W.D. Pa. 2016), *aff'd*, 885 F.3d 186 (3d Cir. 2018), *as amended* (Apr. 4, 2018) .......... 7, 8

*Haag v. Hyundai Motor Am.*, 330 F.R.D. 127 (W.D.N.Y. 2019) .......... 9, 10

*Hasseman v. Gerber Prods. Co.*, No. 15-cv-295MKBRER, 2019 WL 1434263 (E.D.N.Y. Mar. 31, 2019) .......... 8

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) .......... 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) .......... 10

*In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581 (S.D.N.Y. 2021) .......... 9

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) .......... 8, 10

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013) .......... 7

*Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. 2012) .......... 7

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017) .......... 5

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020) .......... 6

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)....................9

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011)....................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)....................8

Fed. R. Civ. P. 23(a)....................4

Fed. R. Civ. P. 23(b)(2)....................1

Fed. R. Civ. P. 23(b)(3)....................10

## I. INTRODUCTION

This is a consumer fraud class action, and Plaintiff's claims, like those of the absent Class members, are based on the same substantially similar, material misrepresentations that tout the longevity, cost savings, and warranty coverage of Cree's LED Lightbulbs.[1] In its Opposition to Plaintiff's Motion for Class Certification, Dkt. No. 78 ("Opposition" or "Opp."), Cree ignores the substantial similarity of the misrepresentations Plaintiff identifies on the packaging of the LED Lightbulbs and instead focuses on the existence of immaterial minor cosmetic variations. Cree's garden-variety attacks on the adequacy of Plaintiff are also without merit.[2]

Cree simultaneously moves to strike Plaintiff's experts Dr. Gary Allen and Dr. Andreas Groehn. Cree's attacks on Dr. Allen's expert opinions do not defeat certification as they are based on mischaracterization of the facts, Dr. Allen's analysis, and the legal standard applicable to expert testimony, as explained in more detail in Plaintiff's contemporaneously filed *Daubert* opposition brief.[3] Additionally, Plaintiff's expert Dr. Groehn presents a feasible model for calculating class-wide damages—which is all that is required at class certification.[4] As discussed in more detail below, Cree's arguments are without merit, and certification pursuant to Rules 23(b)(2) and 23(b)(3) is appropriate.

## II. THE MATERIAL FACTS SUPPORT CLASS TREATMENT

---

[1] LED Lightbulbs means all of the bulbs listed in Exhibit 1 to the Declaration of Jason P. Sultzer In Support of Plaintiff's Motion for Class Certification ("Sultzer Class Cert. Decl."), which includes all 60w and 100w LED Lightbulbs and excludes the Connected bulbs, packaging used in Canada, illegible and incomplete labels.

[2] Cree does not challenge the numerosity or adequacy of counsel requirements in 23(a) or the requirements of Rule 23(b)(2).

[3] *See* Memorandum of Law in Opposition to Motion to Strike Expert Report and Opinions of Gary Allen, Ph.D. ("Allen *Daubert* Opp."); Rebuttal Report of Gary R. Allen, Ph.D., Second Declaration of Jason P. Sultzer In Support of Plaintiff's Motion for Class Certification ("Second Sultzer Decl."), Ex. 1 ("Allen Rebuttal Report")[3] at § II.

[4] *See* Report of Dr. Andreas Groehn, Sultzer Class Cert. Decl. Ex. 3 ("Groehn Report"), Rebuttal Report of Dr. Andreas Groehn, Second Sultzer Decl., Ex. 2 ("Groehn Rebuttal Report"), and concurrently filed Opposition to Defendant's Motion to Strike Report And Exclude Opinions of Dr. Andreas Groehn ("Groehn *Daubert* Opp.").

### A. Cree Made Uniform False and Misleading Statements About the Longevity and Cost Savings of Its LED Lightbulbs

This case is about a readily identifiable category of LED Lightbulbs that were uniformly marketed and labeled as promising (1) cost savings, such as "$226 Lifetime Energy Savings"; (2) longevity and performance comparisons to other LED bulbs, such as "Our LED bulbs work better and last longer"; and (3) "100% Satisfaction Guarantee,"[5] which merely corroborates its other false statements, making this case ideal for class treatment.[6] Variations in the shape, color, size, or wattage of Cree's LED Lightbulbs do not adversely impact the analysis as to the class-wide treatment of the substantially similar material misrepresentations. The fact that Cree manufactures different lines of LED Lightbulbs with varying bulb designs is of no consequence to this action. Critically, as Dr. Allen details in his report and Rebuttal Report, the LED Lightbulbs all have a common thermal design within each of the basic architectures, and that is where the failure of the LED Lightbulbs occurs. Expert Report of Gary R. Allen Ph.D., Sultzer Class Cert. Decl., Ex. 2 ("Allen Report"), at 24-28; Allen Rebuttal Report § I ¶3.a, § II ¶10. And based on his testing of temperatures at critical locations of the Lightbulbs (the LED junction, electrolytic capacitor, and heat sink), Dr. Allen concluded that the Lightbulbs share a common design defect of poor thermal management, which results in them operating too hot, causing premature failure.[7] *See* Allen Report at 42-44.

Plaintiff's damages expert Dr. Groehn, confirms through proffering a methodology that utilizes the well-established and accepted conjoint analysis that he can establish a class-wide measure

---

[5] Plaintiff is aware that the Court held that the 100% Satisfaction Guarantee statement is non-actionable puffery. Opinion and Order, Dkt. 27 at 15. Plaintiff is not seeking to certify or measure damages for the 100% Satisfaction Guarantee statement, but recognizes it appears consistently on the LED Lightbulbs.

[6] Plaintiff seeks certification of the following Class: All persons in New York who purchased A-type 60 watt and 100 watt Cree LED Lightbulbs for end use, and not resale, during the period from April 2013 to present.

[7] Home Depot customer reviews produced by Cree suggest a high failure rate and corroborate Dr. Allen's conclusion that the Lightbulbs fail prematurely. *See* Allen Rebuttal Report § VII ¶¶ 4-5.

of damages of the premium price for Lightbulbs marketed to possess enhanced longevity. *See* Groehn Report; Groehn Rebuttal Report.

**B. Common Evidence and Expert Testimony Confirm Cree's LED Lightbulbs are Uniformly Prone to Premature Failure**

The documents Cree produced in this litigation provide common evidence of widespread failure and corroborate Plaintiffs' experts' findings. Allen Rebuttal Report § VII ¶¶ 4-5. Cree employees knew about habitual failures. *See* Sultzer Class Cert. Decl., Ex. 51, (CREE_00063522-23) (2014 internal e-mail); Ex. 52, (CREE_00064005-06) (e-mail discussing 355 negative customer reviews states "every week we get a new list of review and begin the triage and outreach. We still have numerous failure reviews"); Sultzer Class Cert Decl. Ex. 53, (CREE_ 00033869-70) ("There is enough "chatter" to start considering that there may indeed be a problem." and "10 out of 70 complaint of early failure. VERY EARLY failure. This aligns with the anecdotal feedback from our customer service.").

Dr. Allen's findings, and the findings of an independent third-party test conducted by the California Public Utilities Commission ("CPUC") examined by Dr. Allen, are consistent with the defects recognized by Cree in its internal discussions. Specifically, the testing identifies failures related to LED Lightbulbs burning out, failing to light and elapsed operating times associated with initial light outputs. Allen Report at *e.g.*, 3-5. Accordingly, Cree's internal evidence and the CPUC Test are common evidence of the LED Lightbulbs' common design defect— "they operate too hot and because of this will experience premature failure." Allen Report at 3. Thus, Dr. Allen's testimony will establish both the design defect and the failure mode of the Lightbulbs.

As Dr. Allen explains, that Cree tests and submits separate performance data to Energy Star for each generation of its Lightbulbs does not affect his opinion that the Lightbulbs suffer from a common design defect. Allen Report at 63-64; Allen Rebuttal Report § VIII ¶ 3.a. Such a contention presents a misunderstanding of Energy Star product specifications and conflates Energy Star testing

with the testing conducted by Dr. Allen here. Allen Report at 63-64. Cree's expert admitted that Energy Star certification does not include on-off testing of lamps. Second Sultzer Decl. Ex. 4, Dep. Transcript of Morgan Pattison at 134:6-16. In short, Energy Star categorizes the Lightbulbs based simply on shape while Dr. Allen is characterizing the Lightbulbs based on their thermal design. *Id.*

In addition, Cree's suggestion that its purported 2% warranty return rate is meaningful evidence of the actual failure rate of the Lightbulbs is belied by the fact that Cree's warranty has always been written to minimize warranty claims by including requirements that make it burdensome for consumers to file a claim, such as a limitation of hours of use, UPC proof of purchase requirement, and register receipt. *See* Decl. of Rebecca Lindahl, Ex. 2, Dkt. 81-2, Decl. of Scott Schwab, Ex. 5. According to Scott Schwab, Cree never held consumers to the warranty's requirement to track the usage of their LED Lightbulbs, but he also did not recall Cree ever notifying consumers that they would not be required to comply with the terms of the warranty. *See* Sultzer Class Cert. Decl. Ex. 55, Excerpts of Dep. of Scott Schwab at 23:22-24:14. Of course, consumers often may not keep receipts and proof of purchase for relatively small consumer purchases, let alone track the number of hours they use their LED Lightbulbs. *See id.* at 27:11-20 (noting he personally keeps receipts of only some consumer purchases and there is no "rhyme or reason" to which receipts he keeps). And as Cree's witnesses Schwab and Primato testified, they have no information about consumers who are unhappy with the performance of their LED Lightbulbs but do not make a warranty claim, return, or complaint. *See id.* at 14:14-15:17; Second Sultzer Decl., Ex. 5, Excerpt of Dep. of Phil Primato at 20:19-21:17.

## III. PLAINTIFF HAS SATISFIED THE REQUIREMENTS OF FED. R. CIV. P. 23

### A. Common Issues Are Central to the Validity of Class Members' Claims

Cree maintains Plaintiff cannot satisfy the commonality requirement of Rule 23(a). Opp. 13-17. Cree's arguments fail on several levels.

#### 1. The Longevity Representations Present a Common Question

No individual inquiry is necessary as the underlying representations are all substantially similar, particularly in their intent to communicate the same core message of the cost savings and longevity of the Lightbulbs to Plaintiff and Class members. Courts in this circuit agree. They have found "despite differing individual circumstances of class members, commonality exists where injuries derive from a unitary course of conduct by a single system." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 530 (E.D.N.Y. 2017) (internal quotation marks omitted). "[C]lass members' claims need not be identical, but [P]laintiff[] must identify some unifying thread among the members' claims that warrants class treatment." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *8 (E.D.N.Y. July 18, 2013). When substantially similar statements are the focus of the allegations, commonality is found, and certification is proper. Pl. Mot. at 3[8]; *see Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 114 (S.D.N.Y. 2011). Accordingly, commonality is satisfied.

2. Causation Is a Common Question

Cree argues, only for Plaintiff's fraudulent misrepresentation claim, that she cannot show materiality or reliance.[9] Opp. 19. Cree relies on *Garrido v. Money Store*, 649 F. App'x 103 (2d Cir. 2016), for this assertion. Cree's reliance on *Garrido* is misplaced. There, the court found there was not any evidence that the uniform representations were routinely sent to class members. *Id.* at 105. In that narrow circumstance, class-wide proof could not be used to establish the central disputed issues. *Id.* Contrarily, Cree's false and misleading statements here were uniformly communicated across all LED Lightbulb packaging, which were seen by all Class members. Pl. Mot. at 3.

---

[8] Plaintiffs' Memorandum of Law in Support of Plaintiff's Motion for Class Certification is referred to herein as "Pl. Mot."

[9] Cree does not, and cannot, suggest that Plaintiff fails to establish reliance for her New York GBL claims under Sections 349 or 350. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 392 (S.D.N.Y. 2016) ("For claims brought under New York's GBL, it does not matter whether a plaintiff justifiably relied on the deception.").

Cree also relies upon the consumer survey conducted by Dr. Lynne Weber. Opp. 19. However, as detailed in the Rebuttal Expert Report of Dr. Michael Dennis ("Dennis Report")[10], Dr. Weber's survey results are unreliable and biased. *See generally* Dennis Report. Dr. Dennis explains in detail why Dr. Weber's consumer survey's many fatal flaws prevent her from substantiating her conclusions. *Id.* One of her fatal errors included failure to control for preconceptions and preexisting beliefs and attitudes of the respondents. Dennis Report at ¶ 58. This resulted in "systematic distortion in the answers that Dr. Weber's respondents provided her." *Id.* Accordingly, Dr. Weber's Report does not assist in defeating commonality or predominance.

Similarly, Defendant's argument that any "falsity" representation requires a bulb-by-bulb inquiry and thus Plaintiff and Class members cannot establish commonality, is meritless. Opp. at 13. To establish a fraudulent misrepresentation claim, Plaintiff and Class members must establish that "(i) Defendant made a material false representation; (ii) Defendant intended to defraud Plaintiff thereby; (iii) Plaintiff reasonably relied on the representation; and (iv) Plaintiff suffered damage as a result of such reliance." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242-43 (S.D.N.Y. 2020).

Cree made materially false representations—that are substantially similar across every LED Lightbulb—by guaranteeing the cost saving and longevity of its LED Lightbulbs with the intent to induce Plaintiff and the Class into purchasing their LED Lightbulbs. Before making her purchase, Plaintiff reasonably relied on these representations found on the packaging, (Compl. ¶ 24), resulting in her purchase. Thus, but for Cree's false representations regarding the longevity and cost savings of its LED Lightbulbs, she and Class members would not have purchased the LED Lightbulbs. These facts are common to all Class members, and separate individual inquiries are not required.

3. <u>The Existence of a Common Defect Is a Common Question</u>

---

[10] The Dennis Report is attached to the Second Sultzer Declaration as Exhibit 3.

The existence of a common defect presents a common issue that will materially advance the litigation and is all that is required for class certification. Dr. Allen's testimony establishes that there is a design defect, it can be analyzed on a class-wide basis based on the similar thermal design of the Lightbulbs, and the defect causes the Lightbulbs to fail prematurely well in advance of the promised longevity representations on the packaging of every Lightbulb. *See* Allen Report at 3, 41-44, 63-68; Allen Rebuttal Report §§ I ¶ 3.b-c, II ¶ 10, VIII ¶¶ 1, 3. Dr. Allen's findings are supported by an independent and reliable third party.

As the Sixth Circuit explained in holding commonality was satisfied by questions of the existence of a design defect, it did not matter if all class members experienced a mold problem because they all "were injured at the point of sale upon paying a premium price for the [washing machines] as designed." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013). Indeed, the argument that manifestation of a defect defeats commonality is "based on a misapprehension of what commonality demands." *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 523 (C.D. Cal. 2012). That exact misapprehension animates Cree's argument.

Cree relies heavily on the out-of-circuit case, *Gonzalez v. Owens Corning*, 885 F.3d 186 (3d Cir. 2018). But *Gonzalez* held there was no Article III case or controversy because the plaintiffs sought a class-wide declaration that Owens Corning could not raise a bankruptcy discharge defense, when it had already represented it would not. *See id.* at 193-95. That was the sole reason the court gave in finding a lack of commonality. *See id.* at 192-95. Cree's argument fundamentally confuses the commonality and predominance inquiries. *See id.* at 197-99.[11]

[11] *Gonzalez v. Corning* ("Owens") is factually distinguishable as was extremely broad. Owens sought certification of approximately 23 different Oakridge-brand fiberglass shingles ("Oakridge") manufactured at 13 different facilities over 20 years. *Gonzalez v. Corning*, 317 F.R.D. 443, 464, 451 (W.D. Pa. 2016), *aff'd*, 885 F.3d 186 (3d Cir. 2018), *as amended* (Apr. 4, 2018). Approximately 500 design specifications were used to manufacture the shingle during this time period. *Id.* at 465. There were approximately six million structures roofed with Oakridge shingles from 2000-2012 alone. *Id.*

### B. Plaintiff Is an Adequate Representative

This Court already denied Cree's Rule 12(b)(1) Motion to Dismiss and should reject its arguments yet again. *See* Dkt. 86. During her deposition, Plaintiff testified she purchased the Cree LED lightbulbs ***with her own money***. *See* Dkt. 82. Plaintiff has no interest that are antagonistic to the interests of the proposed Class. Accordingly, Plaintiff is adequate.

### C. Common Issues Predominate Over Individual Issues

1. Dr. Groehn Presents a Feasible Damages Methodology

Cree's suggestion that Dr. Groehn's methodology is inadequate because it is "hypothetical" flies in the face of New York case law. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413 (S.D.N.Y. 2015) ("At deposition, he identified statistical methodologies by which he will be able to isolate the price premium associated with the 50% thicker claim, and described each methodology in detail. This is enough to satisfy *Comcast*."); *Hasseman v. Gerber Prods. Co.*, No. 15-cv-295MKBRER, 2019 WL 1434263, at *33 (E.D.N.Y. Mar. 31, 2019) ("Plaintiffs' *proffered* models are sufficient to meet the *Comcast* test.") (construing *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 394 (S.D.N.Y. 2016) (emphasis added). Courts have widely accepted damages methodologies pursuant to a price premium theory using a conjoint analysis. *See* Groehn *Daubert* Opp. If the Court rules only certain representations are subject to class treatment, Mr. Groehn can calculate damages attributable only to those representations. *See id.* at 7-11. His testimony is consistent with Plaintiff's theory of liability—that Cree's marketing representations concerning the longevity and cost savings of the Lightbulbs are false and misleading. Dr. Groehn will demonstrate that those attributes have value to consumers and, but for Cree's misrepresentations, the price Class members paid would have been lower. *See id.*

---

at 465. There were six named plaintiffs who purchased their shingles in different years, and they were sold with a warranty that varied from 25, 30, 40, and 50-years. *Id.* at 465-67, 474-75.

Citing to *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002), Cree argues that common issues do not predominate in this case because Plaintiff and Class members need to prove that they individually received Cree's misrepresentations, which she cannot do. Opp. 23-24. *Moore* is distinguishable as there, the plaintiffs were not provided the misleading information in writing. *Id.* at 1253. Here, every LED Lightbulb at issue contains the longevity and cost savings misrepresentations on the packaging. *See* Section III.A.1, *supra*. Cosmetic differences or minor variations in the packaging make no difference. *See, e.g.*, *In re Kind LLC "Healthy & All Natural" Litigation*, 337 F.R.D. 581, 603 (S.D.N.Y. 2021) (rejecting challenge to class certification when all products contained one of the allegedly deceptive labels). Cree's longevity, performance and cost saving claims were on every package in one form or another and should be of no consequence if some of the bulb packages did not have identical language for all representations. As such, just like in *In re Kind*, all of the bulb's packaging convey the same messaging of longevity, performance and costs savings.

The court in *In re Kind* pondered the question of when a "company produces similar products with different labels …. [s]hould employing slightly different labels allow a company to escape liability?" *Id.* at 602. The court answered its own question with a resounding no, saying that in the world Kind proposed, and Cree proposes here, consumer "consumer product companies would have a roadmap to avoid class actions" and "could avoid any liability for deceptive labeling." *Id.* Plaintiff urges the Court to follow *In re Kind* and find predominance is satisfied.

2. The Existence of a Defect Predominates Over Any Individual Issues Regarding Rse and Manifestation

Case law undeniably supports a finding of predominance here. *Haag v. Hyundai Motor America*, 330 F.R.D. 127 (W.D.N.Y. 2019) is instructive. There, the court found that the issues related to a defect predominated because the plaintiff showed that "the existence (or lack thereof) of a defect in the Class Vehicle, the defendant's course of conduct with respect to disclosing the alleged defect (or not) to consumers, and the materiality of its alleged omissions, are issues for which common questions

can, on the present record, be expected to predominate over individual ones." *Id.* at 132. At this stage in the litigation—class certification—Plaintiff does not need establish the merits of her claims. *Id.* However, "the issues of law or fact that will need to be resolved in order for a factfinder to dispose of that claim are ones that will predominantly be common to the class, rather than individual to each member." *Id.* Here, Cree's substantially false representations were communicated to Plaintiff and Class members, and the same evidence will be used to demonstrate Plaintiff and Class members paid a price premium for LED Lightbulbs that possessed a defect. *See* Groehn Report; Allen Report.

**D. A Class Action Is Superior to Numerous Individual Actions**

Cree argues that a class action is not superior to its warranty. This argument misses the mark. The issue is not whether a class action is superior to *Cree's warranty*, but whether a class action is superior to individual actions. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) ("[T]he advisory committee's notes demonstrate that Rule 23(b)(3) was drafted with the legal understanding of 'adjudication' in mind: the subsection poses the question whether a single suit would handle the dispute better than multiple suits."). An out-of-court program allowing class members to seek refunds or make warranty claims is not a superior method of "adjudication" compared to a class action. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (holding that "[e]ven if the [defendant's] refund program is a proper alternative to consider under Rule 23(b)(3), it is not superior to a class action."). A refund program is simply not relevant to a superiority inquiry, as it is *not* a form of adjudication. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013). Accordingly, a class action is superior to the warranty program offered by Cree.

## IV. CONCLUSION

Based on the foregoing and the entire record, Plaintiff respectfully requests that the Court certify the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

Dated: July 28, 2021

By: */s/ Jason P. Sultzer*

Jason P. Sultzer, Esq.
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Phone: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

Melissa S. Weiner
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Tel.: (612) 389-0600
Fax.: (612) 389-0610
mweiner@pswlaw.com

Michael A. McShane
Ling Y. Kuang
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Phone: (415) 568-2555
Fax: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com

Charles J. LaDuca
Alexandra C. Warren
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel.: (202) 789-3960
Fax.: (202) 389-1813
charles@cuneolaw.com
awarren@cuneolaw.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel.: (215) 592-1500
Fax.: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiff*