**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE WEDRA, individually and on behalf of all others similarly situated, | Case No.: 7:19-cv-03162-VB |
| Plaintiff, | |
| v. | |
| CREE, INC., | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE REPORT AND EXCLUDE OPINIONS OF DR. ANDREAS GROEHN**

### **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

I.   INTRODUCTION ....................................................................................................1

II.  STANDARD ..........................................................................................................1

III. ARGUMENT ..........................................................................................................3

    A.  Conjoint Analysis Is Widely Used and Accepted ....................................................3

    B.  Dr. Groehn Proposes a Sound Methodology for Determination of Class-Wide Damages that Is Consistent with Plaintiff's Theory of Damages....................................5

    C.  Dr. Groehn's Methodology Will Test Attributes and Levels Consistent with Plaintiff's Theory of Damages........................................................................................7

    D.  Defendant's Criticisms of Dr. Groehn's Methodology Falsely Conflate the Theory of Damages with the Bulb Failure Rate ...............................................................11

    E.  Dr. Groehn's Methodology Accounts for Supply-Side Factors............................14

    F.  Defendant's Criticisms of Dr. Groehn's Methodology Go to Weight, Not Admissibility ...................................................................................................18

IV. CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

Cases

*Ackerman v. Coca-Cola Co.,*
   No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ..................................... 13
*Allen v. ConAgra Foods, Inc.,*
   331 F.R.D. 641 (N.D. Cal. 2019) ........................................................................................... 15
*Amorgianos v. Nat'l R.R. Passenger Corp.,*
   303 F.3d 256 (2d Cir. 2002) ............................................................................................... 2, 20
*Baker v. Microsoft Corp.,*
   797 F.3d 607 (9th Cir. 2015) ................................................................................................. 13
*Banh v. Am. Honda Motor Co., Inc.,*
   No. 2:19-cv-05984-RGK-AS, 2020 WL 4390371 (C.D. Cal. July 28, 2020) ..................... 15
*Beacon Mut. Ins. Co. v. Onebeacon Ins. Grp.,*
   253 F. Supp. 2d 221 (D.R.I. 2003) ........................................................................................ 19
*Belfiore v. Procter & Gamble Co.,*
   311 F.R.D. 29 (E.D.N.Y. 2015) ............................................................................................... 5
*Brazil v. Dole Packaged Foods, LLC,*
   No. 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) .................................. 5
*Broomfield v. Craft Brew All., Inc.,*
   No. 5:17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ....................... 4, 15
*Chen-Oster v. Goldman, Sachs & Co.,*
   114 F. Supp. 3d 110 (S.D.N.Y. 2015) ................................................................................. 2, 20
*Classic Foods Int'l Corp. v. Kettle Foods, Inc.,*
   No. SACV04-725CJC(EX), 2006 WL 5187497 (C.D. Cal. Mar. 2, 2006) ......................... 19
*Clay v. CytoSport, Inc.,*
   No. 3:15-CV-00165-L-AGS, 2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) ............................ 4
*Clem v. Gen. Motors, LLC,*
   No. 20-1103, 2020 WL 5757639 (2d Cir. July 15, 2020) ..................................................... 18
*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
   251 F.3d 1252 (9th Cir. 2001) ............................................................................................... 19
*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ................................................................................................................... 2
*Daubert v. Merrell Dow Pharmaceuticals Inc.,*
   509 U.S. 579 (1993) .............................................................................................................. 1, 2
*Davidson v. Apple, Inc.,*
   No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018) ........................... 14, 15
*Dzielak v. Whirlpool Corp.,*
   No. CV2120089KMJBC, 2017 WL 1034197 (D.N.J. Mar. 17, 2017) ..................................... 4
*Emamian v. Rockefeller Univ.,*
   No. 07 CIV. 3919 (DAB), 2017 WL 6804074 (S.D.N.Y. Dec. 20, 2017) ............................... 2
*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
   326 F.R.D. 592 (N.D. Cal. 2018) ........................................................................................... 15
*Flynn v. FCA US LLC,*
   327 F.R.D. 206 (S.D. Ill. 2018) ............................................................................................... 4
*Ge Dandong v. Pinnacle Performance Ltd.,*
   No. 10 CIV. 8086 JMF, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ................................... 2

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................................................ 13
*Guido v. L'Oréal, USA, Inc.*,
  No. 2:11-CV-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014) .................... 3, 4, 6
*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........................................................................ Passim
*Hamilton v. TBC Corp.*,
  328 F.R.D. 359 (C.D. Cal. 2018) ................................................................................................ 4
*Hasemann v. Gerber Prod. Co.*,
  331 F.R.D. 239 (E.D.N.Y. 2019) .......................................................................................... 5, 10
*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 17CV2335-GPC(MDD), 2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) .................... 4, 15
*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 17cv2335-GPC(MDD), 2019 WL 3006465 (S.D. Cal. July 10, 2019) .................... 15, 19
*Hudock v. LG Elecs. U.S.A., Inc.*,
  No. CV 16-1220 (JRT/FLN), 2018 WL 626527 (D. Minn. Jan. 30, 2018) ............................ 4
*Hudock v. LG Elecs. U.S.A., Inc.*,
  No. CV 16-1220 (JRT/KMM), 2020 WL 1515233 (D. Minn. Mar. 30, 2020) .............. 15, 18
*Hughes v. The Ester C Company*,
  317 F.R.D. 333 (E.D.N.Y. 2016) ................................................................................................ 11
*In re Arris Cable Modem Consumer Litigation*,
  327 F.R.D. 334 (N.D. Cal. 2018) ........................................................................................ 4, 13
*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................................................... 3, 4
*In re Dial Complete Mktg. & Sales Pracs. Litig.*,
  320 F.R.D. 326 (D.N.H. 2017) ...................................................................................... Passim
*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
  No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ............................................. 3
*In re Gen. Motors L.L.C. Ignition Switch Litig.*,
  427 F. Supp. 3d 374 (S.D.N.Y. Dec. 12, 2019) ................................................................... 18
*In re General Motors LLC Ignition Switch Litigation*,
  407 F. Supp. 3d 212 (S.D.N.Y. 2019) .................................................................................. 18
*In re Kind LLC "Healthy & All Natural" Litig.*,
  337 F.R.D. 581 (S.D.N.Y. 2021) ................................................................................... 2, 6, 10
*In re Live Concert Antitrust Litig.*,
  247 F.R.D. 98 (C.D. Cal. 2007) ............................................................................................. 20
*In re MyFord Touch Consumer Litig.*,
  291 F. Supp. 3d 936 (N.D. Cal. 2018) .......................................................................... 4, 15, 17
*In re MyFord Touch Consumer Litig.*,
  No. 13-cv-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ......................... 4, 14
*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................................................... 2, 4, 6
*In re Scotts EZ Seed Litig.*,
  No. 12 CV 4727 (VB), 2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) .............................. 3, 19
*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  45 F. Supp. 3d 724 (N.D. Ohio 2014) ......................................................................... 4, 6, 10
*In re: Lenovo Adware Litig.*,
  No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .......................... 15

*Jensen v. Cablevision Sys. Corp.*,
   372 F. Supp. 3d 95 (E.D.N.Y. 2019) ................................................................................3

*Johannessohn v. Polaris Indus., Inc.*,
   No. 16-CV-3348 (NEB/LIB), 2020 WL 1536416 (D. Minn. Mar. 31, 2020) ...................... 15

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
   No. 19-CV-1203, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) .........................................3

*Khoday v. Symantec Corp.*,
   93 F. Supp. 3d 1067 (D. Minn. 2015).................................................................................4

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ............................................................................... 15, 18

*Kumho Tire Co. v Carmichael*,
   526 U.S. 137 (1999).............................................................................................................1

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) .......................................................................................4

*Martinelli v. Johnson & Johnson*,
   No. 2:15-cv-01733-MCE-DB, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ................... 15

*Miller v. Fuhu Inc.*,
   2015 WL 7776794 (C.D. Cal. Dec. 1, 2015)........................................................................3

*Milward v. Acuity Specialty Prod. Grp., Inc.*,
   639 F.3d 11 (1st Cir. 2011) .............................................................................................. 19

*Morales v. Kraft Foods Grp., Inc.*,
   No. LACV1404387JAKPJWX, 2017 WL 2598556 (C.D. Cal. June 9, 2017) ....................4

*Nelson v. Mead Johnson Nutrition Co.*,
   270 F.R.D. 689 (S.D. Fla. 2010).........................................................................................5

*Payton v. Abbott Labs*,
   780 F.2d 147 (1st Cir. 1985) ............................................................................................ 20

*Price v. L'Oreal USA, Inc.*,
   No. 17 CIV. 614 (LGS), 2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018) ........................ 4, 10

*Rollins, Inc. v. Heller*,
   454 So. 2d 580 (Fla. Dist. Ct. App. 1984)...........................................................................5

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   No. 14-CV-4394 (AJN), 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018)................................3

*Saavedra v. Eli Lilly & Co.*,
   No. 2:12-CV-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ........................ 4, 5

*Sanchez-Knutson v. Ford Motor Co.*,
   310 F.R.D. 529 (S.D. Fla. 2015).................................................................................... 3, 4

*Schechner v. Whirlpool Corp.*,
   No. 2:16-CV-12409, 2018 WL 6843305 (E.D. Mich. Oct. 30, 2018)............................. 9, 10

*Schechner v. Whirlpool Corp.*,
   No. 2:16-CV-12409, 2019 WL 978934 (E.D. Mich. Feb. 28, 2019)................................. 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
   328 F.R.D. 520 (N.D. Cal. 2018) ..................................................................................... 15

*Singleton v. Fifth Generation, Inc.*,
   No. 515CV474BKSTWD, 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) .........................3

*Smartflash LLC v. Apple, Inc.*,
   No. 6:13-CV-447-JRG-KNM, 2014 WL 7336213 (E.D. Tex. Dec. 23, 2014) .................. 19

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ........................................................................ 8, 11

*TV Interactive Data Corp. v. Sony Corp.*,
  929 F. Supp. 2d 1006 (N.D. Cal. 2013)...................................................................................9
*Vicuna v. O.P. Schuman & Sons, Inc.*,
  298 F. Supp. 3d 419 (E.D.N.Y. 2017)...................................................................................2
*Weiner v. Snapple Beverage Corp.*,
  No. 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)........................................ 3, 6
*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010)........................................................................................... 13

Rules

Federal Rule of Evidence 702 ............................................................................................. 1, 2

Plaintiff Stephanie Wedra ("Plaintiff") hereby responds to Defendant Cree, Inc.'s ("Defendant") Motion to Strike Report and Exclude Opinions of Dr. Andreas Groehn ("Motion" or "Mot."). For the following reasons, Defendant's Motion should be denied.

## I.    INTRODUCTION

Defendant seeks to exclude the report and opinions of Plaintiff's damages expert, Dr. Andreas Groehn, whose expert report proposes a methodology for calculating class-wide damages using conjoint analysis. *See generally* Expert Report of Dr. Andreas Groehn, Declaration of Jason P. Sultzer In Support of Plaintiff's Motion for Class Certification ("Sultzer Class Cert. Decl."), Ex 3 ("Groehn Report"). Dr. Groehn also issued a rebuttal of Defendant's experts, Dr. Jesse David, Mr. Sushrut Jain, Dr. Joel Steckel.[1] *See generally* Rebuttal Report of Dr. Andreas Groehn, Second Declaration of Jason P. Sultzer in Support of Plaintiff's Motion for Class Certification ("Second Sultzer Decl."), Ex. 2 ("Groehn Rebuttal Report").  Defendant's motion generally fails to understand Dr. Groehn's methodology and fails to acknowledge that it is widely accepted by numerous courts as a sound and appropriate means to calculate class-wide damages. Ultimately, Defendant's criticisms go to the weight of Dr. Groehn's report and testimony, not their admissibility. *See Lerman v. Apple Inc.*, No. 15-cv-07381, Dkt. 132, at *28-31 (E.D.N.Y. Oct. 6, 2020). Accordingly, Dr. Groehn's reports and opinions must not be excluded.

## II.    STANDARD

Federal Rule of Evidence 702 requires that courts perform a gate-keeping function to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). The Court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be

---

[1] The Groehn Rebuttal Report also addresses certain arguments made in Dr. Lynne Weber's report.

applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

Courts are afforded wide latitude when assessing expert testimony. *Id.* at 594. But "courts must interpret Rule 702 liberally in favor of admission of proffered expert testimony." *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 443–44 (E.D.N.Y. 2017) (citing *Daubert*, 509 U.S. at 588)). "The flexible *Daubert* inquiry gives the district court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). However, the Court need not determine what is the *best* methodology between competing experts. "[O]nly serious flaws in reasoning or methodology will warrant exclusion." *Emamian v. Rockefeller Univ.*, No. 07 CIV. 3919 (DAB), 2017 WL 6804074, at *1 (S.D.N.Y. Dec. 20, 2017), *aff'd*, 823 F. App'x 40 (2d Cir. 2020) (citing *Amorgianos*, 303 F.3d at 267)); *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 605 (S.D.N.Y. 2021) ("[G]aps and inconsistencies often go to the weight afforded to an expert's opinion and not admissibility.").

Nonetheless, at the class certification stage, a full-blown *Daubert* analysis is unnecessary. "[T]he [*Daubert*] inquiry is limited to whether or not the expert reports are admissible to establish the requirements of Rule 23." *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015) (quoting *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 JMF, 2013 WL 5658790, at *13 (S.D.N.Y. Oct. 17, 2013)); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 37-38 (2013). The expert need only present a reasonably complete methodology to calculate class-wide damages so the court can assess its reliability—the expert does not have to run the model. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) ("[N]othing in *Comcast* requires an expert to *perform* his analyses at the class certification stage."); *Daubert*, 509 U.S. at 595 (the focus of the inquiry "must be solely on principles and methodology, not on the conclusions that they generate"). Criticisms of a conjoint study's design, reliability, methodology, survey design foundation, and critique of its conclusions are

factual issues for the jury related to weight and do not affect the admissibility of the opinion. *See Lerman*, No. 15-cv-07381, Dkt. 132, at *28 ("Each of these arguments 'ultimately go to the weight, not the admissibility, of [Dr. Groehn's] testimony and are fodder for cross-examination, not exclusion.'") (quoting *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 (VB), 2017 WL 3396433, at *8 (S.D.N.Y. Aug. 8, 2017)). Other courts around the country have followed this approach.[2]

## III.    ARGUMENT

### A.  Conjoint Analysis Is Widely Used and Accepted

Conjoint analysis is *widely accepted* as a reliable economic model for estimating damages on an aggregate basis in consumer deception cases involving false and misleading representations or claims of a product's attributes on the product's label. *Hadley*, 324 F. Supp. 3d at 1110 ("[C]onjoint analysis is widely-accepted as a reliable economic tool for isolating price premia."). And thus "numerous courts . . . have accepted [CBC] as [a] reliable methodology[y] for calculating price premiums on a classwide

---

[2] *See, e.g., Guido v. L'Oréal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *8-9 (C.D. Cal. July 24, 2014) ("*Daubert* does not require plaintiffs to actually run their damages models to make [their expert's] testimony admissible for purposes of class certification."); *Kaupelis v. Harbor Freight Tools USA, Inc.*, No. 19-CV-1203, 2020 WL 5901116, at *5-6 (C.D. Cal. Sept. 23, 2020) (same); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 538-39 (S.D. Fla. 2015) ("[T]he Court disagrees with Defendant that [Plaintiff's expert] must have already performed his proposed conjoint analysis for the Court to consider the proffered methodology."); *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *7 (S.D.N.Y. Apr. 11, 2018) (same); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946-47 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and 674 F. App'x 654 (9th Cir. 2017) (lack of completed hedonic regression did not bar class certification); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110-11 (N.D. Cal. 2018) (examining defendant's criticisms of proposed conjoint analysis and hedonic regression, finding that criticisms "go to the weight, and not to the admissibility" of the proposed analysis, and granting class certification); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 126 (E.D.N.Y. 2019) ("Although a plaintiff does not need to implement or test his methodology at the class certification stage, he must still provide sufficient detail about the proposed methodology to permit a court to determine whether the methodology is suitable to the task at hand.") (quoting *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742, 2010 WL 3119452, at *9 (S.D.N.Y. Aug. 5, 2010)) (internal quotations omitted); *Singleton v. Fifth Generation, Inc.*, No. 515CV474BKSTWD, 2017 WL 5001444, at *20 (N.D.N.Y. Sept. 27, 2017) (same); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *28 (N.D. Ill. Mar. 31, 2017) (rejecting defendant's argument that Daubert requires the plaintiff's expert to perform her conjoint survey "to ensure that the survey she designed will be meaningful").

basis in consumer class actions." *Miller v. Fuhu Inc.*, No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794, at \*21 (C.D. Cal. Dec. 1, 2015). In the last five years, a majority of federal courts across the country have approved the use of conjoint analysis to calculate damages in consumer class cases.[3] As one court explained:

> [I]n cases where price premia are the relevant measure of damages, courts have repeatedly rejected conjoint analyses that only measure demand-side willingness-to-pay. However, courts have also found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

*Hadley*, 324 F. Supp. 3d at 1105; *see also id.* at 1105-06 (collecting cases).

The traditional measure of damages in consumer deception cases (including warranty claims)—and the measure of damages that Plaintiff seeks here—is the difference between the price paid and the value received by consumers who bought under the deception. *See Broomfield*, 2018 WL 4952519, at \*16-17. "In an ordinary market, the price is a proxy for value." *Saavedra v. Eli Lilly & Co.*,

---

[3] *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 6300479, at \*15-16 (S.D. Cal. Nov. 29, 2018); *Broomfield v. Craft Brew All., Inc.*, No. 5:17-CV-01027-BLF, 2018 WL 4952519, at \*13-20 (N.D. Cal. Sept. 25, 2018); *Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-AGS, 2018 WL 4283032, at \*13 (S.D. Cal. Sept. 7, 2018); *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 373–74 (C.D. Cal. 2018); *Hadley*, 324 F. Supp. 3d at 1110; *Price v. L'Oreal USA, Inc.*, No. 17 CIV. 614 (LGS), 2018 WL 3869896, at \*3 (S.D.N.Y. Aug. 15, 2018); *In re Arris Cable Modem Consumer Litigation*, 327 F.R.D. 334, 374 (N.D. Cal. 2018); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 978 (N.D. Cal. 2018); *Hudock v. LG Elecs. U.S.A., Inc.*, No. CV 16-1220 (JRT/FLN), 2018 WL 626527, at \*4 (D. Minn. Jan. 30, 2018); *Morales v. Kraft Foods Grp., Inc.*, No. LACV1404387JAKPJWX, 2017 WL 2598556, at \*26 (C.D. Cal. June 9, 2017); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017); *In re Dial Complete Mktg. & Sales Pracs. Litig.*, 320 F.R.D. 326, 337 (D.N.H. 2017) ("*Dial II*"); *Dzielak v. Whirlpool Corp.*, No. CV212089KMJBC, 2017 WL 1034197, at \*34 (D.N.J. Mar. 17, 2017); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558, at \*4-5 (N.D. Cal. Sept. 14, 2016); *Sanchez-Knutson*, 310 F.R.D. at 539; *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1083 (D. Minn. 2015); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1025; *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 414-15; *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 754 (N.D. Ohio 2014); *Guido*, 2014 WL 6603730, at \*14.

No. 2:12-CV-9366-SVW, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014). "Thus, the price paid for a good that was misrepresented to have a given characteristic can serve as a proxy for the value of a product with the misstated characteristic." *Id.* As a result, a "refund ratio determined via conjoint analysis" can "yield a valid approximation of the value lost due to the misrepresentation," where it is "appl[ied] . . . to the market price," which "tethers it to a functioning market and thus to the product's fair market value." *Id.* Courts often refer to this difference in value as a "price premium." *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1113; *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014) ("[T]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution."). "To calculate this overpayment (or 'price premium'), economists traditionally have employed conjoint analysis, as proposed here, to determine the 'part-worths' consumers attach to the specific product attributes" *Dial II*, 320 F.R.D. at 337.[4]

### B. Dr. Groehn Proposes a Sound Methodology for Determination of Class-Wide Damages that Is Consistent with Plaintiff's Theory of Damages

Dr. Groehn is a statistician and economist "focused on the application of economic, statistical, and financial models to a variety of areas." Groehn Report ¶ 4. Dr. Groehn has been retained or assisted other experts, including his colleague Mr. Stefan Boedeker, on multiple false and misleading labeling cases alleging consumers were deceived and paid more for the product than they otherwise would have had they known of the falsity of the product attribute stated on the label, cases similar to

---

[4] *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 n.2 (S.D. Fla. 2010) ("Ostensibly, a deceptive practice allows a manufacturer or vendor to charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice. Thus, even if an individual consumer does not rely on a deceptive practice when deciding to purchase that product, the consumer will have paid more for the product than she otherwise would have. Consequently, the consumer suffers damages."); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 63 (E.D.N.Y. 2015) ("[T]he injury is the price premium on every product sold."); *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984) ("[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties.").

this one. *See, e.g., Lerman*, No. 15-cv-07381, Dkt. 132 at 27 (granting motion for class certification and denying motion to exclude Dr. Groehn's opinions based on a conjoint study); *see also Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 278 (E.D.N.Y. 2019) ("Plaintiffs proffered models are sufficient to meet the *Comcast* test.").[5]

Defendant's first criticism of Dr. Groehn's methodology is that the conjoint analysis that Dr. Groehn proposes has not yet been performed. Defendant's argument is unpersuasive and unsupported by case law. Indeed, Defendant acknowledges that "an expert is not required to perform a full analysis at the class certification stage." (Mot. 6.) The only case Defendant cites in support of this argument is *Weiner*, 2010 WL 3119452, at *6-7, in which the court rejected a damages expert's "skeletal, four-page expert report" that lacked "adequate detail." In contrast, Dr. Groehn's proposes a thorough, sound methodology in a 46-page Expert Report and responds to all criticism in a robust Rebuttal Report. Taking into account his proffer of detailed reports and the acceptance of conjoint analysis across many courts nationwide, Defendant's argument falls flat. *See Guido*, 2014 WL 6603730, at *8 (rejecting defendant's argument that plaintiff's expert's testimony was inadmissible because expert had not yet performed conjoint analysis, reasoning that "plaintiffs need not show on class certification that they paid a premium for Serum due to the absence of a flammability warning. Instead, they must merely provide a method for calculating that premium on a class wide basis."); *Zheng-Lawson v. Toyota Motor Corp.*, No. 17-cv-06591-BLF, Dkt. 138 at 15 (N.D. Cal. Feb. 28, 2020) ("The Court is satisfied that Mr. Boedeker is qualified to design a CBC study and to offer the other expert opinions

---

[5] Other courts have recently reached similar conclusions for CBC proposals by other expert witnesses. *See In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, Dkt. 306-2 at 10-12 (N.D. Cal. Mar. 19, 2021) (finding "Dr. Singer's CBC analysis reliable and relevant to Plaintiffs' theory of class-wide damages" and rejecting argument that supply-side factors are not included); *In re Kind*, 337 F.R.D. at 606 ("Dr. Hamilton's proposed methodologies are accepted methods employed to determine pricing premiums."); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413 (allowing an expert to use "a hedonic regression, a contingent valuation study, or a conjoint analysis" to determine the premiums paid due to a false claim).

contained in his report.").

Defendant's argument that the survey pre-test has not yet been performed is equally meritless. As Dr. Groehn explained in his report, a pre-test will be conducted prior to the conjoint survey "to assess whether respondents understand the questions." Groehn Report ¶ 66. This is a standard and widely accepted means for preparing and assessing appropriate questions and attributes for the conjoint survey. Groehn Rebuttal Report ¶¶ 68-69. Contrary to Defendant's argument, the pre-test is part of the conjoint methodology and provides flexibility to adapt a survey to specific issues. Dr. Groehn's methodology is not "malleable," as Defendant contends, (Mot. 5); rather, it is adaptable and able to handle the specific details of specific cases. Dr. Groehn confirmed he will utilize pre-test interviews to conduct analyses as he has done in the past, which includes scrutinizing attributes and levels to be included in the study. *Id.*

By comparison, Defendant's expert Dr. Weber conducted a pre-test and mentioned it in only one paragraph of her report. *Id.* ¶ 69. The pre-test is "standard practice in survey field work" and is a part of the conjoint methodology (Groehn Report ¶ 67), so there is no requirement for Dr. Groehn to have performed the pre-test at the class certification stage, where Plaintiff need only detail a sound methodology for calculating class-wide damages. Defendant's criticisms go to the weight, not admissibility, of Dr. Groehn's proposed pre-test and survey. *See Lerman*, No. 15-cv-07381, Dkt. 132 at 28-31.

Further, Dr. Groehn's proposed survey builds on a similar methodology applied and accepted by the court in *Lerman*, No. 15-cv-07381, Dkt. 132 at 28-31, in which the court granted the motion for class certification and rejected the motion to exclude Dr. Groehn's report and testimony. Groehn Rebuttal Report ¶ 53.

## C. Dr. Groehn's Methodology Will Test Attributes and Levels Consistent with Plaintiff's Theory of Damages

Defendant's next unfounded criticism is that Dr. Groehn's proposed survey will test the

phrase "100% satisfaction guarantee," which this Court ruled was nonactionable puffery along with phrases that do not appear on Cree packaging. Mot. at 6-7. Glaringly, Defendant fails to acknowledge its previous argument about the flexibility that is built into the conjoint methodology. Dr. Groehn has explained how properly choosing attributes, drafting survey questions, and conducting a pre-test permit the conjoint methodology to be adapted to this specific case. Groehn Report ¶¶ 50-66. Further, Dr. Groehn is not a legal expert, but an expert in conjoint methodology. *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1021-22 (C.D. Cal. 2018). His report merely details the conjoint methodology and how it can be used to calculate class-wide damages in this case, entirely subject to the precise parameters of the case when it is time to finalize and conduct the survey. Dr. Groehn even explains in detail how he will choose specific attributes and levels to test:

> Table 2 lists a preliminary list of attributes and their respective level to be included in the conjoint survey. I will make the final determination of which attributes and levels to include after reviewing research conducted on behalf of Defendant. If such research is not available, I plan to conduct a pilot study with the same survey population as the conjoint survey. In the pilot study I will present various attributes of LED lightbulbs to survey participants and ask them to identify the attributes most relevant to them. I will apply statistical tests to assess whether the importance of attributes varies between groups of participants.

Groehn Report ¶ 63; *see id.* ¶¶ 50-66. Defendant's suggestion that Dr. Groehn is locked into the preliminary list of attributes and levels in his report is wrong and contrary to the conjoint methodology that he proposes.

Defendant further argues that the three warranty levels in Dr. Groehn's preliminary proposed survey do not appear on Cree packaging and that any inclusion of phrasing that "fundamentally departs" from the Cree packaging would be inappropriate. However, all three proposed statements to be tested can be found on Cree's packaging. Dr. Groehn shows packaging of 60W and 100W replacement LED bulbs in Figure 1 and Figure 2. Both figures show the statement "10 year warranty" highlighted with yellow rectangles. *Id.* ¶ 18. Figure 3 also shows "100% Satisfaction Guarantee." *Id.* ¶

22. The three levels of the warranty statement in the preliminary survey can be used to estimate economic loss for the "100% satisfaction guarantee" level compared to the "10-year 100% satisfaction guarantee" level, and the "10-year 100% satisfaction guarantee" level can be compared to the corrected statement. Groehn Rebuttal Report ¶¶ 111-17; Second Sultzer Decl., Ex. 8, Transcript of Groehn Dep. ("Groehn Dep.") 82:24-83:4. In other words, if "100% satisfaction guarantee" is puffery, it should not have affected the value of the "10-year 100% satisfaction guarantee" level, but even if it does, then the value of the "100% satisfaction guarantee" level can be used to determine the true value of the 10-year warranty language in "10-year 100% satisfaction guarantee." Dr. Groehn therefore can use these short statements to account for the variability in the packaging while only calculating damages based on the actionable statements. In his deposition, Dr. Groehn further clarified that longer descriptions, such as fine print, related to the tested statement should not be included in each choice menu but could be described in full on the introductory screen. Groehn Rebuttal Report ¶114; Groehn Dep. 83:18-84:8, 84:25-85:18, 120:15-20.

Despite Defendant arguing that it should lead to the striking of an expert opinion, the use of hypothetical product attribute descriptors is common and accepted. *See, e.g.*, *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1020 (N.D. Cal. 2013) (conjoint analyses "offer[] respondents *hypothetical* products in several combinations") (internal quotations omitted) (emphasis added); Second Sultzer Decl., Ex. 9, Transcript of Dep. of Jesse David, Ph.D. ("David Dep.") 69:20-21 ("I mean the conjoint models are hypothetical."). In *Schechner v. Whirlpool Corp.*, No. 2:16-CV-12409, 2018 WL 6843305, at *5 (E.D. Mich. Oct. 30, 2018), for example, the defendant took issue with a conjoint analysis that used the descriptor "AquaLift partial-clean" to describe the capabilities of an oven, rather than "AquaLift self-clean," which was how the product was described in the defendant's advertising. The defendant there argued, exactly as Cree does here, that this difference rendered the conjoint analysis irrelevant to the facts of the case. *See id.* at *14. The court thoroughly rejected that argument,

making clear that hypotheticals are permitted in conjoint analysis so long as they do not involve "embellishment and fabrication, unrelated to the facts and allegations." *Id.* Similarly, in *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, the court declined to exclude a conjoint survey that described a hypothetical dishwasher with "no-biofilm-maintenance" despite defendant's contention that all dishwashers require some biofilm maintenance. The court held that the presentation of choices based on hypothetical product attributes is "inherent in conjoint analysis." *Id.* at 753 (citations omitted). Cree's far-reaching attack on "inherent" characteristics of conjoint analyses amounts to not only an attack on Dr. Groehn, but an attack on the use of such models themselves—models that have been repeatedly approved of by federal courts. *In re Kind*, 337 F.R.D. at 581; *Price.*, 2018 WL 3869896, at *3; *Hasemann*, 331 F.R.D. at 278.

Even if it were valid, Defendant's argument that Dr. Groehn is not testing language that appears on the packaging is demonstrably false. Dr. Groehn lays out the attributes and levels he plans to test, including precise quotes from the packaging. Groehn Report ¶ 63. Only in the case of the warranty language does Dr. Groehn opt for shortened wording that still conveys the entire meaning of the language found on the packaging. Even still, as explained above, all of the warranty information can be included in the introductory screen so that respondents can see what the shortened phrases within the survey refer to. Notably, none of Defendant's experts criticized Dr. Groehn's proposed attributes or levels, revealing the lack of support for Defendant's argument.

Further, Defendant's argument that Dr. Groehn proposes to test language that does not appear on the packaging is baseless, misconstrues Dr. Groehn's report, and simply misunderstands the conjoint methodology. In order to test a statement, the expert has to provide an alternative to the tested statement that is not on the packaging. That is fundamental to the conjoint methodology. *Id.* ¶ 64. Further, including a "blank" as an attribute level is permissible in conjoint methodology as it is necessary to understanding the effect of false statements on the consumer. *Cf. Townsend*, 303 F. Supp.

10

3d 1010 (not taking issue with blanks in Mr. Boedeker's choice menus, even though these blanks were not on Monster's packaging). And again, none of Defendant's experts criticized Dr. Groehn's proposed attributes or levels.

Defendant's reliance on *Townsend*, 303 F. Supp. 3d 1010, and *Hughes v. The Ester C Company*, 317 F.R.D. 333 (E.D.N.Y. 2016), is also unpersuasive. First, Defendant already explained the various differences between *Townsend* and the present case, (Mot. 8-9), so Plaintiff need not do so here. There is no analog between the survey used in *Townsend*, regarding energy drink claims, and the present case, regarding light bulb longevity, in which Dr. Groehn has clearly laid out the attributes and levels at issue and for which no criticism by Defendant's experts exists. Further, the court in *Townsend* only granted the defendant's motion with regard to three of four labeling claims, finding that survey data regarding a claim that the energy drink "hydrates" was admissible and that defendant's other criticisms went to weight, not admissibility. 303 F. Supp. 3d at 1024-25. And in *Hughes*, the court rejected the expert's five proposed methods for calculating damages because none could "isolate the premium attributable to Plaintiffs' theory of the case." 317 F.R.D. at 355. Dr. Groehn's report, however, explains specifically how the conjoint methodology can be used to isolate the actionable attributes of the product labels and calculate the price premium resulting from those attributes. Groehn Report ¶¶ 23-36.

Dr. Groehn has fully explained the conjoint methodology and how it is capable of measuring class-wide damages in this case. Defendant's criticisms go to weight, not admissibility, of Dr. Groehn's proposed pre-test and survey. *See Lerman*, No. 15-cv-07381, Dkt. 132 at 28-31.

### D. Defendant's Criticisms of Dr. Groehn's Methodology Falsely Conflate the Theory of Damages with the Bulb Failure Rate

Cree's argument that Dr. Groehn assumes bulb failure is illogical. Cree did not provide a unit of time for the "100% failure rate" they claim Groehn assumed—without providing a unit of time, the "100% failure rate" is a meaningless descriptor. Groehn Report ¶ 140. No lightbulb is eternal—

all bulbs will stop working, given enough time. For a rate to exist, there *must* be a unit of time attached.

Defendant's argument that Dr. Groehn's methodology assumes a 100% bulb failure rate is not supported by any statement made by Dr. Groehn, nor is it supported by Plaintiff's theories or any of Defendant's expert reports. Dr. Groehn's report does not make any assumption of the failure rate of Defendant's light bulbs, and failure rates are also not addressed in his deposition. Rather, Defendant is attempting to misconstrue the economic principles underlying Dr. Groehn's methodology. Defendant conflates the harm caused to any individual consumer caused by a failed bulb to the harm caused to all reasonable consumers caused by paying a premium for a bulb that is more prone to failure and provides lower expected lifetime savings than its packaging represents. *See* Mot. at 13-14. As Defendant points out, Dr. Groehn testified that *all* purchasers are harmed by purchasing the Defendant's products. Groehn Dep. 57:7-12, 59:23-60:1; *id.* 53:24-54:9 ("The conjoint survey will empirically show whether there is any change in demand had consumers or had purchasers known at the time and point of purchase that there were certain misrepresentations related to the longevity of the product."). But Dr. Groehn did not say that this is due to *all* purchasers' bulbs failing. Rather, this is due to the false and material representations on the packaging increasing the market price that *all* purchasers paid. Groehn Report ¶¶ 23-36. Defendant admitted as much in Dr. Groehn's deposition. Groehn Dep. 75:8-22 ("So for your analysis, it doesn't matter one way or the other whether someone didn't get the promised lifetime energy savings."). Even assuming such an assumption is implicitly made by Dr. Groehn, it is not a sufficient basis to exclude him. Any attack on Groehn's analysis, as far as bulb failures go, cannot serve as the basis for exclusion because such attacks go to the total *amount* of damages, rather than relevance or reliability.

*In re Arris*, 327 F.R.D. 334, is instructive here. In *Arris*, the plaintiff conducted a conjoint analysis designed to calculate how much less consumers would pay for a computer that had latency issues. *See id.* at 370. The defendant argued that the analysis should be excluded because it overstated

how frequently the defect occurred and how much it impacted the performance of the computers at issue. *Id.* The court pointedly disagreed, holding that "[t]o the extent that Defendant asserts that the conjoint survey overstates the magnitude or frequency of the performance issues, that is a merits argument about the proper amount of damages, not a mismatch between Plaintiffs' damages model and theory of liability." *Id.*; *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014) ("Yet a plaintiff may properly allege the second theory in conjunction with the first, claiming that 'the price of the product was inflated as a result of [the] defendant's deception.'"); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged . . . by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations."); *cf. Baker v. Microsoft Corp.*, 797 F.3d 607, 614 (9th Cir. 2015) (explaining "plaintiffs' breach of express warranty claim presents a common factual question—is there a defect?" even though only 0.4% of owners reported manifestation), *rev'd on other grounds*, 137 S. Ct. 1702 (2017); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("proof of the manifestation of a defect is not a prerequisite to class certification").

Here, as in *Arris*, whether Dr. Groehn's methodology is appropriate is a matter to be resolved by the trier of fact. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *4-5 (declining to resolve factual dispute about whether damages theory properly accounted for a certain repair that mitigated damages—and thus affected the amount of damages—where the court had already established that the damages theory was consistent with the liability case and measured only damages attributable to the liability theory).

Further, *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018), is inapposite because Dr. Groehn does not propose to survey the level of defectiveness or a failure rate. Dr. Groehn's proposed survey does not make any representations about the failure rate or *actual* longevity and lifetime savings of Defendant's light bulbs. Rather, Dr. Groehn's proposed

survey tests the *expected* longevity and lifetime savings. Groehn Report ¶ 63. For lifetime savings over incandescent bulbs, Dr. Groehn proposes to present a dollar value (*e.g.*, $137.50 for 60W, as it is shown on Defendant's packaging) or a blank space, meaning not showing the claim at all. *Id.* ¶ 63. Nowhere does Dr. Groehn propose to tell survey respondents that the bulbs are defective.

### E.  Dr. Groehn's Methodology Accounts for Supply-Side Factors

Defendant argues that Dr. Groehn's methodology does not account for supply-side factors. As an initial matter, Dr. Groehn does consider "supply-side factors," concluding that "[t]he shape of the supply curve, or the intersection of the supply and demand curve, and hence the market equilibrium in the but-for world, are irrelevant to determining the compensation required to shift the but-for demand vertically so that it intersects with the supply curve in the actual market equilibrium." Groehn Report ¶¶ 32, 36; Groehn Rebuttal Report ¶¶ 16-26, 100-03.

Defendant and its expert Dr. David merely repeat criticisms which were properly rejected overwhelmingly by courts across the country.[6] Indeed, in four of these cases, the court upheld conjoint

---

[6] *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1105 ("[C]onjoint analyses can adequately account for supply-side factors.") (collecting cases); *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 673 (N.D. Cal. 2019) (same) (citations omitted); *Broomfield*, 2018 WL 4952519, at *18–20 (finding that conjoint adequately accounts for supply-side considerations); *Dial II*, 320 F.R.D. at 337 (same); *Lerman*, No. 15-cv-07381, Dkt. 132 (same); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 576 (N.D. Cal. 2020) ("While [supply-side] attacks might be fodder for cross-examination, they are not grounds for exclusion."); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d at 969-71 (conjoint analysis adequately accounted for supply-side factors "by assuming that the supply—the quantity—was fixed"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 606 (N.D. Cal. 2018) (rejecting same supply-side argument because conjoint survey "used actual market-clearing prices as the basis for the prices in the survey" and "took into account the fixed quantity of supply of [the product] because those sales occurred in the past") (internal quotations omitted); *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (same); *Hudock v. LG Elecs. U.S.A., Inc.*, No. CV 16-1220 (JRT/KMM), 2020 WL 1515233, at *15 (D. Minn. Mar. 30, 2020) (defendant's "qualms, including Plaintiffs' experts' supposed lack of . . . supply-side-factor considerations . . . does not prevent the Court from certifying the class at this stage of litigation."); *Schechter v. Whirlpool Corp.*, No. 2:16-CV-12409, 2019 WL 978934, at *5 (E.D. Mich. Feb. 28, 2019) (expert's "exclusion of additional supply-side factors goes to the weight of his opinion, not its admissibility"); *Banh v. Am. Honda Motor Co.*, Inc., No. 2:19-cv-05984-RGK-AS, 2020 WL 4390371, at *18-19 (C.D. Cal. July 28, 2020); *Johannessohn v. Polaris Indus., Inc.*, No. 16-CV-3348 (NEB/LIB), 2020 WL 1536416, at *19, *22-23 (D. Minn. Mar. 31, 2020); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17cv2335-GPC(MDD), 2019 WL 3006465, at *2-7 (S.D. Cal. July 10, 2019);

models presented by Dr. Groehn and his colleague Mr. Boedeker over the defendants' challenges on

these same grounds. *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d at 969-71; *Broomfield*, 2018

WL 4952519, at *18-20; *Dial II*, 320 F.R.D. at 337; *Lerman*, No. 15-cv-07381, Dkt. 132.

 *Dial* and *Lerman* provide a particularly cogent analysis of the defects of Defendant's supply-

side argument and criticism of how Dr. Groehn's model considers supply-side factors. Both courts

rejected the argument that the plaintiff's model failed to account for the relevant supply-side and

competitive factors by measuring only a consumer's willingness to pay for a specific product attribute,

but not the actual price premium. The *Dial* court rejected the same argument Defendant is raising as

follows:

> Dial's experts' criticism of Boedeker's model perhaps rests on a
> misunderstanding of what it purports to do. The model does not, as
> Dial contends, seek to determine an "average" or a "median"
> expression of consumer "willingness to pay" for the Dial Complete
> product without the claimed feature, unconnected to supply side
> market forces. Rather, Boedeker's model purports to calculate the
> "Marginal Consumer's Willingness to Pay" [for] that product in the
> actual market in which the products with the allegedly false claims were
> sold.
>
>    . . .
>
> The number of products Dial sold with the offending claims is known
> (or can easily be calculated). Those products were sold at a price
> determined by the intersection of demand and supply in the actual
> market. Boedeker's model asks, it appears, "At what price in that actual
> market in which Dial sold the offending products could Dial have sold
> the equivalent number of products without the false claim(s)?" By
> determining the marginal consumer's willingness to pay for the
> comparative product (not an "average" or "median" willingness to
> pay), Boedeker's model discloses that maximum price - and that price
> is not only tethered to the real and stable market, but as noted, also
> accounts for losses attributable to all products sold that included a
> price premium associated with the misrepresented feature.
>
> So, while no doubt imperfect in some respects, weak in others, and

---

*Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733-MCE-DB, 2019 WL 1429653, at *3-4 (E.D. Cal.
Mar. 29, 2019); *Hilsley*, 2018 WL 6300479, at *15-16; *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D.
520, 541 (N.D. Cal. 2018); *Davidson*, 2018 WL 2325426, at *22.

> subject to challenges on cross-examination, Boedeker's proffered means of calculating class wide damages is sufficient to demonstrate that a price premium for the allegedly falsely-claimed feature(s) exists, and that it can be reliably calculated, using means and methods generally understood and accepted in the fields of economics and statistics. As McFadden, et al. also noted, "In a conjoint survey that is aimed at determining price (as opposed to median or average WTP), results can be tested using real world evidence."

*Dial II*, 320 F.R.D. at 335–37. In *Lerman*, the court adopted the reasoning from *Dial II*. *Lerman*, No. 15-cv-07381, Dkt. 132 at 28 ("The model Groehn proposes 'is not only tethered to the real and stable market' but 'would seem to capture the full measure of damages suffered by consumers who actually bought the allegedly misrepresented product.'").

*Dial II* also exposed the fallacy of Defendant's supply-side argument, recognizing that a recalculation of the supply curve following disclosure of a defect could result in no recognized loss to consumers despite defendants' misrepresentation of a material attribute. This is because defendants could simply claim they would have sold fewer items at a higher price:

> One apparent problem with that traditional approach (at least in this context) is that both supply and demand with respect to the product without the claimed feature can be expected to decline. Therefore, that approach can be expected to describe a price for the product at a point on the quantity sold axis below (perhaps significantly) the point that represents the actual number of offending products.

*Dial II*, 320 F.R.D. at 336. This approach is plainly inequitable to consumers who overpaid for a defective product as it would allow suppliers to manipulate hypothetical supply to offset consumers' overpayments. For these and other reasons, the *Dial II* court held that Mr. Boedeker's proposed methodology for calculating class-wide damages was "sufficient to demonstrate that a price premium for the allegedly falsely-claimed feature(s) exists, and that it can be reliably calculated, using means and methods generally understood and accepted in the fields of economics and statistics." *Id.* at 337; *see also In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d at 971 ("[T]he fact that a fixed number of vehicles were in fact sold (and thus a fixed number of consumers were potentially harmed) merits

assuming that the size of the class is the same in both the hypothetical and real worlds and assessing damages on that basis. Doing otherwise might allow a defendant to profit in the real world by its wrongdoing (if proven) based on the notion that fewer people were harmed in the hypothetical world. That would not serve the remedial purpose of the damages remedy, making real-world consumers whole again."). Put another way, the purpose of Dr. Groehn's model is not to model a hypothetical marketplace, but to calculate actual damages for product sales that already took place.

Defendant's expert even refutes their own argument, as Dr. Groehn explains in his rebuttal report, because Defendant's expert "Dr. Steckel suggests in [] his report that the market value of the false advertising claim can be measured based on conjoint data alone without consideration of supply: 'More generally, to determine the value of a particular feature in the market, one may adjust a product's price to find the price point at which the sample would be indifferent (i.e. equally divided 50-50 in preference) between the original product and the product without the feature at the lower price point.'" Groehn Rebuttal Report ¶ 103 (quoting Dkt. 81-26 ¶ 40).

Defendant relies almost entirely on *In re General Motors LLC Ignition Switch Litigation*, 407 F. Supp. 3d 212 (S.D.N.Y. 2019), for its exclusion of a conjoint study on the grounds that supply-side considerations were not properly considered. But there, the court explicitly distinguished the allegations in that case, involving "dangerous defects" regarding complex vehicles, from those, like here, involving "classic allegations of mislabeling." *Id.* at 238-39 (citing, *inter alia*, *Hadley*, 324 F. Supp. 3d at 1105). The court specifically distinguished the conjoint analysis proposed there with the one approved in *Hadley*, one substantially identical to what Plaintiff proposes here, concluding that "[i]n a class mislabeling case . . . that makes sense." *Id.* The court also later conceded that its views on the type and extent of supply-side analysis necessary differed from many of the numerous cases cited here and subsequently certified its prior decision for interlocutory appeal. *See In re Gen. Motors L.L.C. Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. Dec. 12, 2019) ("[M]any district courts have held that

conjoint analyses may validly be used to measure diminution in market value. . . . [T]he result reached by the Court is certainly in tension with some of them.") (citation omitted).[7]

There is simply no reason for this Court to deviate from the well-considered weight of authority on this issue. At worst, Dr. Groehn's decision to analyze the supply-side using real-world prices paid and units sold is "fodder for cross examination" but not "grounds for exclusion." *Krommenhock*, 334 F.R.D. at 576; *see also Hudock*, 2020 WL 1515233, at *15 (defendant's "qualms, including Plaintiffs' experts' supposed lack of . . . supply-side-factor considerations . . . does not prevent the Court from certifying the class at this stage of litigation.").

### F. Defendant's Criticisms of Dr. Groehn's Methodology Go to Weight, Not Admissibility

Defendant's motion ultimately fails for a fundamental reason. Criticisms of a conjoint study's design, reliability, methodology, survey design foundation, and critique of conclusions are factual issues for the jury and may be subject to cross-examination at that time. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) ("[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for a jury."); *Beacon Mut. Ins. Co. v. Onebeacon Ins. Grp.*, 253 F. Supp. 2d 221, 226 (D.R.I. 2003) ("The alleged infirmities OneBeacon identifies are best challenged by the type of '[v]igorous cross-examination [and] presentation of contrary evidence' envisioned by *Daubert*."); *Lerman*, No. 15-cv-07381, Dkt. 132 at 28 ("Each of these arguments 'ultimately go to the weight, not the admissibility, of [Dr. Groehn's] testimony and are

---

[7] The *In re Gen. Motors* court's own certification for interlocutory appeal (which was voluntarily dismissed in connection with the parties' settlement, *see Clem v. Gen. Motors, LLC*, No. 20-1103, 2020 WL 5757639 (2d Cir. July 15, 2020)), and the court's admission that its ruling was an outlier, render this ruling of no value whatsoever to this Court.

fodder for cross-examination, not exclusion.'") (quoting *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *8).[8]

"[T]here is an important difference between what is *unreliable* support and what a trier of fact may conclude is *insufficient* support for an expert's conclusion." *Dial II*, 320 F.R.D. at 332 (quoting *Milward v. Acuity Specialty Prod. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011). Where the expert "didn't do any calculations with the data . . . [the defendant's] concerns really relate to facts upon which [the expert] relied in discerning a rational price range input for his conjoint study. If the 'factual underpinnings' of an expert's opinion is weak, 'that [is] a matter affecting the weight and credibility of their testimony,'" not admissibility. *Dial II*, 320 F.R.D. at 332 (quoting *Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir. 1985)). "While Groehn's decisions can and should be subject to challenge through cross examination, none of [Defendant's] arguments render his survey design inherently unreliable for purposes of ruling on class certification. His decision making is well-reasoned and thoroughly explained throughout his report." *Lerman*, No. 15-cv-07381, Dkt. 132 at 28-29; *see also id.* at 30 ("Groehn's survey required numerous subjective determinations that can be properly challenged through cross examination."). "[Defendant] may disagree with [Dr. Groehn's] decisions but Groehn has 'good grounds for his . . . conclusions' and [Defendant's] criticisms fall far short of requiring exclusion." *Id.* at 30 (quoting *Amorgianos*, 303 F.3d at 267). "[A]t this stage, the Court need not find that Groehn's survey design was perfect, but whether his methodology is 'admissible to establish the requirements of Rule 23.'" *Id.* at 30-31 (quoting *Chen-Oster*, 114 F. Supp. 3d at 114).

Finally, any criticism by Defendant's experts of Dr. Groehn's survey design and proposed methodology sets up a "battle of experts," which is premature at class certification. *In re Live Concert*

---

[8] *See also Dial II*, 320 F.R.D. at 331–33; *Hilsley*, 2019 WL 3006465, at *6; *Hadley*, 324 F. Supp. 3d at 1108; *Smartflash LLC v. Apple, Inc.*, No. 6:13-CV-447-JRG-KNM, 2014 WL 7336213, at *4 (E.D. Tex. Dec. 23, 2014); *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, No. SACV04-725CJC(EX), 2006 WL 5187497, at *7 (C.D. Cal. Mar. 2, 2006).

*Antitrust Litig.*, 247 F.R.D. 98, 110 (C.D. Cal. 2007). "The most appropriate course is to allow each side to attack the other's with contrary expert opinion and other contrary evidence." *Zheng-Lawson*, No. 17-cv-06591-BLF, Dkt. 138 at 15 (rejecting Toyota's argument that because Mr. Boedeker's damages model is based on assumptions not borne out by evidence, it would not be helpful to the trier of fact.).

## IV.    CONCLUSION

Contrary to Defendant's contentions, Dr. Groehn's proposed study is relevant and reliable, based on sound methodology that is more than adequately described, and consistent with Plaintiff's theory of damages. For these reasons, Defendant's motion should be denied.

Dated: July 28, 2021.                Respectfully submitted,

**THE SULTZER LAW GROUP, P.C.**

By: _/s/ Jason P. Sultzer_
Jason P. Sultzer, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Phone: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

Melissa S. Weiner
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com

Michael A. McShane
S. Clinton Woods
Ling Y. Kuang
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275

Phone: (415) 568-2555
Fax: (415) 568-2556
mmcshane@audetlaw.com
cwoods@audetlaw.com
lkuang@audetlaw.com


Charles J. LaDuca
Alexandra C. Warren
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
awarren@cuneolaw.com


Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiff*