UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
STEPHANIE WEDRA, individually and on :
behalf of all others similarly situated, :
                               Plaintiff, :
     :    **OPINION AND ORDER**
v. :
     :    19 CV 3162 (VB)
CREE, INC., :
                    Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Stephanie Wedra brings this purported class action against defendant Cree, Inc., for allegedly misrepresenting the longevity of defendant's lightbulbs. Plaintiff brings state law claims for violations of Sections 349 and 350 of New York's General Business Law ("GBL") and for fraudulent misrepresentation and concealment.

      Now pending are (i) plaintiff's motion for class certification and (ii) defendant's motions to strike the expert reports and exclude the opinions of plaintiff's experts Dr. Gary Allen and Dr. Andreas Groehn. (Docs. ##98, 102, 104). For the following reasons, the motion for class certification is DENIED, and the motions to strike and exclude the expert reports and opinions are DENIED WITHOUT PREJUDICE.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

      The parties have submitted briefs and declarations with supporting exhibits, which reflect the following factual background.

      Defendant manufactures and sells light emitting diode ("LED") lightbulbs, which are generally advertised as energy-saving alternatives to traditional incandescent bulbs and compact fluorescent lamps. Defendant manufactures three categories of LED lightbulbs: Standard A-

1

Type, Reflector, and Specialty. Within each lightbulb category, defendant sells a number of lightbulbs with different wattages and color temperatures, such as "soft white," "bright white," and "daylight."

Plaintiff contends the packaging for each of defendant's LED lightbulbs makes at least one of the following types of claims regarding the lightbulb's longevity: (i) cost savings, such as "$226 Lifetime Energy Savings"; (ii) longevity and performance comparisons to other LED bulbs, such as "Our LED bulbs work better and last longer"; and (iii) guaranty or warranty claims, such as "100% Satisfaction Guaranteed." (Doc. #99 ("Pl. Mem.") at 3; Doc #100-1).

Plaintiff claims she purchased a two-pack of defendant's 60-watt lightbulbs at a Home Depot store for approximately $10 to $20. She alleges she reviewed and relied on the representations on the packaging of the lightbulbs regarding their longevity as part of her decision to purchase the lightbulbs.

According to plaintiff, defendant's representations were false, as her lightbulbs "burned out within six months" of purchase. (Doc. #1 ¶ 42). Plaintiff claims she and the proposed class members were injured when they purchased, and paid a premium for, defendant's LED lightbulbs in reliance on defendant's representations, when, in fact, the bulbs are defective and will fail prematurely. Accordingly, plaintiff seeks to certify a class of "[a]ll persons in New York who purchased A-type 60 watt and 100 watt Cree LED Lightbulbs for end use, and not resale, during the period from April 2013 to present." (Pl. Mem. at 1).

## DISCUSSION

I. <u>Legal Standard</u>

To qualify for certification, a plaintiff must demonstrate by a preponderance of the evidence that the putative class meets the four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).[1] This Circuit also requires a plaintiff to demonstrate compliance with a fifth requirement respecting class ascertainability. In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006). If the plaintiff meets these five criteria, the plaintiff must also demonstrate by a preponderance of the evidence that the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 345.

The Supreme Court has cautioned that "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350. Instead, "[t]he party seeking class certification must affirmatively demonstrate compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 237–38 (2d Cir. 2012) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350–51). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Comcast Corp. v. Behrend, 569 U.S. 27, 33–34 (2013). However, merits inquiries at the class certification stage may be considered only to the extent "they are relevant to determining whether the Rule 23 perquisites" are met. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465–66 (2013).

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

II.     Rule 23(a) and Ascertainability Factors

   A.     Numerosity

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." Courts in this Circuit presume this requirement is met by a class of forty or more members. See Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Moreover, a "[p]laintiff[] need not establish the precise number of class members so long as [the plaintiff] reasonably estimate[s] that the number is substantial, and . . . rel[ies] on reasonable inferences drawn from the available facts." Wang v. Tesla, Inc., 338 F.R.D. 428, 436 (E.D.N.Y. 2021).

Here, defendant does not contest that the proposed class satisfies the numerosity requirement. Plaintiff cites to data reflecting that, during the twelve months prior to January 31, 2016, Home Depot sold 451,922 units of the Cree 100W A21 LED Soft White lightbulb and more than 2.1 million units of the Cree 60W 4Flow A19 Daylight LED lightbulb, which are two of the many products purchased by the proposed class. (Doc. #100-57 at ECF 4).[2] Although plaintiff does not state how many of these sales occurred in New York, she reasonably infers that "the sales for New York [during the class period] number likely in the millions," "[b]ecause New York has approximately 6% of the population of the United States" and Home Depot sells tens of millions of defendant's LED bulbs annually. (Pl. Mem. at 6–7). Accordingly, the proposed class meets the numerosity requirement.

   B.     Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." "Commonality is satisfied where a single issue of law or fact is common to the class." In re

---

[2] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

IndyMac Mortg.-Backed Sec. Litig., 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 359).  Therefore, commonality under Rule 23(a)(2) is a "low hurdle."  See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116, 131 (S.D.N.Y. 2014).  Nevertheless, class certification requires not only "common questions," but "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350.

Defendant argues common answers cannot be generated by the proposed class's questions.

The Court disagrees.

Common questions with the potential for common answers abound, including whether defendant's representations regarding longevity were material to class members' purchasing decisions and whether class members paid a premium for defendant's lightbulbs based on the allegedly misleading packaging.  See In re Kind LLC "Healthy & All Nat." Litig., 337 F.R.D. 581, 594–95 (S.D.N.Y. 2021) (common misrepresentations across three packaging iterations and price premium injury satisfied commonality).  Accordingly, the proposed class meets the commonality requirement.

C.     Typicality

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Robinson v. Metro-N. Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001), abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 360.  "[M]inor variations in the fact patterns underlying individual claims" do not preclude a finding of typicality "[w]hen it is alleged that the

5

same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir. 1993). Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. at 132.

Here, plaintiff's claims and those of the proposed class members arise from alleged misrepresentations that defendant's lightbulbs would last longer and save costs. Each class member will thus make similar legal arguments that defendant's representations were false and were material to his or her decision to purchase at a premium. Accordingly, the proposed class meets the typicality requirement.

    D.    Adequacy

Under Rule 23(a)(4), the Court must examine whether the named plaintiff's interests "are antagonistic" to those of the other proposed members of the class. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997). Put another way, class representatives must have a "sufficient interest in the outcome" of the case "to ensure vigorous advocacy." See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 413 (S.D.N.Y. 2004). The named plaintiff must also have attorneys who are "qualified, experienced and generally able to conduct the litigation." In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992).

Defendant argues plaintiff is not an adequate class representative.

The Court disagrees.

For the reasons discussed above regarding commonality and typicality, plaintiff has sufficiently shown that she is an adequate representative of the class. Moreover, plaintiff has demonstrated her commitment to litigating the case by assisting with the investigation, including searching her files and supplying her attorneys with relevant information, and sitting for a deposition. Nothing in the record suggests the named plaintiff's interests are antagonistic to those of the proposed class members.[3]

In addition, plaintiff has shown that class counsel are experienced and qualified class action lawyers. The resumes of the firms representing plaintiff (Docs. ##100-63–67) reflect that each firm has been appointed class counsel in several different cases, for some firms in both federal and state courts, and that some "ha[ve] won multi-million dollar verdicts or recoveries."[4] See Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 566 (S.D.N.Y. 2014). Accordingly, plaintiff and her counsel satisfy the adequacy requirement of Rule 23(a)(4).

E.    Ascertainability

The Second Circuit has recognized a fifth pre-condition to class certification: "[t]he implied requirement of ascertainability." In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 30. "To be ascertainable, the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." Charron v. Pinnacle Grp. N.Y. LLC, 269

---

[3]    Defendant argues plaintiff lacks standing. (Doc. #78 at 22). The Court already considered and rejected this argument in its Memorandum Opinion and Order dated May 24, 2021. (Doc. #86).

[4]    Plaintiff provided resumes for the following firms: Audet & Partners, LLP; Levin, Sedran & Berman; Pearson, Simon & Warshaw, LLP; the Sultzer Law Group, P.C.; and Cuneo, Glibert & LaDuca, LLP. Although attorneys from other law firms or offices have appeared on behalf of plaintiff, plaintiff does not submit any facts or documentation in support of appointing those lawyers as class counsel. Therefore, the Court does not consider their appointment.

F.R.D. 221, 229 (S.D.N.Y. 2010). "The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." Ebin v. Kangadis Food Inc., 297 F.R.D. at 567.

Here, defendant does not dispute the ascertainability of the class, and the Court finds plaintiff's proposed class meets the ascertainability criteria. The products at issue are limited to A-type bulbs of two specific wattages, all of which are alleged to contain at least one form of the alleged misrepresentations, and all of which were purchased in New York. See In re Kind LLC "Healthy & All Nat." Litig., 337 F.R.D. at 597 (class ascertainable notwithstanding product labels had three variants of allegedly deceptive advertising). Therefore, the proposed class "identifies a particular group of individuals who were harmed in a particular way (defrauded by labels and marketing materials leading to higher prices) during a specific period in particular areas." Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 66 (E.D.N.Y. 2015).

In sum, plaintiff has satisfied all four requirements of Rule 23(a) and the additional implied requirement of ascertainability.

III.   Rule 23(b)

In addition to satisfying Rule 23(a), a "district court must be satisfied that certification is appropriate under Rule 23(b)." Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015). Here, plaintiff seeks certification of a class under Rule 23(b)(2) to pursue injunctive relief and a class under Rule 23(b)(3) to seek money damages.

Defendant does not appear to challenge certification under Rule 23(b)(2), arguing only that plaintiff has failed to show sufficient evidence to certify a class under Rule 23(b)(3).

The Court agrees with respect to Rule 23(b)(3), and independently concludes that the proposed class may not be certified under Rule 23(b)(2).

      A.      <u>Rule 23(b)(2)</u>

Rule 23(b)(2) provides for certification of a class when a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In this Circuit, "[p]ast purchasers of a consumer product who claim to be deceived by that product's packaging" are not eligible for class certification under Rule 23(b)(2) because they "have, at most, alleged a past harm" redressable through damages. <u>Berni v. Barilla S.p.A.</u>, 964 F.3d 141, 147 (2d Cir. 2020).

Here, plaintiff, on behalf of the putative class, seeks injunctive relief prohibiting defendant from continuing to include the allegedly deceptive longevity representations in its packaging and marketing. However, the proposed class is comprised solely of past purchasers of defendant's LED bulbs.

Accordingly, plaintiff's motion to certify a class under Rule 23(b)(2) must be denied.

      B.      <u>Rule 23(b)(3)</u>

Rule 23(b)(3) provides for certification of a class when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

            1.      <u>Predominance</u>

Rule 23(b)(3) requires only "a showing that <u>questions</u> common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." <u>Amgen Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. at 460. However, a district court has a "duty to take a close look at whether common questions predominate over individual ones." <u>Comcast Corp. v. Behrend</u>, 569 U.S. at 34. "Class-wide issues predominate if resolution of some of the legal or

9

factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). Accordingly, this inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id.

The predominance requirement is far "more demanding" than the commonality requirement under Rule 23(a). Johnson v. Nextel Commc'ns., Inc., 780 F.3d 128, 138 (2d Cir. 2015) (quoting Comcast Corp. v. Behrend, 569 U.S. at 34). Therefore, the Court may determine plaintiff failed to establish predominance under Rule 23(b)(3) notwithstanding that she established commonality under Rule 23(a). See, e.g., id. at 139–40.

        a.      Classwide Design Defect

Defendant argues common issues do not predominate because plaintiff has failed to identify a common defect among the at-issue lightbulbs.

The Court agrees.

Because plaintiff claims that defendant's representations are false or misleading because defendant's product is defectively designed,[5] whether the defective design is "susceptible to classwide evidence is dispositive of whether Plaintiff[] can satisfy predominance." Gonzalez v. Corning, 885 F.3d 186, 196 (3d Cir. 2018). That is, unless plaintiff establishes a cognizable classwide defect, the truth or falsity of defendant's representations "could be proven only on the basis of individualized evidence," i.e., whether each class member's lightbulbs prematurely

---

[5] To succeed on a claim for fraudulent misrepresentation and under GBL Sections 349 and 350, a plaintiff must demonstrate the defendant's deceptive acts are false or misleading. See Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (applying elements under the GBL claims); Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996) (applying elements of a claim for fraud under New York law).

failed (or will fail) and whether a defect caused (or will cause) the failure. Marshall v. Hyundai Motor Am., 334 F.R.D. 36, 57 (S.D.N.Y. 2019) (individual questions predominated in GBL Section 349 claim arising from allegedly defective car brakes).

Here, plaintiff contends classwide evidence will answer whether defendant's lightbulbs "were defectively designed in a manner that made them prone to premature failure." (Pl. Mem. at 11). In support, plaintiff offers the report of Dr. Gary Allen, a purported expert in lighting technology, products and testing, applied physics, electronics, and patent infringement. (Doc. #100-2 ("Allen Report")). After testing a ten-lightbulb sample of defendant's A-type LED lightbulbs, Dr. Allen concluded the products purchased by the proposed class "all share a uniform design flaw:" all of the at-issue lightbulbs fail prematurely because they operate too hot. (Allen Report at 1).[6]

Dr. Allen selected the sample lightbulbs by, first, reviewing PDF images of the packaging for thirty models of defendant's A-type LED lightbulbs. (Allen Report at 65). From this review, Dr. Allen grouped the lightbulb models into seven "Lamp Designs," and further narrowed the seven Lamp Designs into four "thermal management designs," also referred to as "Architectures." (Allen Report at 2–4, 64–66).

Relying on this classification, Dr. Allen procured ten of defendant's lightblubs for testing. (Allen Report at 41). These ten lightbulbs represented five of the seven "LED Lamp Designs." (Allen Report at 65). To test the sample lightbulbs—which Dr. Allen claimed were representative of the different "thermal management" designs for the at-issue lightbulbs—Dr. Allen turned on each of the lightbulbs for at least 2.2 hours two-to-five times, and took

---

[6] Dr. Allen distinguishes between "catastrophic" failure, meaning complete failure to light, and "parametric" failure, meaning a gradual decrease in light output or light quality. (Allen Report at 8). Plaintiff alleges defendant's LED lightbulbs catastrophically fail.

temperature readings of three of each lightbulb's component parts in 25ºC ambient air.  (Allen Report at 41).  Dr. Allen then extrapolated the results to estimate how the lightbulbs would perform in 45ºC ambient air.  (Allen Report at 41–44).

None of the sample lightbulbs failed.  Nevertheless, Dr. Allen concluded that all the LED lightbulbs purchased by the proposed class are defective because the temperature of some of the components of some of the sample lightbulbs exceeded "Target Maximum" temperatures set by Dr. Allen.  He arrived at his Target Maximum temperatures by "following generally conservative design guidelines" arrived at through his own experience.  (Allen Report at 32).  For each 10ºC that the tested bulb exceeded—or Dr. Allen estimated the bulb would exceed—the Target Maximum, Dr. Allen projected that the bulb's lifespan, and the lifespan of all products represented by that bulb's design type, was reduced by half.  (Allen Report at 41–44).

Even putting aside the many potential deficiencies with such a methodology,[7] Dr. Allen's report fails on its face to suggest that classwide evidence will answer whether there is a common defect.  Dr. Allen admits that only some of the components in some of the bulbs he tested recorded temperatures that exceeded the Target Maximums.  (See Allen Report at 43–44 (reporting some temperatures for the "FT19" and "4F" lamp designs at 10ºC "cooler than the Target Maximum" in 25ºC ambient air, and the electrolytic capacitor temperatures for the "FT21," "FT19," "4F," and "BR9" lamp designs at 5ºC below the Target Maximum in 25ºC ambient air)).  Therefore, Dr. Allen's methodology cannot show the presence of a uniform overheating defect across all of the at-issue lightbulbs.

Far from identifying a uniform defect, Dr. Allen's report points to potential issues that

---

[7]  For example, the Court is dubious about Dr. Allen's methodology for selecting a representative sample of defendant's LED lightbulbs for testing, as well as for determining the "Target Maximum" temperatures.

could be associated with the longevity of some of the tested lightbulbs, but not with others. For example, in his analysis of sample lightbulbs representing two different types of thermal management design, Dr. Allen describes "a strong indication that the surface area of the Heat Sink is too small" and "that the bond between the LED PCB and Spreader is poor," but also a design error in "omit[ting] the TIM." (Allen Report at 49–52). And in his analysis of the bulb representing another specific type of thermal management design, Dr. Allen describes "a strong indication that cooling ambient air is not allowed to flow freely over the Heat Sink," and that "[t]he design error is found in the size of the air vents in the plastic bulb." (Allen Report at 49–50). In his analysis of the bulbs representing yet another type of design architecture, Dr. Allen estimates that "early failures of Electrolytic Capacitors . . . may reasonably be expected to occur." (Allen Report at 56).

In addition, Dr. Allen identifies potential "mechanical failures, e.g., a poor solder joint, or a loose electrical connector, or an improper manual or automated assembly of components" that can cause catastrophic failure in defendant's LED lightbulbs unrelated to, and without any, overheating.[8] (Allen Report at 30).

Although a plaintiff need not prove the merits of her claims at the class certification phase, "the finding plaintiff urges [here] is simply too speculative." Haag v. Hyundai Motor Am., 330 F.R.D. 127, 133 (W.D.N.Y. 2019). Dr. Allen's report does not "identify a particular defect that, whether it had manifested itself, allegedly existed in each of the relevant products." Gonzalez v. Corning, 885 F.3d at 197; see also Wang v. Tesla, Inc., 338 F.R.D. at 442 (individual questions predominated when plaintiff failed to demonstrate "that the same technical

---

[8] Dr. Allen summarily concludes that "it is high temperatures, and not these other potential failure mechanisms, that causes the LED Lamps to fail" because such failure mechanisms "are not as likely to cause endemic early failures as are high temperatures." (Allen Report at 30).

13

defects apply to the whole class"). Therefore, each individual class member would have to establish their specific type of lightbulb failed prematurely or is prone to fail prematurely from a defect to be entitled to relief. See Marshall v. Hyundai Motor Am., 334 F.R.D. at 60 (denying class certification to bring GBL Section 349 claim when "determining whether each [product] failed as a result of the allegedly concealed defect or as a result of unrelated issues . . . will devolve into numerous mini-trials").

Accordingly, plaintiff has failed to show that common questions predominate over individual ones, and the motion for class certification pursuant to Rule 23(b)(3) must be denied.

Because plaintiff has failed to establish that common questions predominate over individual ones, the Court does not reach the question of superiority of a class action in this case.

IV.     Motions to Exclude Expert Reports

Defendant moves to exclude the opinions of plaintiff's experts, Dr. Gary Allen—discussed above—and Dr. Andreas Groehn—plaintiff's damages expert—under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). The Second Circuit has not yet decided whether Daubert motions are appropriate at the class certification stage. Kurtz v. Costco Wholesale Corp., 818 F. App'x at 61 n.3 (2d. Cir. 2020) (summary order). However, because the Court denies class certification even assuming it can consider Dr. Allen's report, defendant's Daubert motion to exclude Dr. Allen's report is denied without prejudice. In addition, because the motion for class certification is denied pursuant to Rule 23(b), the Court need not address whether plaintiff has sufficiently shown damages on a classwide basis, and thus need not address Dr. Groehn's report regarding damages at this time. Accordingly, defendant's Daubert motion to strike Dr. Groehn's report is denied without prejudice.

## CONCLUSION

The motion for class certification is DENIED.

The motions to strike and exclude the reports and opinions of plaintiff's experts are DENIED WITHOUT PREJUDICE.

The Clerk is instructed to terminate the motions. (Docs. ## 98, 102, 104).

All counsel are directed to appear for a status conference on July 15, 2022, at 11:30 a.m., in Courtroom 620 at the White Plains courthouse. By July 8, 2022, the parties are directed to submit a joint letter addressing all case management issues going forward, including inter alia a proposed schedule for the completion of discovery on the merits of plaintiff's claims.

Dated: June 13, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge